UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-----------------------------------------------------------------------X

ANDREWS INTERNATIONAL, INC.                          **ECF Case**

                                     **Plaintiff,**          **Civil Action No. 08-cv-1580
                                                            (HB)**

              -against-

NEW YORK CITY HOUSING AUTHORITY,                   **Amended Complaint**

                                     **Defendant.**

-----------------------------------------------------------------------X

Plaintiff, Andrews International, Inc. files this amended complaint against defendant,

New York City Housing Authority ("NYCHA"), and states as follows:

Jurisdiction and Venue

1.    Andrews International, Inc. is a corporation organized and existing under the laws

of Delaware, with its principal place of business at 27959 Smyth Drive, Valencia, California.

Andrews International, Inc., therefore, is a citizen of the States of Delaware and California.

2.    NYCHA is a public corporation organized under the laws of New York, with its

principal place of business at 250 Broadway, New York, New York.  NYCHA, therefore, is a

citizen of the State of New York.

3.    This Court has jurisdiction over this matter because this action is between citizens

of diverse states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    Venue is proper in this Court because defendant NYCHA resides in this judicial

district, and a substantial part of the events giving rise to this action occurred in this judicial

district.

Factual Allegations

5.      On or about February 28, 2005, Andrews International, Inc., by its predecessor in interest, Copstat Security LLC (collectively "Andrews"), entered into contract #4020633 (the "NYCHA Contract") with NYCHA, whereby Andrews agreed to provide security guard services at NYCHA's designated "field office locations" listed in Exhibit 2 of the NYCHA Contract. (A true and correct copy of the NYCHA Contract with Exhibits 1-3 is attached as Exhibit A.)

6.      The NYCHA Contract was drafted by NYCHA.

7.      The NYCHA Contract was to commence on March 1, 2005 and terminate on February 28, 2007.

8.      NYCHA and Andrews agreed that NYCHA would compensate Andrews for security services provided in accordance with the NYCHA Contract.

9.      From March 1, 2005, through February 28, 2007, Andrews provided security guard services in accordance with the NYCHA Contract at NYCHA's designated "field office locations."

10.     Andrews sent NYCHA invoices for services provided under the NYCHA Contract.

11.     In 2005 and 2006, with minor exceptions, NYCHA paid in full the invoices submitted by Andrews.

12.     In late-December 2006 or early-January 2007, Patrick O'Hagan succeeded Sean Ryan as Director of NYCHA's Office of Security. Andrews, however, did not have any contact with Mr. O'Hagan until sometime in March 2007.

13.     On May 21, 2007, Andrews received notice of termination of the NYCHA Contract, effective June 22, 2007.

2

14.    Three days later, Mr. O'Hagan asked Andrews to execute an Amendment to Agreement #4020633 (the "Amendment"), extending the NYCHA Contract from March 1, 2007, through June 22, 2007.  NYCHA drafted the Amendment.

15.    Mr. O'Hagan informed Andrews that the Amendment was necessary "to facilitate payment of the outstanding invoices."   Based on this representation, Andrews executed the Amendment.  (A true and correct copy of the Amendment is attached as Exhibit B.)

16.    Between January 1 and May 31, 2007, NYCHA did not pay any of the invoices received from Andrews for work performed in 2007.

17.    Notwithstanding the absence of payments from NYCHA, between March 1, 2007 and June 22, 2007, Andrews continued providing security guard services in accordance with the Amendment.

18.    In fact, Andrews continued performing its obligations under the NYCHA Contract and Amendment until the Amendment ended on June 22, 2007.

19.    On June 20, 2007, two days before the Amendment terminated, NYCHA finally remitted payment to Andrews for invoices dated in January, February, and April 2007.   The amount paid by NYCHA, however, was $16,251.26 less than the amount invoiced.  NYCHA provided no prior or contemporaneous written notice of the reasons for the reduction.

20.    Andrews informed NYCHA of the underpayment in writing on June 29, 2007, and requested payment in full.

21.    On July 16, 2007, almost a month after the Amendment terminated, Patrick O'Hagan finally sent a letter to Andrews, stating that the unpaid balance was withheld as liquidated damages.

22.    On July 20, 2007, Andrews notified NYCHA in writing that it disputed the "liquidated damages" withholdings made by NYCHA and requested a detailed accounting of the deductions by July 25, 2007.

23.    NYCHA failed to respond to Andrews on or before July 25, 2007.

24.    On July 30, 2007, Andrews notified NYCHA in writing that a dispute had arisen under the NYCHA Contract and that the unpaid balances due under the NYCHA Contract must be paid in full.

25.    On August 2, 2007, Andrews notified NYCHA in writing that it disputed deductions taken from an August 1, 2007 payment by NYCHA to Andrews and that all unpaid balances due under the NYCHA Contract must be paid in full.

26.    NYCHA continued to withhold money from subsequent payments to Andrews in July, August, and September 2007.

27.    More than thirty days have elapsed since Andrews demanded payment from NYCHA.  NYCHA has refused to make a payment on the outstanding balances for services rendered.

28.    NYCHA owes $112,196.58 to Andrews for security services performed.

Breach of Contract
(Count I – NYCHA Contract)

29.    Andrews realleges and incorporates by reference the factual allegations set forth in paragraphs 1-28 of this Complaint as if fully set forth herein.

30.    Andrews fully performed its obligations under the NYCHA Contract.

31.    NYCHA breached its obligations under the NYCHA Contract by failing to pay for services rendered.

32.    As a result of NYCHA's failure to perform under the NYCHA Contract, Andrews has incurred damages.

WHEREFORE, plaintiff, Andrews International, Inc., respectfully requests that this Court enter judgment in its favor and against the New York City Housing Authority in the amount of $112,196.58, plus pre-judgment and post-judgment interest, costs, and such other relief that this Court deems just and proper.

Breach of Contract
(Count II – Amendment)

33.    Andrews realleges and incorporates by reference the factual allegations set forth in paragraphs 1-32 of this Complaint as if fully set forth herein.

34.    Andrews fully performed its obligations under the Amendment.

35.    NYCHA breached its obligations under the Amendment by failing to pay for services rendered.

36.    As a result of NYCHA's failure to perform under the Amendment, Andrews has incurred damages.

WHEREFORE, plaintiff, Andrews International, Inc., respectfully requests that this Court enter judgment in its favor and against the New York City Housing Authority in the amount of $112,196.58, plus pre-judgment and post-judgment interest, costs, and such other relief that this Court deems just and proper.

Respectfully submitted,

Christopher E. Dunne (CD9472)
325 Chestnut Street
Suite 403
Philadelphia, PA 19106
Telephone:  (267) 761-1131
cdunne@cedunne.us

Bryan D. Bolton, Admitted *Pro Hac Vice*
Funk & Bolton, P.A.
36 S. Charles Street, 12th Floor
Baltimore, MD 21201
Telephone:  (410) 659-7754
bbolton@fblaw.com

**Attorneys for Plaintiff**
**Andrews International, Inc.**

Dated:          May 15 2008
31002.006: #114883

# EXHIBIT 1
# PART 1 OF 5

**Exhibit 1**

HPD City Contract with Copstat for Unarmed Security Guard Services, Contract No. 2003-000618



**DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT**
JERILYN PERINE, Commissioner

**Office of Administration**
DISCIPLINARY UNIT
100 GOLD STREET, 1W, NEW YORK, N.Y. 10038
Mario Ferrigno, Director

June 28, 2002

Copstat Security, Inc.
1860 East Tremont Avenue
Bronx, New York 10460
ATTN: Mr. Terry Hill

<u>Re:</u> **Unarmed Security Guard Services
Contract # 2003-0000618**

Dear Mr. Hill:

Please be advised that on June 25, 2002, the New York City Comptroller's Office registered the above referenced contract between Copstat Security, Inc. and the New York City Department of Housing Preservation and Development. The contract term is from July 1, 2002 through June 30, 2005.

If you have any questions or require additional information, please contact me directly at (212) 863-5616.

Very truly yours,

Mario Ferrigno
Director,
HPD Disciplinary Unit

cc:    file



**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**
JERILYN PERINE, Commissioner

**Office of Administration**
DIVISION OF RESOURCES MANAGEMENT AND LABOR RELATIONS
100 GOLD STREET, NEW YORK, N.Y. 10038

BERNARD SCHWARZ, Assistant Commissioner

## ADDENDUM #2

To:         Prospective Bidders

Subject:    Addendum to Invitation For Bid for Unarmed Security Guard Services,
            PIN # 806011000110

Date:       March 27, 2002

___

The following changes are made to the subject Invitation for Bid ("IFB"):

1.    Exhibit A, Scope of Services, page 1, paragraph 1:
      The list of HPD sites shall be as follows:

              *100 Gold Street, NYC – 496 hrs per week
               Parking Lot (manned by Security Specialist) – 40 hours per week
              *516 Bergen Street, Brooklyn 45 hours per week
              *965 Longwood Avenue, Bronx – 233.5 hours per week
              *701 Euclid Avenue, Brooklyn – 90 hours per week
              *560 West 133 Street, NYC – 42.5 hours per week
             **320 Sterling Street, Brooklyn – 336 hours per week


              *HPD Office Site

          **320 Sterling Street, Brooklyn is a current security site which is not an
            HPD office site.

It should be noted that these are estimates based on the hours currently required.  HPD makes no representations that
these will be the actual hours required under the resultant contract and any renewals or extensions made thereto.


2.    Exhibit A, Scope of Services, page 8, Paragraph 11, Sub-paragraph (b) is deleted.
      Sub-paragraph (a) is amended by adding the word "day" between  "working shifts".



Addendum #2
PIN #806011000110
March 27, 2002
Page 2


All other terms and conditions remain unchanged.


Approved for Issuance:                                Issued By:


Jay Bernstein                                        Bernard Schwarz
Deputy Agency Chief Contracting Officer              Assistant Commissioner


ADDENDUM #2 ACKNOWLEDGEMENT                  PIN # 806011000110

PRINTED NAME: _____            SIGNATURE: _____

POSITION/TITLE: _____          COMPANY: _____

NOTARY PUBLIC: _____


**NOTE: SIGNED AND NOTARIZED COPIES (IN BLUE INK) OF THIS ADDENDUM MUST BE INCLUDED WITH THE BID SUBMISSION.  FAILURE TO COMPLY MAY RENDER YOUR BID NON-RESPONSIVE.**



nyclink.org/hpd



**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**

JERILYN PERINE, Commissioner

**Office of Administration**
DIVISION OF RESOURCES MANAGEMENT AND LABOR RELATIONS
100 GOLD STREET, NEW YORK, N.Y. 10038

BERNARD SCHWARZ, Assistant Commissioner

To:             Prospective Bidders

Subject:        Questions and Answers pursuant to the March 21, 2002 Pre-Bid Conference For Bid for Unarmed Security Guard Services, PIN # 806011000110

Date:           March 27, 2002

---

Pursuant the Pre-Bid Conference held on Thursday, March 21, 2002, the following constitutes the questions and answers presented on that day. Please note, the answers provided below do not constitute any change to the terms and conditions of the subject solicitation. Also, please find attached the attendance sheets representing those in attendance at the Pre-Bid Conference.

## Questions and Answers

1- What does the Contractor's Hourly Fee include?
   Answer- Profit & Overhead

2- Do Bidders provide Bid Security? How much is the Bid Security?
   Answer – Yes. 5% of the total bid amount. Refer to Attachment 1, page 14 "Bid Information".

3- Should the Vendex forms be submitted with the Bid or after?
   Answer – Vendex forms are to be submitted upon request by the Agency and generally at the time the low responsive bidder has been determined.

4- Should the Employment report be submitted with the Bid or after?
   Answer – The Employment report is to be submitted upon request by the Agency and generally at the time the low responsive bidder has been determined.

5- Where are the Vendex forms available for pick-up?
   Answer – 100 Gold Street, Room 1 W, New York, NY 10038 (Monday-Friday between 9:00 AM and 5:00 PM).

6- What are the construction sites?
   Answer – Construction sites vary depending on the needs of the Agency.

7- What are the current weekly hours for the sites listed?
   Answer – See Addendum # 2.

8- What if the payroll taxes are higher than suggested in the bid schedule?
   Answer- Payroll costs are compensable (i.e. wages, taxes and benefits). Refer to Exhibit A, Scope of Services, paragraph 3 (b).

9- Are the current guards part of a union?
   Answer – Yes



nyclink.org/hpd

10- Are Security Guards paid for their ½ hour lunch break?
    Answer – Unless requested to take an on-site lunch break, security guards are not
        paid for their lunch break.  Refer to Exhibit A, Scope of Services, page 2, **Work Hours**,
        paragraph (a).

11- Is the $2,000.00 annual allowance for Sanitation facilities and Construction
    trailers the maximum amount allowable on this contract?
    Answer – The $2,000.00 allowance is based on our needs over the past 3 years.
        Should HPD's need for such items exceed $2,000.00, the actual cost
        will be borne by HPD as a compensable cost.

12 - What benefits are covered by the Supplemental Benefits Rate established by the
    NYC Comptroller's Office?
    Answer – According to the Comptroller's Office, the Supplemental Benefits Rate
        can be paid as cash  or benefits including but not limited to health, welfare,
        pensions, sick or vacation.

13 - Page 6 of the Scope of Services refers to the Security Officer uniform jackets
    being blue in color, however, the Security Officer jackets were observed to be
    "red" in color. Is blue the required color for jackets?
    Answer – The contract requires blue jackets. Any other colors must be pre-
        approved by HPD.

14 - What billing period is required?
    Answer – The billing period should be a 7 day period as determined by the
        Contractor and agreed to by the Agency (HPD).

15- How is the cost for the required two-way radios to be reflected?
    Answer – The costs should be included as part of the contractor's overhead.  Refer to Exhibit A,
        Scope of Services, page 9, paragraph 12, **Equipment**.

16- What is the requirement for supervisory shift inspections?
    Answer – The requirements for Shift/Supervisory Functions are listed on Page 8,
        Paragraph 11 of Exhibit A, Scope of Services.  See Addendum # 2.

17- Are the supervisory shift inspections conducted by the Security Coordinator, Security Specialist or the
    Clerical Support Aide/Receptionists or does the contractor have to use additional staff?
    Answer – No. The contractor will be required to utilize additional staff, at their
        sole expense, to perform the supervisory shift inspections.

18- Where are the Security Coordinator, Security Specialist and Clerical Support Aide/Receptionists assigned?
    Answer –  Currently, the Security Coordinator and Clerical Support
        Aide/Receptionist are assigned to 100 Gold Street, NYC.  The Security
        Specialist is assigned to our parking facility located at East Houston
        Street off of Chrystie Street, NYC.



nyclink.org/hpd

Que      & Answers
PIN        11000110
March    2002
Page 3

19- Is there any objection to the rollover of current Security Officers?

Answer – There is no objection to the rollover of current Security Officers
provided that they meet the hiring standards of the contractor.  In fact,
in an effort to maintain the continuity of security services, we
encourage the rollover of qualified Security Officers.

Issued By :

Bernard Schwarz
Assistant Commissioner

**HPD**

nyclink.org/hpd

**SIGN – IN  SHEET FOR PRE-BID CONFERENCE**
**Unarmed Security Guards**
**Thursday, March 21, 2002**
**100 Gold Street, 8-P6**

| | Name of Company | Name | Date |
|---|---|---|---|
| 1 – | AL-QIYAMAT SECURITY | MIKIAL ABDUR PHHIM | 3/21/02 |
| 2 – | PARK AVE SECURITY | STEPHEN DIRIENZO | 3-21-02 |
| 3 – | INTER-CON UPS SERVICES CORP | LARRY MULVEY | 3-21-02 |
| 4 – | D.A.D.R SECURITY | JOEL GIL | 3-21-02. |
| 5 – | S&J Security | SID Bloom | 3/21/02 |
| 6 – | FLASH SECURITY | J. ADEGHE | 3/21/02 |
| 7 · | Frisap Guard Service | ELEANOR CHANDLER | 3/21/02 |
| 8 – | Watchdog Patrols | John Johnson | 3/21/02 |
| 9 – | Fortune Security Corp. | Ray Simaco | 3/21/02. |
| 10 – | Topword Security | Leon Chakowski | 3/21/02. |
| 11 – | Bowlos | Tas Bosio | 3/21/02 |
| 12 – | Copstat | Thomas J. Murray | 3/21/02 |
| | COPSTAT | TERENCE HILL | 3/21/02 |
| 13 – | NORTH-EAST SECURITIE | ADEGHE EKAN | 3/21/02. |
| 14 – | Explorer Investigation Agency | Joseph Shore | 3/21/02 |
| 15 – | Securitas | Jim O'Neill | 3/21/02 |
| 16 – | Delber der Security | Rick Pereira | 3/21/02 |
| 17 – | Guardia Security | A.T. Pelaez | 3/21/02 |
| | Lincoln Security | J. Lex John | 3/21/02 |
| 18 – | Defender Security | Rick Perein | 3/21/02 |
| 19 – | I.S.E. | Manny Gerald | 3/21/02 |
| | I.S.E | | 3/21/02 |
| 20 – | Babs Int'l Security | Fadekeni Babalola | 3/21/02 |
| 21 – | J&C SECURITY | H Sealy | 3/21/02 |



**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**
JERILYN PERINE, Commissioner

**Office of Administration**
DIVISION OF RESOURCES MANAGEMENT AND LABOR RELATIONS
100 GOLD STREET, NEW YORK, N.Y. 10038

BERNARD SCHWARZ, Assistant Commissioner

## ADDENDUM #1

To:             Prospective Bidders

Subject:     Addendum to Invitation For Bid for Unarmed Security Guard Services,
                PIN # 806011000110

Date:         March 11, 2002

---

The following changes are made to the subject Invitation for Bid ("IFB"):

1.  The Table of Contents has been replaced with the attached. (Attachment 1)
2.  Attachment 1, page 14 "Bid Information" has changed as follows:
    BID OPENING PLACE:  100 Gold Street, New York, New York,
    8th floor conference room, Room 8P6.
3.  Attachment 2, page 15 "Copy of Advertisement for Bids" third paragraph, last sentence: "12 months" has been changed to "36 months with an option to renew for up to two additional one (1) year terms."
4.  Article 3 of the Agreement, pages 32-33, has been replaced in its entirety with the following:

### ARTICLE 3
### TIME OF PERFORMANCE

3.1     The term of this Agreement shall commence thirty (30) days from receipt by the Contractor of written notice to proceed and shall expire on the expiration date.

3.2     Renewals.  At the sole option of HPD, this Contract may be renewed for up to two additional one (1) year terms on the same terms and conditions as are contained herein, excepting such non-material scope and other changes as may be permitted pursuant to the rules of the City's Procurement Policy Board ("PPB Rules").  If HPD elects to renew this Contract, HPD shall give notice to Contractor not later than thirty (30) days prior to the expiration hereof.

3.3     Extension of Time.  Upon written application by the Contractor, the Agency Chief Contracting Officer may grant an extension of time for performance of the contract.  Said application must state, at a minimum, in detail, each cause for delay, the date the cause of the alleged delay occurred, and the total number of delay in days attributable to such cause.

The ruling of the Agency Chief Contracting Officer shall be final and binding as to the allowance of an extension and the number of days allowed.



## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| INFORMATION FOR BIDDERS | 1 |
| SUPPLEMENTAL INFORMATION FOR BIDDER | 16 |
| BID FORM | 19 |
| FORM OF BID BOND WITH ACKNOWLEDGMENT | 25 |
| BIDDER QUALIFICATION STATEMENT | 28 |
| BIDDER'S CERTIFICATION | 30 |
| AGREEMENT | 31 |

ARTICLE
| 1 | Definitions | 31 |
| 2 | The Agreement | 32 |
| 3 | Time of Performance | 32 |
| 4 | Scope of Services | 33 |
| 5 | Payment | 33 |
| 6 | Payment Procedure | 34 |
| 7 | Prompt Payment | 35 |
| 8 | Records and Audit | 35 |
| 9 | Limitation on Payments | 36 |
| 10 | Insurance | 36 |
| 11 | Liquidated Damages | 38 |
| 12 | Payment and Performance Bond | 39 |
| 13 | Payment Guarantee | 39 |
| 14 | Contractor's Employees and Liability | 40 |
| 15 | Termination | 41 |
| 16 | Resolution of Disputes | 43 |
| 17 | Assignments | 47 |
| 18 | Notices | 47 |
| 19 | City Supplemental Terms and Conditions | 48 |
| 20 | Equal Employment Opportunity | 55 |
| 21 | Conditions Precedent | 55 |
| 22 | Changes | 56 |
| 23 | Miscellaneous Provisions | 57 |

| Acknowledgments | 59 |
| Scope of Services | Exhibit A |
| Executive Order 50 (EO) Provisions | Exhibit B |
| Section 230 Wage Rates | Exhibit C |



All other terms and conditions remain unchanged.

Approved for Issuance:                              Issued By:

_____                          _____
Jay Bernstein                                      Bernard Schwarz
Deputy Agency Chief Contracting Officer            Assistant Commissioner


**ADDENDUM # 1 ACKNOWLEDGEMENT**        PIN # 806011000110

PRINTED NAME: _____           SIGNATURE: _____

POSITION/TITLE: _____         COMPANY: _____

NOTARY PUBLIC: _____


**NOTE: SIGNED AND NOTARIZED COPIES (IN BLUE INK) OF THIS ADDENDUM MUST BE INCLUDED WITH THE BID SUBMISSION. FAILURE TO COMPLY MAY RENDER YOUR BID NON-RESPONSIVE.**



nyc.gov/hpd

# THE CITY OF NEW YORK

## DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT

## INFORMATION FOR BIDDERS, BID, AGREEMENT AND CONDITIONS

FOR FURNISHING SUCH SECURITY GUARDS AND SUCH MATERIALS, EQUIPMENT, SERVICES, ETC., AS MAY BE REQUIRED AND ORDERED BY THE DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OR ITS SUCCESSORS IN CONNECTION WITH SECURITY GUARDS SERVICES AT CERTAIN CITY OPERATED BUSINESS OFFICES AND CONSTRUCTION SITES FOR THE PERIOD OF THREE YEARS COMMENCING THIRTY (30) DAYS FROM THE RECEIPT OF A NOTICE TO PROCEED AND IN ACCORDANCE WITH THE AGREEMENT AND SPECIFICATION THEREFORE, ADDENDA THERETO, APPENDIX AND VARIOUS EXHIBITS.

02/25/02



City of New York
DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT
100 GOLD STREET, NEW YORK, N.Y. 10038

JERILYN PERINE
Commissioner

Date: January 29, 2002

**Certificate of No Effect**
**PIN # 806011000110**

The Department of Housing Preservation and Development (HPD) intends to award a contract (PIN # 806011000110) to provide Unarmed Security Guard Services. HPD has determined that the contract to be awarded through this solicitation will not directly result in the displacement of any City employee. Pursuant to Section 312 of The New York City Charter, this Certificate of No Effect will be included in the solicitation document.

Jerilyn Perine

**HPD**
nyc.gov/hpd
FAX (212) 267-2565

(212) 863-6100

TTY (212) 863-7934

# TABLE OF CONTENTS

PAGE

INFORMATION FOR BIDDERS                                          1

SUPPLEMENTAL INFORMATION FOR BIDDER                             21

BID FORM                                                       24

FORM OF BID BOND WITH ACKNOWLEDGMENT                            29

BIDDER QUALIFICATION STATEMENT                                 32

BIDDER'S CERTIFICATION                                         34

AGREEMENT                                                      35

ARTICLE
1    Definitions
2    The Agreement                                            35
3    Time of Performance                                      36
4    Scope of Services                                        36
5    Payment                                                  37
6    Payment Procedure                                        37
7    Prompt Payment                                           38
8    Records and Audit                                        39
9    Limitation on Payments                                   39
10   Insurance                                                40
11   Liquidated Damages                                       40
12   Payment and Performance Bond                             42
13   Payment Guarantee                                        43
14   Contractor's Employees and Liability                     43
15   Termination                                              44
16   Resolution of Disputes                                   45
17   Assignments                                              46
18   Notices                                                  50
19   City Supplemental Terms and Conditions                   51
20   Equal Employment Opportunity                             51
21   Conditions Precedent                                     58
22   Changes                                                  59
23   Miscellaneous Provisions                                 59
                                                              60

Acknowledgments                                               64

Scope of Services                                     Exhibit A
Executive Order 50 (EO) Provisions                    Exhibit B
Section 230 Wage Rates                                Exhibit C

# THE CITY OF NEW YORK
## DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT

## BID PACKAGE
## PART A

## INFORMATION FOR BIDDERS

## ARTICLE 1
## DESCRIPTION AND LOCATION OF WORK

The description and location of the work for which bids are requested are specified on Attachment 1, "Bid Information".

## ARTICLE 2
## TIME AND PLACE FOR RECEIPT OF BIDS

Sealed bids shall be received on or before the date and hour specified on Attachment 1, at which time they will be publicly opened and read aloud in the presence of the Commissioner or his or her representative, and of any bidders who may desire to be present.

## ARTICLE 3
## DEFINITIONS

The definitions set forth in the Procurement Policy Board Rules shall apply to this Invitation For Bids.

## ARTICLE 4
## INVITATION FOR BIDS AND CONTRACT DOCUMENTS

4.1        Except for titles, sub-titles, headings, running headlines, tables of contents and indices (all of which are printed herein merely for convenience) the following, except for such portions thereof as may be specifically excluded, shall be deemed to be part of this Contract and the Invitation for Bids.

1.    The Advertisement and Proposal for Bids (Attachment 2 to this Information for Bidders).
2.    The Bid.
3.    The Agreement.
4.    The Budget Director's Certificate.
5.    The Specifications.
6.    All addenda issued by the Commissioner prior to the receipt of bids.
7.    All provisions required by law to be inserted in this Contract whether actually inserted or not.
8.    The Notice of Award.
9.    Performance and Payment Bonds.
10.   Notice to Proceed with Work.
11.   Information For Bidders.

4.2        For particulars as to this procurement, including quantity and quality of the purchase, extent of the work or labor to be performed, delivery and performance schedule, and any other special instructions, prospective bidders are referred to the Invitation For Bids

documents. A copy of such documents can be obtained at the location set forth on Attachment 1.

4.3    Deposit for Copy of Invitation For Bids Documents. Prospective bidders may obtain a copy of the Invitation For Bids documents by complying with the conditions set forth in the Advertisement for Bids. The deposit, if required, must be in the form of a money order or cashier's or certified check made payable to the City of New York, and drawn upon a state or national bank or trust company, or of a check of such bank or trust company signed by a duly authorized officer thereof.

4.4    Return of Invitation For Bids Documents. All Invitation For Bids documents must be returned to the Department upon request. If the bidder elects not to submit a bid thereunder, Invitation For Bids documents shall be returned to the Department along with a statement that no bid will be submitted.

4.5    Return of Deposit. Such deposit will be returned within thirty (30) days after the award of the contract or the rejection of all bids as set forth in the advertisement provided the Invitation For Bids documents are returned to the location specified in Attachment 1, in physical condition satisfactory to the Commissioner.

4.6    Additional Copies. Additional copies of the Invitation For Bids documents may be obtained, subject to the conditions set forth in the advertisement for bids.

## ARTICLE 5
## PRE-BID CONFERENCE

5.1    A pre-bid conference shall be held as set forth in Attachment 1.

5.2    Nothing stated at the pre-bid conference shall change the terms or conditions of the Invitation For Bids unless a change is made by written amendment as provided in Section 9, below, and the Procurement Policy Board Rules.

5.3    Failure to attend a mandatory pre-bid conference shall constitute grounds for the rejection of the bid.

Please notify the Agency Contact listed on Attachment 1 of the number of representatives from your firm that will attend the conference at least five (5) City working days before the date of the pre-bid conference.

## ARTICLE 6
## AGENCY CONTACT

Any questions or correspondence relating to this bid solicitation shall be addressed to the Agency Contact Person specified in Attachment 1.

## ARTICLE 7
## BIDDER'S OATH

7.1    The bid shall be properly signed by an authorized representative of the bidder and the bid shall be verified by the written oath of the authorized representative who signed the bid, that the several matters stated and information furnished therein are in all aspects true.

2

7.2    A materially false statement willfully or fraudulently made in connection with the bid or any of the forms completed and submitted with the bid may result in the termination of any contract between the City and the Bidder. As a result, the Bidder may be barred from participating in future City contracts as well as be subject to possible criminal prosecution.

## ARTICLE 8
## EXAMINATION OF PROPOSED CONTRACT

8.1    Request for Interpretation or Correction. Prospective bidders must examine the Contract Documents carefully and before bidding must request the Commissioner in writing for an interpretation or correction of every patent ambiguity, inconsistency or error therein which should have been discovered by a reasonably prudent bidder. Such interpretation or correction, as well as any additional contract provisions the Commissioner may decide to include, will be issued in writing by the Commissioner as an addendum to the contract, which will be sent to each person recorded as having received a copy of the contract documents from the Contract Clerk, and which will also be posted at the place where the contract documents are available for the inspection of prospective bidders. Upon such mailing or delivery and posting, such addendum shall become a part of the contract documents, and binding on all bidders, whether or not actual notice of such addendum is shown.

8.2    Only Commissioner's Interpretation or Correction Binding. Only the written interpretation or correction so given by the Commissioner shall be binding, and prospective bidders are warned that no other officer, agent or employee of the City is authorized to give information concerning, or to explain or interpret, the contract.

## ARTICLE 9
## FORM OF BIDS

9.1    Each bid must be submitted upon the prescribed form and must contain: (a) the name, residence and place of business of the person or persons making the same; (b) the names of all persons interested therein, and if no other person is so interested, such fact must be distinctly stated; (c) a statement to the effect that it is made without any connection with any other person making a bid for the same purpose and that it is in all respects fair and without collusion or fraud; (d) a statement that no Councilman or other officer or employee or person whose salary is payable in whole or part from the City Treasury is directly or indirectly interested therein or in the supplies, materials or equipment and work or labor to which it relates, or in any portion of the profits thereof; (e) a statement that the bidder is not in arrears to the City or to any agency upon a debt or contract or taxes, and is not a defaulter as surety or otherwise upon any obligation to the City to any agency thereof, except as set forth in the bid.

9.2    The Bid shall be typewritten or written legibly in ink. The Bid shall be signed in ink. Erasures or alterations shall be initialed by the signer in ink. Failure to conform with the requirements of this paragraph 10 shall result in rejection of the bid.

## ARTICLE 10
## IRREVOCABILITY OF BID

The prices set forth in the bid cannot be revoked and shall be effective until the award of the contract, unless the bid is withdrawn as provided for in Sections 16 and 19, below.

## ARTICLE 11
## ACKNOWLEDGMENT OF AMENDMENTS

The receipt of any amendment to the contract documents shall be acknowledged by the bidder in its bid submission.

## ARTICLE 12
## BID SAMPLES AND DESCRIPTIVE LITERATURE

Bid samples and descriptive literature shall not be submitted by the bidder, unless expressly requested elsewhere in the contract or contract documents. Any unsolicited bid samples or descriptive literature which are submitted shall not be examined or tested and shall not be deemed to vary any of the provisions of this contract.

## ARTICLE 13
## PROPRIETARY INFORMATION/TRADE SECRETS

13.1     The bidder shall identify those portions of the bid which it deems to be confidential, proprietary information or trade secrets, and provide justification why such materials shall not be disclosed by the City. All materials the bidder desires to remain confidential shall be clearly indicated by stamping the pages on which such information appears, at the top and bottom thereof with the work "Confidential". Such materials stamped "Confidential" must be easily separable from the non-confidential sections of the bid.

13.2     All such materials so indicated shall be reviewed by the agency and any decision not to honor a request for confidentiality shall be communicated in writing to the bidder. For those bids which are unsuccessful, all such confidential materials shall be returned to the bidder. Prices, makes and model or catalog numbers of the items offered, deliveries, and terms of payment shall be publicly available after bid opening regardless of any designation of confidentiality made the bidder.

## ARTICLE 14
## PRE-OPENING MODIFICATION OR WITHDRAWAL OF BIDS

14.1     Bids may be modified or withdrawn by written notice received in the office designated in Attachment 1, before the time and date set forth the bid opening. A telegraphic, mailgram or facsimile modification or withdrawal shall be effective provided it was received in the manner set forth in the Procurement Policy Board Rules and Paragraph 10(a) above.

14.2     If a bid is withdrawn in accordance with this Section, the bid security, if any, shall be returned to the bidder.

## ARTICLE 15
## BID EVALUATION AND AWARD

15.1     In accordance with the New York City Charter, the Procurement Policy Board Rules and the terms and conditions of this Invitation For Bids, this contract shall be awarded, if at all, to the responsible bidder whose bid meets the requirements and evaluation criteria set forth in the Invitation For Bids, and whose bid price is either the most favorable bid price or, if the Invitation For Bids so states, the most favorable evaluated bid price. A bid may not be evaluated for any requirement or criterion that is not disclosed in the Invitation For Bids.

4

15.2     <u>Restrictions</u>.  No negotiations with any bidder shall be allowed to take place except under the circumstances and in the manner set forth in <u>Section 21</u>.  Nothing in this Section shall be deemed to permit a contract award to a bidder submitting a higher quality item than that designated in the Invitation For Bids if that bid is not also the most favorable bid.

## ARTICLE 16
## LATE BIDS, LATE WITHDRAWALS AND LATE MODIFICATIONS

16.1     Any bid received at the place designated in the solicitation after the time and date set for receipt of bids is late and shall not be considered.  Any request for withdrawal or modification received at the place designated in the solicitation after the time and date set for receipt of bids is late and shall not be considered.

16.2     The exception to this provision if that a late modification of a successful bid that makes the bid terms more favorable to the City shall be considered at any time it is received.

## ARTICLE 17
## WITHDRAWAL OF BIDS

Except as provided for in <u>Section 15</u>, above, a bidder may not withdraw its bid before the expiration of forty five (45) days after the date of the opening of bids; thereafter, a bidder may withdraw its bid only in writing and in advance of an actual award.  If within sixty (60) days after the execution of the contract, the Commissioner fails to fix the date for commencement of work by written notice to the bidder, the bidder, at his option, may ask to be relieved of his obligation to perform the work called for by written notice to the Commissioner.  If such notice is given to the Commissioner, and the request to withdraw is granted the bidder waives all claims in connection with this agreement.

## ARTICLE 18
## MISTAKE IN BIDS

(a)     <u>Mistake Discovered Before Bid Opening</u>

A bidder may correct mistakes discovered before the time and date set for bid opening by withdrawing or correcting the bid as provided in <u>Section 15</u>, above.

(b)     <u>Mistakes Discovered Before Award</u>

1.     In accordance with the Procurement Policy Board Rules, if a bidder alleges a mistake in bid after bid opening and before award, the bid may be corrected or withdrawn upon written approval of the Agency Chief Contracting Officer and Agency Counsel if the following conditions are met:

(i)     <u>Minor Informalities</u>.  Minor informalities in bids are matters of form rather than substance evident from the bid document, or insignificant mistakes that can be waived or  corrected without prejudice to other bidders; that is, the effect on price, quantity, quality, delivery, or contractual conditions is negligible.  The Contracting Officer may waive such informalities or allow the bidder to correct them depending on which is in the best interest of the City.

5

(ii)  <u>Mistakes Where Intended Correct Bid is Evident</u>.   If the mistake and the intended correct bid are clearly evident on the face of the bid document, the bid shall be corrected to the intended correct bid and may not be withdrawn.

(iii)  <u>Mistakes Where Intended Correct Bid is Not Evident</u>.   A bidder may be permitted to withdraw a low bid if:

    a.  a mistake is clearly evident on the face of the bid document but the intended correct bid is not similarly evident; or

    b.  the bidder submits proof of evidentiary value which clearly and convincingly demonstrates that a mistake was made.

(c)  <u>Mistakes Discovered After Award</u>.  Mistakes shall not be corrected after award of the contract except where the City Chief Procurement Officer subject to the approval of Corporation Counsel makes a written determination that it would be unconscionable not to allow the mistake to be corrected.

## ARTICLE 19
## LOW TIE BIDS

19.1    When two or more low responsive bids from responsible bidders are identical in price, meeting all the requirements and criteria set forth in the Invitation For Bids, the Agency Chief Contracting Officer will break the tie in the following manner and order of priority:

1.  Award to a certified New York City small minority or woman-owned business entity bidder;
2.  Award to a New York City bidder;
3.  Award to a certified New York State small, minority or woman-owned business bidder;
4.  Award to a New York State bidder.

19.2    If two or more bidders still remain equally eligible after application of paragraph (a) above, award shall be made by a drawing by lot limited to those bidders.  The bidders involved shall be invited to attend the drawing.  A witness shall be present to verify the drawing and shall certify the results on the bid tabulation sheet.

## ARTICLE 20
## REJECTION OF BIDS

20.1    <u>Rejection of Individual Bids</u>.  The Agency may reject a bid if:

1.  The bidder fails to furnish any of the information required pursuant to Section 25 or 30 hereof; or if
2.  The bidder is determined to be not responsible pursuant to the Procurement Policy Board Rules; or if
3.  The bid is determined to be non-responsive pursuant to the Procurement Policy Board Rules; or if
4.  The bid, in the opinion of the Agency Chief Contracting Officer, contains unbalanced bid prices and is thus non-responsive, unless the bidder can

show that the prices are not unbalanced for the probable required quantity of such items, or if the imbalance is corrected pursuant to <u>Section 16</u>.

(b)    <u>Rejection of All Bids</u>.  The Agency Chief Contracting Officer may reject all bids and may elect to resolicit by bid or by other methods authorized under the PPB Rules.

(c)    <u>Rejection of All Bids and Negotiation With All Responsible Bidders</u>.  The Agency may determine that it is appropriate to cancel the Invitation For Bids after bid opening and before award and to complete the acquisition by negotiation.  This determination shall be based on one of the following reasons:

1.    All otherwise acceptable bids received are at unreasonable prices, or only one bid is received and the Agency Chief Contracting Officer cannot determine the reasonableness of the bid price, or no responsive bid has been received from a responsible bidder; or

2.    In the judgment of the Agency Chief Contracting Officer the bids were not independently arrived at in open competition, were collusive, or were submitted in bad faith.

20.2    When the Agency Head has determined that the Invitation for Bids is to be canceled and that use of negotiation is appropriate to complete the acquisition, the contracting officer may negotiate and award the contract without issuing a new solicitation subject to the following conditions:

1.    prior notice of the intention to negotiate and a reasonable opportunity to negotiate have been given by the contracting officer to each responsible bidder that submitted a bid in response to the Invitation for Bids;

2.    the negotiated price is the lowest negotiated price offered by any responsible bidder; and

3.    the negotiated price is lower than the lowest rejected bid price of a responsible bidder that submitted a bid in response to the Invitation for Bids.

## ARTICLE 21
## RIGHT TO APPEAL DETERMINATIONS OF NON-RESPONSIVENESS OR NON-RESPONSIBILITY
## AND RIGHT TO PROTEST SOLICITATIONS AND AWARD

The bidder has the right to appeal a determination of non-responsiveness or non-responsibility and has the right to protest a solicitation and award.  For further information concerning these rights, the bidder is directed to the Procurement Policy Board Rules.

## ARTICLE 22
## AFFIRMATIVE ACTION AND EQUAL EMPLOYMENT OPPORTUNITY

This Invitation to Bid is subject to applicable provisions of Federal, State and Local Laws and executive orders requiring affirmative action and equal employment opportunity.

7

## ARTICLE 23
## VENDEX QUESTIONNAIRE

Pursuant to Administrative Code section 6-116.2 and the Rules of the Procurement Policy Board (9 RCNY section 5-02), bidders may be obligated to submit completed VENDEX questionnaires. Generally, if this bid is $100,000 or more, or if this bid when added to the sum total of all contracts, concessions and franchises the bidder has received from the City and any subcontracts received from City contractors over the past twelve months equals or exceeds $100,000, VENDEX questionnaires must be completed and submitted. Any questions concerning this requirement must be submitted to the Agency Chief Contracting Officer or the contact person for this contract.

## ARTICLE 24
## COMPLAINTS ABOUT BID PROCESS

The New York City Comptroller is charged with the audit of contracts in New York City. Any vendor who believes that there has been unfairness, favoritism or impropriety in the bid process should inform the Comptroller, Office of Contract Administration, One Centre Street, Room 835, New York, New York; telephone number (212) 669-2323.

## ARTICLE 25
## BID, PERFORMANCE AND PAYMENT SECURITY

25.1    Bid Security.  The Mayor's Office of Operations or the Agency Chief Contracting Officer may require the submission of bid security, if any, in an amount and type specified on Attachment 1.  Bid security shall accompany the bid in the bid envelope.  Bid security shall be returned to unsuccessful bidders.

25.2    Performance Security.  The Mayor's Office of Operations or the Agency Chief Contracting Officer may require performance security in the amount specified on Attachment 1. The performance security shall be delivered by the contractor to the City at the same time the contract is signed by the Commissioner or his designee.  If a contractor fails to deliver the required performance security, the award shall be rescinded, its bid security shall be enforced and award of the contract may be made to the next lowest responsive and responsible bidder or the contract may be rebid.

25.3    Payment Security.  Payment security shall be delivered by the contractor to the City at the same time the contract is signed by the Agency Head or his designee.  If a contractor fails to deliver the required payment security, the award shall be rescinded, bid security enforced, and award of the contract may be made to the next lowest responsive and responsible bidder or the contract may be rebid.

25.4    Acceptable Security.  Acceptable security for bids, performance and payment shall be limited to:

1.    a one-time bond in a form satisfactory to the City;
2.    a bank certified check or money order;
3.    City Bonds; or
4.    other financial instruments as determined by the Office of Operations in consultation with the Comptroller.

# EXHIBIT 1
# PART 2 OF 5

## ARTICLE 26
## FAILURE TO EXECUTE CONTRACT AND FURNISH SECURITY

In the event of failure of the successful bidder to execute the contract and furnish the required security within ten (10) days after notice of the award of the contract, the deposit of the successful bidder or so much thereof as shall be applicable to the amount of the award made shall be retained by the City, and the successful bidder shall be liable for and hereby agrees to pay on demand the difference between the price bid and the price for which such contract shall be subsequently awarded, including the cost of any required reletting and less the amount of such deposit. No plea of mistake in such accepted bid shall be available to the bidder for the recovery of the deposit or as a defense to any action based upon such accepted bid. Further, should the bidder's failure to comply with this Article cause any funding agency, body or group (Federal, State, City, public, private, etc.) to terminate, cancel or reduce the funding on this project, the bidder in such event shall be liable also to the City for the amount of actual funding withdrawn by such agency on this project less the amount of the forfeited deposit.

## ARTICLE 27
## POWER OF ATTORNEY

Attorneys in fact who sign performance or payment bonds must file with each bond a certified copy of their power of attorney to sign said bond or bonds.

## ARTICLE 28
## BIDDER RESPONSIBILITIES AND QUALIFICATION

28.1    Bidders must include with their bids all information necessary for a determination of bidder responsibility, as set forth in the specifications.

28.2    The Agency may require any bidder or prospective bidder to furnish all books of account, records, vouchers, statements or other information concerning the bidder's financial status for examination as may be required by the Agency to ascertain the bidder's responsibility and capability to perform the contract. If required, a bidder must also submit a sworn statement setting forth such information as the Agency may require concerning present and proposed plant and equipment, the personnel and qualifications of his working organizations, prior experience and performance record.

28.3    Oral Examination on Qualifications. In addition thereto, and when directed by the Agency, the bidder, or a responsible officer, agent or employee of the bidder, must submit to an oral examination to be conducted by the Agency in relation to his proposed tentative plan and schedule of operations, and such other matters as the Agency may deem necessary in order to determine the bidder's ability and responsibility to perform the work in accordance with the contract. Each person so examined must sign and verify a stenographic transcript of such examination noting thereon such collections as such person may desire to make.

28.4    If the bidder fails or refuses to supply any of the documents or information set forth in paragraph (a) hereof or fails to comply with any of the requirements thereof, the Agency may reject the bid.

## ARTICLE 29
## EMPLOYMENT REPORTS (BUREAU OF LABOR SERVICES)

In accordance with Executive Order No. 50 (1980) as modified by Executive Order 108 (1986), the filing of a completed Employment Report (ER) is a requirement of doing business with the City of New York for contractors with contracts of $1,000,000 or more and subcontractors with subcontracts of $750,000 or more. The required forms and information are attached hereto.

## ARTICLE 30
## LABOR LAW REQUIREMENTS

The successful bidder will be required to comply strictly with all Federal, State and local labor laws and regulations, including but not limited to providing on-the-job training opportunities and payment of prevailing wages (See Exhibit A to the Contract).

## ARTICLE 31
## INSURANCE

Bidders are advised that the insurance requirements contained herein are regarded as a material term of this contract. During performance and up to the date of final acceptance, the contractor must effect and maintain with companies authorized to do business in the State of New York, the types and amounts of insurance specified in the Agreement.

## ARTICLE 32

## INTENTIONALLY BLANK

## ARTICLE 33
## LICENSE AND PERMITS

The successful bidder will be required to obtain all necessary licenses and permits necessary to perform the work.

## ARTICLE 34
## MULTIPLE PRIME CONTRACTORS

If more than one prime contractor will be involved on this project, all contractors are required to examine the Invitation for Bid packages for all other parts of the project.

## ARTICLE 35
## LOCALLY BASED ENTERPRISE REQUIREMENTS (LBE)

35.1    This contract is subject to the requirements of Administrative Code, Section 6-108.1, and the regulations promulgated thereunder. No Contract will be awarded unless and until these requirements have been complied with in their entirety.

35.2    Be advised that:

(a)    If any portion of the contract is subcontracted, not less than ten percent of the total dollar amount of the contract shall be awarded to locally based enterprises ("LBEs"); except, where less than ten percent of the total dollar amount of the contract is subcontracted, such lesser percentage shall be so awarded.

10

(b)   No contractor shall require performance and payment bonds from LBE subcontractors.

(c)   No contract shall be awarded unless the contractor first identifies in its bid:

1.   the percentage, dollar amount and type of work to be subcontracted; and

2.   the percentage, dollar amount and type of work to be subcontracted; to LBEs.

(d)  Within ten calendar days after notification of low bid, the apparent low bidder shall submit an "LBE Participation Schedule" to the contracting agency. If such schedule does not identify sufficient LBE subcontractors to meet the requirements of Administrative Code Section 6-108.1, the apparent low bidder shall submit documentation of its good faith efforts to meet such requirements.

1.   The "LBE Participation Schedule" shall include:

a.   the name and address of each LBE that will be given a subcontract,

b.   the percentage, dollar amount and type of work to be subcontracted to the LBE, and

c.   the dates when the LBE subcontract work will commence and end.

2.   The following documents shall be attached to the "LBE Participation Schedule":

a.   verification letters from each subcontractor listed in the "LBE Participation Schedule stating that the LBE will enter into a formal agreement for work,

b.   certification documents of any proposed LBE subcontractor which is not on the LBE certified list, and.

c.   copies of the certification letter of any proposed subcontractor which is an LBE.

3.   Documentation of good faith efforts to achieve the required LBE percentage shall include as appropriate but not limited to the following:

a.   attendance at prebid meetings, when scheduled by the agency, to advise bidders of contract requirements;

b.   advertisement where appropriate in general circulation media, trade association publications, and small business media, trade association publications and small business media of the specific subcontracts that would be at least equal to the percentage goal for LBE utilization specified by the contractor;

c.   written notification to associations of small, minority and women contractors soliciting specific subcontractors;

d.   written notification by certified mail to LBE firms that their interest in the contract is solicited for specific work items and their estimated values;

11

e.    demonstration of efforts made to select portions of the work for performance by LBE firms in order to increase the likelihood of achieving the stated goal;

f.    documented efforts to negotiate with LBE firms for specific subcontracts including at a minimum;

(i)    The names, address and telephone numbers of LBE firms that are contacted,

(ii)    A description of the information provided to LBE firms regarding the plans and specifications for portions of the work to be performed;

(iii)    Documentation showing that no reasonable price can be obtained from LBE firms;

(iv)    A statement of why agreements with LBE firms were not reached;

g.    a statement of the reason for rejecting any LBE firm which the contractor deemed to be unqualified; and

h.    documentation of efforts made to assist the LBE firms contacted that needed assistance in obtaining required insurance.

(e)    Unless otherwise waived by the agency head with the approval of ODC, failure of a proposed contractor to provide the information required by paragraphs c and d above may render the bid non-responsive and the contract may not be awarded to the bidder. If the contractor states that it will subcontract a specific portion of the work, but can demonstrate despite good faith efforts it cannot achieve its required LBE percentage for subcontracted work until after award of contract, the contract may be awarded, subject to a letter of compliance from the contractor stating that it will comply with Administrative Code Section 6-108.1 and subject to approval by the agency head. If the contractor has not met its required LBE percentage prior to award, the contractor shall demonstrate that a good faith effort has been made subsequent to award to obtain LBEs on each subcontract until its meets the required percentage.

(f)    When a bidder indicates prior to award that no work will be subcontracted, no work may be subcontracted without the prior written approval of the Agency Head, which shall be granted only if the contractor in good faith seeks LBE subcontractors at least six weeks prior to the start of work.

(g)    The contractor may not substitute or change any LBE which was identified prior to award of the contract with the written permission of the Agency Head. The contractor shall make a written application to the contracting agency head for permission to make such substitution or change, explaining why the contractor needs to change its LBE subcontractor and how the contractor will meet its LBE subcontracting requirement. Copies of such application must be served on the originally identified LBE by certified mail return receipt requested as well as the proposed substitute LBE. The Agency Head shall determine whether or not to grant the contractor's request for substitution.

## ARTICLE 36
## BID SUBMISSION REQUIREMENTS

The following forms, all of which are contained in the Exhibits attached hereto, are to be completed and submitted with the bid:

1. Bid Form;
2. Bid Security (if required, see Attachment 1);
3. Bidder Qualification Statement (see Part B Supplemental Information For Bidders.)

The following forms shall be obtained by the Contractor from HPD's Office of Equal Opportunity:

1.
   a. Employment Report (if bid is in excess of $50,000)
   b. Contract Certificate (if bid is less than $1,000,000 and more than $750,000)

Non-compliance with any of the above bid submission requirements may result in the disqualification of the bid.

## ARTICLE 37
## REGISTRATION

This Contract shall not be binding or of any force unless it is registered by the Comptroller in accordance with Section 328 of the City Charter and the Procurement Policy Board Rules. This Contract shall continue in force only after annual appropriation of funds by the City of New York and certification as hereinabove set forth.

## ARTICLE 38
## PROCUREMENT POLICY BOARD RULES

This Information for Bidders is subject to the Rules of the Procurement Policy Board of the City of New York effective August 1, 1990. In the event of a conflict between said Rules and a provision of this Invitation for Bidders, the Rules shall take precedence.

## ARTICLE 39
## PROMPT PAYMENT

The Prompt Payment provisions set forth in the Procurement Policy Board Rules in effect at the time of this solicitation will be applicable to payments made under a contract resulting from this solicitation. The provisions require the payment to contractors of interest on payments made after the required payment date except as set forth in of the Rules.

The contractor must submit a proper invoice to receive payment, except where the contract provides that the contractor will be paid at predetermined intervals without having to submit an invoice for each scheduled payment.

Determinations of interest due will be made in accordance with the provisions of Procurement Policy Board Rules and General Municipal Law §3-a.

## ATTACHMENT 1
## BID INFORMATION

| | |
|---|---|
| DESCRIPTION OF WORK: | UNARMED SECURITY GUARD CONTRACT |
| LOCATION OF WORK: | VARIOUS SITES |
| DOCUMENTS AVAILABLE AT: | 100 GOLD STREET, ROOM 1-W, NEW YORK CITY, 10038; (212) 863-6930 |
| SUBMIT BIDS BEFORE BID OPENING TO: | HPD DISCIPLINARY UNIT, 100 GOLD STREET, RM. 1-W, NEW YORK CITY 10038 |
| TIME: | NO LATER THAN 11:00 AM ON TUESDAY, APRL 2, 2002. |
| BID OPENING PLACE: | 100 GOLD STREET, NEW YORK CITY, 1ST FLOOR CONFERENCE ROOM 1 R-3 |
| BID OPENING DATE AND HOUR: | TUESDAY, APRIL 2, 2002, at 11:00 AM |
| OPTIONAL PRE-BID CONFERENCE: | HPD, 100 GOLD STREET, RM. 1 R-3, NYC |
| PLACE, DATE, AND HOUR: | THURSDAY, MARCH 21, 2002 at 10:30 AM |
| BID SECURITY: | 5% OF THE BID AMOUNT |
| PERFORMANCE BOND: | $ 500,000.00 |
| PAYMENT BOND: | $ 1,500,000.00 |
| AGENCY CONTACT PERSON: | MARIO FERRIGNO, DIRECTOR OF DISCIPLINARY UNIT   (212) 863-6930 |

14

## ATTACHMENT 2
## COPY OF ADVERTISEMENT FOR BIDS

### DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT

### PROPOSAL

Sealed bids will be received by the Department of Housing Preservation and Development in Room 1 W, 100 Gold Street, New York City, New York 10038, no later than **11:00 AM on Tuesday, April 2, 2002.**

BIDS WILL BE PUBLICLY OPENED AND READ AT **11:00 AM** ON THE DATE AND PLACE SPECIFIED BELOW:

**Tuesday, April 2, 2002**
**HPD, 100 Gold Street, NY, NY 10038**
**Conference Room 1 R-3**

The Department of Housing Preservation and Development, Office of Administration (HPD) is accepting bids to provide unarmed uniform security guard services for approximately 10 HPD offices/construction sites throughout the metropolitan area for 12 months, beginning 30 days from the receipt of a Notice to Proceed.

A Pre-Bid Conference will be held in Conference Room 1 R-3, 100 Gold Street, New York, New York on **Thursday, March 21, 2002**, at **10:30 AM**.

Blank bid forms, the contract documents and further information may be obtained upon application to the Department of Housing Preservation and Development, Disciplinary Unit, Room 1W, 100 Gold Street, New York, New York 10038, telephone No. (212) 863-6930.

The Contract shall be subject to the prevailing wage rate established by the Comptroller of the City of New York, and to all Equal Opportunity provisions required by State or City statutes, rules and regulations.

15

## PART B
## SUPPLEMENTAL INFORMATION FOR BIDDERS

### ARTICLE 1
### BIDDER QUALIFICATION STATEMENT

In accordance with <u>Section 36</u> of the Information for Bidders, the bidder shall complete the Bidder Qualification Statement set forth in <u>Article 3 of Part C</u> of this Bid Package in its entirety and submit it with the bid proposal prior to the date of the bid opening.

### ARTICLE 2
### EQUAL EMPLOYMENT OPPORTUNITY

2.1    <u>Equal Employment Opportunity</u>.    HPD has adopted a policy to provide equal opportunity in employment for all qualified persons and to prohibit discrimination in employment because of race, creed, color, sex, national origin, age, and sexual orientation or affectional preference and to promote the full realization of equal employment opportunity through a continuing affirmative program of compliance. The Contractor must do more than merely support non-discrimination.    It means taking positive steps to recruit, employ and develop qualified or qualifiable minority group members in all job categories of work and advancement. The bidder's attention is called to the various provisions set forth in the Contract Documents with respect to providing equal opportunity and prohibiting discrimination in employment.

Prior to the award of the Contract, if requested to do so by the Compliance Officer, the low bidder must attend a pre-award conference to be held in the offices of EOD for the purpose of acquainting the bidder with the statutory and contractual requirements and those specific measures which shall constitute an affirmative program of implementation. After a pre-award conference and prior to the award, the low bidder shall prepare a written statement which describes specific steps being undertaken for providing minority group members with equal opportunity in training and apprenticeship programs, journeyman recruitment, and all other aspects of employment ("Program of Equal Opportunity").   The result shall be to assure that there are minority group members employed in all trades and all phases of contracts.   The Program of Equal Opportunity must be submitted to HPD for approval within seven (7) days after the preaward conference.    HPD shall be the sole judge of the Program of Equal Opportunity's acceptability.   No Contract will be awarded to a bidder unless the Program of Equal Opportunity has been accepted by HPD.

2.2    <u>Program of Equal Opportunity</u>.   Examples of steps that a prospective contractor or subcontractor is expected to pursue shall include, but shall not be limited to, the following:

1.    Developing an equal employment opportunity program, stating it in writing, and implementing it with controls to ensure compliance.

2.    Notifying and thoroughly informing all responsible employees (e.g., all foremen and other supervisory personnel) that the firm is an equal opportunity employer and that they are required to comply with the firm's regulations concerning equal opportunity.

3.    Designating an officer or top-level representative of the firm as Equal Employment Compliance Officer, whose responsibilities shall include, but shall not be limited to:

16

a. Consulting with union officials and/or industry representatives and reviewing collective bargaining agreements in order to ensure equal employment opportunity.

b. Cooperating with civil rights groups, community organizations, and other interested sources in order to recruit minority group workers for apprentice and journeyman entrance into employment and into the various craft unions under contract with the firm and its subcontractors.

c. Providing liaison with the Compliance Officer, including, but not limited to, reporting on the company's progress.

d. Notifying sources of recruitment in writing that the firm is an Equal Opportunity Employer and solicits referral of qualified minority group applicants for all jobs, including "white collar" jobs.

e. Acting affirmatively to ensure that minorities are hired, assigned, paid, developed, promoted, laid off, or terminated on the same basis as all employees.

f. Promoting apprenticeship training programs as a member of a joint apprenticeship committee or as an individual and requesting that the building trades give public notice that apprenticeship programs are open to everyone. Copies of such notices shall be submitted to HPD as an example of the company's affirmative compliance program.

g. Providing apprenticeship assistance to members of minority background who are potential candidates. This should include helping them obtain the information or documents needed to qualify for acceptance in particular apprenticeship programs, as well as information on how, when, or where to apply.

h. Developing other ways of encouraging minority youths to participate in apprenticeship programs such as sending a representative to local schools, community action centers, the local Labor Departments or other appropriate agencies to explain such apprenticeship programs and to encourage applications from such youths.

i. Selecting, when soliciting personnel in any category, a media format for advertisements which is likely to reach minority groups and submitting to HPD the number of copies of advertising or news releases used to accomplish this.

j. Encouraging greater participation in bidding for subcontracting work by (i) minority group subcontractors, and (ii) subcontractors with substantial minority group representation among their employees.

2.3   Additional Requirements. In addition to a written Program of Equal Opportunity, the contractor is required to:

1. Secure from its subcontractor(s) Program(s) of Equal Opportunity and other general requirements described above which are applicable to the Contractor.

17

No subcontractor may be engaged until its Program of Equal Opportunity is approved.

2.  Send a notice to each labor union or representative of workers with whom it has collective bargaining agreements, with a copy to the Compliance Officer, of its commitments pursuant to the procedure as outlined above and consult with union officials to secure their full understanding and cooperation. A sample of such Notice of Equal Employment Opportunity will be furnished by the Compliance Officer.

3.  Hire minority group members from other sources, should the unions with which it has collective bargaining agreements be unable or unwilling to supply them.

4.  Post the provisions of the Equal Opportunity clauses of Executive Order No. 11216, or equivalent posters required by HPD or any other agency of appropriate jurisdiction, in conspicuous places available to all employees and applicants for employment. Such posters will be provided by the Compliance Officer.

5.  Provide, if requested by the Compliance Officer, an estimate of the number of workers expected to be hired in each category and their racial and ethnic distribution.

No letter of award or approval of a subcontractor shall be issued without the prior approval of the Program of Affirmative Action by EOD.

## ARTICLE 3
## CONTRACTOR'S RATE

3.1     Bids for Contractor's hourly fee should reflect all charges payable to the contractor for all of the services the contractor will be required to furnish and perform at HPD sites under the Contract, excluding all costs identified in the Contract and Exhibit A thereto as Compensable Costs. Wages and salaries to be paid to the security guards will be reimbursed to the contractor by HPD as Compensable Costs. Bids should be expressed as an hourly fee to be paid to the contractor for each hour of employment by each guard.

**PART C**
**FORMS TO BE COMPLETED**
**BY BIDDER PRIOR TO BIDDING**

**ARTICLE 1**
**FORM OF BID**

**THE CITY OF NEW YORK**
**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**
**OFFICE OF ADMINISTRATION**
**100 GOLD STREET**
**NEW YORK, NEW YORK 10038**
**CONTRACT NO._____**

**BID FOR FURNISHING ALL LABOR, MATERIALS AND**
**EQUIPMENT NECESSARY AND REQUIRED FOR**
**UNARMED SECURITY GUARD SERVICES**

ADDRESS:_____BOROUGH_____
Name of Bidder_____

Bidder is (check one, as case may be, and state Social Security or Federal Employer Identification Number):

Individual  ( ) _____
Partnership ( ) _____
Corporation ( ) _____

Residence of Bidder (if Individual) _____
Place of Business of Bidder_____
Date of Bid _____

(If bidder is a partnership, fill in the following blanks:)

Name of Partners                          Residence of Partners
_____                          _____
_____                          _____
_____                          _____

(If bidder is a corporation, fill in the following blanks:)

Organized under the laws of the State of _____
Name and Home Address of President _____
_____
Name and Home Address of Secretary _____
_____
Name and Home Address of Treasurer _____
_____

The above-named bidder affirms and declares:

1. The said bidder is of lawful age and the only one interested in this bid and that no person, firm or corporation other than the hereinabove named has any interest in this bid, or in the contract proposed to be taken.

19

2.    By submission of this bid, each bidder and each person signing on behalf of any bidder certifies, and in the case of a joint bid each party thereto certifies that as to his own organization, under penalty of perjury, and to the best of its knowledge and belief: (i) The prices which have been quoted in this bid have been arrived at independently without collusion, consultation, communication, or agreement, for the purpose of restricting competition, with any other bidder or with any competitor or potential competitor; (ii) Unless otherwise required by law, the prices which have been quoted in this bid have not been knowingly disclosed by the bidder, prior to opening, directly or indirectly to any other bidder or to any competitor or potential competitor; and (iii) No attempt has been made or will be made by the bidder to induce any other person, partnership or corporation to submit or not to submit a bid for the purpose of restricting competition.

3.    No councilman or other officer or employee or person whose salary is payable in whole or in part by the City of New York ("City") is directly or indirectly interested in this bid, or in the supplies, materials, equipment, work or labor to which it relates; or in any of the profits thereof.

4.    Said bidder is not in arrears to the City upon debt, contract, or taxes, and is not in default, as surety or otherwise, upon any obligation to the City, and has not been declared not responsible, or disqualified, by any agency of the City or the State of New York ("State"), nor is there any proceeding pending relating to the responsibility or qualifications of the bidder to receive public contracts. The bidder shall also state in the bid the Employer Identification Number.

5.    The bidder, as an individual, or as a member, partner, director or officer of the bidder if the same be a firm, partnership, or corporation, executes this document expressly warranting and representing that should this bid be accepted by the City and the Contract awarded him, he and his subcontractors engaged in the performance of the Contract (i) will comply with the provisions of Section 6-108 of the City Administrative Code and the nondiscrimination provisions of Section 220e of the State Labor Law as more expressly and in detail set forth in the Contract; (ii) will comply with the provisions of Section 6-109 of the Administrative Code of the City of New York in relation to minimum wages and other stipulations as more expressly and in detail set forth in the Contract; (iii) have complied with the provisions of the aforesaid laws since their respective effective dates; and (iv) will post notices, to be furnished by the City, setting forth the requirements of the aforesaid law in prominent and conspicuous places in each and every plant, factory, building and structure where employees engaged in the performance of the Contract can readily view it, and will continue to keep such notices posted until all the supplies, materials and equipment or all the work, labor and services required to be furnished or rendered by the Contractor has been accepted by the City.

In the event of breach or violation of any of the foregoing, the bidder may be subject to damages, liquidated or otherwise, cancellation of the contract and suspension as a bidder for a period of three (3) years.

(The words, "the bidder", "he", "his" and "him" where used herein shall mean the individual bidder, firm, partnership or corporation executing this bid form).

6.    Said bidder has visited and examined the site of the work and has carefully examined the Contract in the form approved by the City's Corporation Counsel, and will execute the Contract and perform all its items, covenants and conditions, and will provide, furnish and

20

deliver all the work, materials, supplies, tools and appliances for all labor and materials necessary or required for the hereinbefore named work in strict conformity with the Contract.

7. The bidder agrees to be subject to and to perform all the covenants, terms and conditions of the General Conditions, the Special Conditions (if any), the Specifications, the Federal Conditions (if any), and the Equal Opportunity provisions annexed to the Contract.

8.(a)The City is exempt from payment of Federal, State, local taxes and Sales and Compensating Use Taxes of the State of New York and of cities and counties on all materials and supplies sold to the City pursuant to the provisions of this Contract. These taxes are not to be included in bids. However, this exemption does not apply to tools, machinery, equipment or other property leased by or to the bidder or a subcontractor, or to supplies and materials, which, even though they are consumed, are not incorporated into the completed work (consumable supplies), and the bidder and his subcontractors shall be responsible for any pay and all applicable taxes, including Sales and Compensating Use Taxes, on such leased tools, machinery, equipment or other property and upon all such unincorporated supplies and materials.

(b) The bidder and his subcontractors and materialmen shall obtain any and all necessary Contractor Exempt Purchase Certificates or resale certificates from the appropriate governmental agency or agencies, and furnish a Contractor Exempt Purchase Certificate or resale certificate to all persons, firms or corporations from which they purchase supplies and materials for the performance of the work covered by this Contract.

9.(a)The Contractor agrees to sell and the City agrees to purchase all materials other than consumable supplies, required, necessary or proper for or incidental to the construction of the Project covered by this Contract.

(b)The Contractor agrees to construct the Project and to perform all work, labor and services required, necessary or proper for or incidental thereto. The sum so paid pursuant to this Contract for supplies, materials, work, labor and services required hereunder shall be in full consideration for the performance by the Contractor for all his duties and obligations under this Contract.

(c)The purchase by the Contractor of the supplies and materials sold hereunder shall be a purchase of procurement for resale and therefore not subject to the State or City Sales or Compensating Use Taxes or any such taxes of cities or counties. The sales of such supplies and materials by the Contractor to the City is exempt from the aforesaid sales or compensating use taxes. With respect to such supplies and materials, the Contractor, at the request of the City, shall furnish to the City such bills of sale and other instruments as may be required by it, properly executed, acknowledged and delivered assuring to the City titles to such supplies and materials, free of liens and encumbrances, and the Contractor shall mark or otherwise identify all such materials as the property of the City.

(d) Title to all materials to be sold by the Contractor to the City pursuant to the provisions of this Contract, shall immediately vest in and become the sole property of the City upon delivery of such supplies and materials to the site and prior to its becoming a part of the permanent structure. Notwithstanding such transfer of title, the Contractor shall have the full and continuing responsibility to install such materials and supplies in accordance with the provisions of this Contract, protect them, maintain them in a proper condition and forthwith repair, replace and make good any damage thereto, theft or disappearance thereof, and furnish additional materials in place of any that may be lost, stolen or rendered unusable, without cost

21

to the City, until such time as the work covered by the Contract is fully accepted by the City. Such transfer of title shall in no way affect any of the Contractor's obligations hereunder. In the event that, after title has passed to the City, any of such supplies and materials are rejected as being defective or otherwise unsatisfactory, title to all such supplies and materials shall be deemed to have been transferred back to the Contractor.

(e)     The purchase by subcontractors of supplies and materials to be sold hereunder shall also be deemed a purchase or procurement for resale to the Contractor (either directly or through other subcontractors) and therefore not subject to the aforesaid Sales or Compensation Use Taxes, provided that the subcontract agreements provide for the resale of such supplies and materials prior to and separate and apart from the incorporation of such supplies and materials into the permanent construction.

10.     In the event any of the provisions of the Contract shall be deemed to be in conflict with the Bid Package or shall create any ambiguity, then the Contract shall control.

11.     Bids should reflect all charges payable to the contractor for all of the services the contractor will be required to furnish and perform at HPD sites under the Contract, excluding all costs identified in the Contract and Exhibit A thereto as Compensable Costs.

12.     Subject to Section 5.2 of Article 5 of this Agreement, HPD hereby estimates that the total number of service hours required to be performed by Contractor under this Agreement is approximately 189,500 hours.

13.     The direct cost of labor for guards shall always be at a minimum the prevailing wage as set forth in the Schedule of Prevailing Wages and Supplemental Benefits under section 230 of the New York State Labor Law (see Exhibit C).

14.     The direct cost of labor for all titles listed on the Bid Sheet shall be Compensable Costs as defined in the Scope of Services.

## BID SHEET

Contractor's Hourly Fee: _____ per hour x 189,500 estimated hours = $_____.

NOTE: Contractor's hourly fee is a fixed rate which
shall not change even if prevailing wage rates change.

Security Guards And
Security Officer Sergeants $_____ per hour x 155,000 estimated hours = $_____.

Based on the current **prevailing wage**, the minimum rate
per hour is **$10.99**, which includes hourly wage of **$8.52**,
supplemental benefits of $.94 per hour and payroll taxes.
Contractor must remain current with regard to prevailing wages;
which are regularly amended by the Comptroller's office.

Security Coordinator: $_____ per hour x 6,900 estimated hours = $_____.

Minimum rate per hour is **$18.85**, which includes
hourly wages, supplemental benefits, and payroll taxes.

Security Specialist: $_____ per hour x 6,900 estimated hours = $_____.

Minimum rate per hour is **$13.14**, which includes hourly
wages, supplemental benefits, and payroll taxes.

Security Director: $_____ per hour x 6900 estimated hours = $_____.

Minimum rate per hour is **$54.69**, which includes hourly
wages, supplemental benefits, and payroll taxes.

Clerical Support
Aide/Receptionists: $_____ per hour x 13,800 estimated hours = $_____.

Based on the current **prevailing wage**, the minimum rate
per hour is **$15.69**, which includes hourly wage of **$12.64**,
supplemental benefits of $.48 per hour and payroll taxes.
Contractor must remain current with regard to prevailing wages;
which are regularly amended by the Comptroller's office.

Sanitation facilities and
Construction Trailers: **annual allowance for approx. 1 per year = $2,000.00**

TOTAL: $_____

TOTAL BID AMOUNT IN WORDS: _____
_____ DOLLARS. (In case of any discrepancy between the price in
words and that in figures, the price in words will be considered the bid price.)

Bidder: _____

By: _____
     Secretary of Corporate Bidder

     _____
     Signature of Partner or Officer

Attest: (Corporate Seal)

## ACKNOWLEDGMENT OF PRINCIPAL

STATE OF_____)
                ) ss.:
COUNTY OF_____)

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

## ARTICLE 2
## FORM OF BID BOND

**NOTE: BID BOND IS NOT REQUIRED FOR ANY BID WHICH DOES NOT EXCEED TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00)**

KNOW ALL MEN BY THESE PRESENTS, that we, _____

("Principal"),            and            _____

_____

("Surety") are held and firmly bound to THE CITY OF NEW YORK ("City"), or to its successors and assigns in the penal sum of _____

_____ Dollars ($_____)
lawful money of the United States, for the payment of which said sum of money well and truly to be made, we, and each of us bind ourselves, and our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Whereas, the Principal is about to submit (or has submitted) to the City the accompanying proposal ("Proposal"), hereby made a part hereof, to enter into a contract in writing for _____

_____

NOW, THEREFORE, the conditions of this obligation are such that if the Principal shall not withdraw said Proposal without the consent of the City for a period of forty five (45) days after the opening of bids and in the event of acceptance of the Principal's Proposal by the City, if the Principal shall:

(a)    Within ten (10) days after notification by the City execute in quadruplicate and deliver to the City all the executed counterparts of the contract in the form set forth in the Contract Documents, in accordance with the Proposal as accepted; and

(b)    Furnish a performance bond and separate payment bond ("Payment and Performance Bond"), as may be required by the City for the faithful performance and proper fulfillment of such Contract, which bonds shall be satisfactory to the City in all respects and shall be executed by good and sufficient sureties; and

(c)    In all respects perform the agreement created by the acceptance of the Proposal as provided in the article entitled "Information for Bidders," bound herewith and hereby made a part hereof, or if the City shall reject the Proposal, then this obligation shall be null and void; otherwise to remain in full force and effect.

In the event that the Proposal shall be accepted and the Contract be awarded to him, the Surety hereunder agrees subject only to the payment by the Principal of the premium therefor, if requested by the City, to write the Payment and Performance Bonds in the form set forth in the Contract Documents.

It is expressly understood and agreed that the liability of the Surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated.

There shall be no liability under this bond if, in the event of the acceptance of the Proposal by the City, either a performance bond or a payment bond, or both, shall not be

25

required by the City on or before the 39th day after the date on which the City signs the Contract.

The Surety, for the value received, hereby stipulates and agrees that the obligations of the Surety and its bond shall in no way be impaired or affected by any postponements of the date upon which the City will receive or open bids, or by any extension of the time within which the City may accept the Proposal, or by any waiver by the City of any of the requirements of the Information for Bidders, and the Surety hereby waives notice of any such postponements, extensions, or waivers.

IN WITNESS WHEREOF, the Principal and the Surety have hereunto set their hands and seals and such of them as are corporations have caused their corporate seals to be hereto affixed and these presents to be signed by their proper officers, the ____ day of _____, 20_.

(Seal)                    _____

                                                Principal

                                                By:_____

                                    _____
                                                Surety

                                                By: _____

26

## ACKNOWLEDGMENT OF PRINCIPAL

TATE OF_____)
                     ) ss.:
COUNTY OF_____)

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

AFFIX ACKNOWLEDGMENTS AND JUSTIFICATION OF SURETIES

27

## ARTICLE 3
## BIDDER QUALIFICATION STATEMENT

Failure to submit this form, completed, along with the bid, shall render your bid non-responsive.

A bidder will not be considered qualified and his bid will be nonresponsive if the responses submitted on this form indicate (a) that the bidder will not be able to commence and finish the Contract Work promptly and (b) that the bidder has taken on or will be taking on so much work that, in the opinion of HPD, the bidder will not be able to perform in accordance with the terms of the Contract.

It is presently anticipated that the Contract will be executed on _____ (the "Execution Date") and that Contract Work will commence on _____ (the "Start Date") and finish on _____ (the "Finish Date")  These dates are estimates only which do not constitute a contractual obligation of the City.

1.  (a)  Will you be able to commence work on the Start Date? _____ _____

                                                                    Yes     No

    (b)  Will you be able to finish work on the Finish Date? _____ _____

                                                                    Yes     No

2.  What is the total number of contracts (both public and private sector) under which you will be obligated to be working on the Start Date? _____.  What is their total dollar amount?_____.

3.  What is the number of additional contracts (both public and private) under which you will be obligated to start work before the Finish Date?_____.  What is their total dollar amount?_____

4.  How many qualified employees do you have who could work on this Contract?_____

5.  How many of those qualified employees will be assigned to this Contract on the Start Date and for each business day until the Finish Date? _____.

6.  How many additional qualified employees will be working on this Contract before the Finish Date?_____.

7.  How many qualified full-time supervisory employees or managers will be assigned to this Contract each business day?_____

8.  What percentage of the materials required for the total Contract will you have available for this Contract on the Start Date? _____.

9.  What percentage of the materials required to start this Contract will you have available on the Start Date?_____

10.  Do you have the financial resources to continue working on this Contract while awaiting payment from the City for work performed on this or other contracts?

_____         _____
Yes                   No

28

11.  Will you subcontract any portion of the Contract Work?

_____ Yes          _____ No

If so, approximately how much?  _____

If a portion of the Contract is to be subcontracted, the qualifications of the subcontractor will be considered in determining whether the prime contractor is qualified.  When entering into subcontracts the bidder must comply with the requirements of Executive Order No. 53.

12.  Are you performing all work on other Contracts with the City in a timely manner?

_____ Yes          _____ No

13.  Do you have at least two years experience in the type and magnitude of work which is required by the Contract?

_____ Yes          _____ No

A bid may be deemed non-responsive and not considered for award of the Contract if the bidder does not comply with each of the following requirements:

(a)  At present, the bidder must be performing all work on other contracts with the City in a timely manner.

(b)  The bidder must meet with HPD's Office of Equal Opportunity, if necessary, on the first available meeting date.

(c)  The bidder or a principal of the bidder must have two years experience in the type of magnitude of work, which is required by the Contract.

If a portion of the Contract is to be subcontracted, the subcontractor must also meet the above-mentioned requirements.  Failure by the subcontractor to comply with these requirements will render the prime contractor's bid nonresponsive.

In determining a bidder's qualifications HPD reserves the right to ask for additional information from a bidder.

If the bidder shall misrepresent any of the information required to be provided on this form:

(a)  the bid may be deemed nonresponsive; and/or

(b)  it may be deemed a default of the Contract awarded in reliance on this qualification statement; and/or

(c)  any future bid submitted by the bidder may be deemed nonresponsive.

29

## **BIDDER'S CERTIFICATION**

BIDDER'S NAME: _____

Address: _____

1. Has Bidder participated in a previous contract or subcontract subject to the Equal Opportunity Clause?  YES___ NO___

2. Were compliance reports required to be filed in connection with such contract or subcontract?  YES___ NO___

If Yes, state what reports were filed and with what agency.

_____

_____

3. Has Bidder filed all compliance reports due under applicable instructions including EEO-1.  YES___ NO___

4. If answer to item 3 is "NO", please explain in detail on reverse side of this certification.

_____

_Certification_ – The information above is true and complete to the best of my knowledge and belief.  I understand that:  A willfully false statement is punishable by law (U.S. Code, Title 18, Section 1001).

_____

(NAME AND TITLE OF SIGNER - TYPE)

_____    _____
(Signature)            (Date)

# EXHIBIT 1
# PART 3 OF 5

## THE CITY OF NEW YORK
## DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT

### AGREEMENT

THIS AGREEMENT, made and entered into this      day of         , 2001 by and between the City of New York, a municipal corporation ("City"), acting by and through its Department of Housing Preservation and Development, having offices at 100 Gold Street, New York, New York 10038 ("HPD") and                         , having a principal office at                     , ("Contractor").

### W I T N E S S E T H :

WHEREAS, HPD is the City agency charged with comprehensive responsibility for the City Housing stock; and

WHEREAS, HPD maintains offices throughout the City; and

WHEREAS, in order to better fulfill its functions it is necessary that HPD provide security guard services for the benefit of those persons who transact business with HPD and for those persons who are employed by HPD; and

WHEREAS, the Contractor represents that it has extensive experience in providing security guard services;

NOW THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto hereby agree as follows:

### ARTICLE 1
### DEFINITIONS

As used in this Agreement, the term:

(a)      "Article(s)" means an Article or Articles of this Agreement;

(b)      "Certifiable Amount" has the meaning set forth in Section 6.2;

(c)      "City" means the City of New York;

(d)      "Commencement Date" means the July 1, 2002;

(e)      "Comptroller" means the Comptroller of the City;

(f)      "Contractor" means the party described as the Contractor on this first page of this Agreement, and it sometimes referred to in the Exhibits as the Consultant;

(g)      "Contractor's Rate" means the hourly price per guard set forth in Article 5;

(h)      "Expiration Date" means June 30, 2005 which date may be extended pursuant to Section 3.1 as set forth herein;

(i)      "HPD" means the Department of Housing Preservation and Development;

31

(j)     "HUD" means the United States Department of Housing and Urban Development;

(k)     "Notice" means a communication given in accordance with the terms contained in Article 18;

(l)     "Procurement Policy Board" shall mean the permanent agency of the City of New York whose function is to set policy and to adopt rules governing the procurement of all goods, services or construction to be paid out of the City treasury or out of monies under the control of or assessed or collected by the City in accordance with the New York City Charter.

(m)     "Program Work" has the meaning set forth in Article 4;

(n)     "Scope of Services" means Exhibit A to this Agreement;

(o)     "Section(s)" means a Section or Sections of this Agreement;

(p)     "State" means the State of New York.

## ARTICLE 2
## THE AGREEMENT

2.1     The following, except for such portions thereof as may be specifically excluded, are by this reference hereby made part of this Agreement:

    a.     The Advertisement;

    b.     Information for Bidders;

    c.     The Bid;

    d.     The Agreement;

    e.     Scope of Services:  Exhibit A;

    f.     Exhibits B and C.

    g.     All addenda issued by HPD prior to the opening of bids;

    h.     Payment and Performance Bonds.

2.2     This Agreement is subject to the Procurement Policy Board Rules effective August 1, 1990.  In the event of a conflict between the Procurement Policy Board Rules and a provision of the Agreement, the Procurement Policy Board Rules shall prevail.

## ARTICLE 3
## TIME OF PERFORMANCE

3.1     The term of this Agreement shall commence thirty (30) days from receipt by the Contractor of written notice to proceed and shall expire on the expiration date.

3.2     Extension of Time. Upon written application by the Contractor, the Agency Chief Contracting Officer may grant an extension of time for performance of the contract. Said application must state, at a minimum, in detail, each cause for delay, the date the cause of the alleged delay occurred, and the total number of delay in days attributable to such cause.

The ruling of the Agency Chief Contracting Officer shall be final and binding as to the allowance of an extension and the number of days allowed.

## ARTICLE 4
## SCOPE OF SERVICES

4.1     HPD hereby engages the Contractor and the Contractor agrees to provide unarmed security guard services, including all required or necessary manpower, supplies, materials and equipment to protect HPD sites (collectively "Program Work") as further described and set forth in the Scope of Services, Exhibit A.

## ARTICLE 5
## PAYMENT

5.1     Subject to all other terms of this Agreement, the City shall pay Contractor, and Contractor shall accept in full payment for work hereunder, a sum of â ($â) for each hour worked by each security guard ("Contractor's Rate") together with payments equal to what are hereinafter designated as Compensable Costs.

A pro rata amount of the Contractor's Rate shall be charged for less than one full hour worked.

5.2     It is agreed that the number of hours for which HPD will require security services as set forth in paragraph (13) of Exhibit A of this Agreement and the estimated amount of Compensable Costs as set forth in Exhibit A of this Agreement are based upon HPD's estimate of HPD's requirements under the Agreement. These estimates are approximate and are given solely for the purpose of providing a basis for the Comptroller to certify that certain funds or appropriations remain unapplied and unexpended in amounts sufficient to pay the estimated expenses of this Agreement in order that the sum sufficient to pay the expenses which may be incurred under this Agreement may be held and retained by the City Comptroller to be applied to this Agreement. The services actually required of the Contractor under the terms of this Agreement may be more or less than so estimated, and HPD will have the right, but not the obligation, to require the Contractor to provide such services as it may deem necessary and proper. If the services required to be performed by the Contractor under this Agreement vary from the estimates set forth in this Agreement, no action for damages or for loss of profits will accrue to the Contractor by reason thereof.

5.3     (a)     Neither HPD nor the City will, under any circumstances, be deemed responsible for payment to the Contractor for any services rendered by the Contractor which were not in full compliance with the terms of this Agreement.

       (b)     Payments to be made by the City to the Contractor hereunder will solely cover those costs and charges enumerated in Article 5 and Exhibit A of this Agreement for the provision by the Contractor of certain specific guard services and Compensable Costs which the Contractor was authorized, in accordance with

33

this Agreement and the Scope of Services, to perform and did perform, in a manner satisfactory to HPD and for which the Contractor has submitted requisitions, and substantiating documentation, including, without limitation, such forms as may be required by HPD.

## ARTICLE 6
## PAYMENT PROCEDURE

6.1    A normal work week shall be from Saturday through Friday. Close of business shall be midnight Friday. Billing shall be done on a weekly basis and invoiced by site. An acceptable billing invoice in triplicate shall contain the Contractor's name and address, HPD's name and address, the site of coverage, site number, dates of coverage, an invoice number, job number, hours worked, and the Contractor's Rate. The invoice shall specify how many and which employees were paid at each wage rate and how many hours were worked by the employees being paid at each wage rate. In addition, any Compensable Costs incurred by Contractor shall be itemized.

Contractor shall use as a basis of all billing a Department of Housing Preservation and Development or similar attendance roster sheet for each site office. This roster shall be 8-1/2 x 14" size and consist of a minimum of three page copy "NCR" type or equivalent with Part I as the original for HPD Fiscal, Part II as Vendor's copy, and Part III as the Site Security Copy. The attendance roster sheet shall require each guard to sign in at the start of his tour, sign in/out for lunch, and sign out at the end of his tour.

At non-HPD supervised sites, each guard may maintain his own attendance sheet and sign-off shall be obtained by HPD. Such attendance sheet shall contain the same information as the attendance rosters.

Contractor shall be required to pick up each attendance sheet on a weekly basis. Additionally, Contractor shall be required to obtain a sign-off of the attendance sheet from an HPD site manager prior to pick-up and inclusion on any invoice.

In the event a guard leaves the Contractor's employment without having submitted a final, completed attendance sheet, a principal of the Contractor may submit to HPD a notarized statement, attesting to the actual days and hours worked by the former guard.

The original attendance rosters or sheets must be attached to each site billing invoice submitted for payment and must include a weekly summary sheet. All documents shall be submitted by hand to HPD, Disciplinary Unit, 100 Gold Street, first floor, New York, New York, 10038.

Contractor's failure to submit billing invoices on a weekly basis shall be a breach of contract compensable as a set-off to the City pursuant to the Liquidated Damages provision of Article 11.

6.2    HPD will, subject to its review and approval of the billing invoices submitted by the Contractor and certification of same, prepare and submit to the Comptroller a voucher for payment to the Contractor in the amount certified by HPD as payable under the terms of this Agreement ("Certifiable Amount"), less any amounts which may be withheld by HPD and the City pursuant to the terms of this Agreement, if any, and

upon the issuance of a check by the Comptroller for the Certifiable Amount, such check will be delivered to the Contractor.

6.3    Payment of the total Certifiable Amount of the last billing invoices submitted by the Contractor under this Agreement may be withheld by the City, in its sole discretion, until all obligations on the Contractor's part to be performed under this Agreement have been fully performed to HPD's satisfaction.

6.4    Payment shall be reduced by two (2%) per cent of the total Certifiable Amount only if payment is made to the Contractor within 15 days of submission of the invoice.

## ARTICLE 7
## PROMPT PAYMENT

7.1    The Prompt Payment provisions set forth in the Procurement Policy Board Rules in effect at the time of this solicitation will be applicable to payments made under this contract.  The provisions require the payment to contractors of interest on payments made after the required payment date except as set forth in the Rules.

7.2    The contractor must submit a proper invoice to receive payment, except where the contract provides that the contractor will be paid at predetermined intervals without having to submit an invoice for each scheduled payment.

7.3    Determinations of interest due will be made in accordance with the provisions of the Procurement Policy Board Rules and General Municipal Law §3-a.

## ARTICLE 8
## RECORDS AND AUDIT

8.1    During the term of this Agreement and for an additional period of six (6) years after the later to occur of:

    (i)   final payment under this Agreement, or
    (ii)  termination of this Agreement,

the Contractor will keep separate, true, accurate, and complete books of account, together with vouchers, receipts and other records showing in detail all receipts and all expenses and charges incurred in the performance of the Program Work under this Agreement.

8.2    HPD, the City and the Comptroller or any of their duly authorized representatives, will have access to any of the books, documents, papers and records of the Contractor which are directly pertinent to this Agreement, to examine and audit them and to make transcripts and to take excerpts therefrom.

## ARTICLE 9
## LIMITATIONS ON PAYMENTS

9.1    It is understood and agreed that all payments made and to be made under this Agreement are subject to audit under the terms of Article 8 and under the applicable supplemental terms contained in the Exhibits to this Agreement and that any payment

35

the Contractor may be reduced for prior overpayments or increased for prior underpayments made against preceding Requisitions.

9.2    If at any time before or within thirty (30) days after the expiration or other termination of this Agreement, any person or persons claiming to have performed any services or furnished any material toward the performance of this Agreement file with HPD or the Comptroller any notice(s) of claim or commence any proceeding against the City in a court of proper jurisdiction based upon such claim(s), the City will retain, from the monies due or to become due under this Agreement, so much of such monies as will be sufficient to pay the amount claimed in said notice, together with the reasonable costs of any action or actions brought or that may be brought to enforce such claim(s). The monies so retained will be held by the City until every judgment awarded or settlement reached on such claim(s) is fully discharged by the Contractor in a manner satisfactory to HPD and the City.

## ARTICLE 10
## INSURANCE

10.1    Throughout the term of this Agreement, Contractor will furnish and maintain Worker's Compensation Insurance, Disability Benefits Insurance and Unemployment Insurance in form required by the laws of the State of New York, covering all of the Contractor's employees performing Program Work under this Agreement.

10.2    In addition, Contractor will furnish and maintain Comprehensive General Liability Insurance, insuring the City and the Contractor against any and all claims, loss or damage, whether in contract or tort; for bodily injury and property damage arising out of or in connection with the liabilities and obligations of the Contractor under this Agreement, including, without limitation, claims for injuries to, or death of persons, or damage to property, whether such injuries, death or damages be attributable to statutory or common law negligence or any other acts of the Contractor, its employees or otherwise. The contractor shall notify the City of any loss or damage to property or of any accidents or injury at the site(s) within twenty four (24) hours of such occurrence. Notice to the Commissioner by the Contractor of an accident or claim on the site(s) shall constitute notice by the City to the Insurance Companies (as hereinafter defined).

The Comprehensive general Liability Insurance will be written for not less than One Million ($1,000,000) Dollars per occurrence for bodily injury and for not less than five Hundred Thousand ($500,000) Dollars per occurrence for property damages.

Automobile Liability Insurance: The **Contractor** shall provide commercial auto liability insurance covering all owned, non-owned and hired vehicles to be used in connection with this **Contract** (ISO Form CA0001, ed.6/92, code 1 "any auto").

10.3    All insurance required under this Article 10 will be satisfactory in form and substance to HPD and the City and will be obtained from companies of recognized competence which are acceptable to HPD and the City ("Insurance Companies").

10.4    Such insurance policies shall contain by riders annexed to such policy, the following provisions:

36

(a)  Notice of Accident or Claim.  Notice of accident shall be given to the Insurance Company within sixty (60) days after notice to the Commissioner of HPD of such accident and a notice of claim shall be given to the Insurance Company within sixty (60) days after such claim shall have been filed with the Comptroller of the City of New York.  Notice to the Insurance Company by either party shall be deemed sufficient notice under the policy.  Furthermore, notice of any claim or accident by the Contractor to the Insurance Company shall constitute notice of said claim or accident by HPD and the City to the Insurance Company.

(b)  Notice of Cancellation of Policy.  The policy shall not be canceled, terminated, modified or changed by the Company unless thirty (30) days prior written notice is sent to the Insured by registered mail and addressed to Director of Disciplinary Unit, Department of Housing Preservation and Development, 100 Gold Street, Room 1  , New York, New York 10038, nor shall it be canceled, terminated or modified by the Contractor securing this policy without the prior consent of the Deputy Commissioner of HPD.

10.5    Prior to or simultaneous with the execution of this Agreement, the Contractor will deliver to HPD a copy of each and every insurance policy, or in the case of Unemployment Insurance and Workers' Compensation, other evidence of coverage (in form acceptable to HPD) for all insurance required to be maintained by the Contractor under this Agreement; provide HPD with the name and address of the broker used, if any; and furnish evidence to HPD of premiums paid in full.  Upon the request by the Contractor, HPD may grant an extension of the time within which certain evidence of insurance coverage must be provided to HPD under this Section 10.5, and may accept a copy of a binder in lieu of a copy of the insurance policy.  If HPD accepts a copy of a binder in lieu of a copy of the insurance policy, the Contractor will provide a copy of the policy prior to the date on which any such binder expires.

10.6    Any failure to furnish such copies of insurance policies or other evidence of insurance coverage, as required by HPD, or any failure to keep such insurance coverage in full force and effect during the term of this Agreement and during the extended term, if any such extension be granted, will constitute cause for immediate termination of this Agreement.

10.7    If the Contractor is unable to procure insurance of the type or in the amounts set forth in this Article 9, or if the premium costs for such required insurance are so high as to cause a financial hardship to the Contractor, or if the type of insurance required is duplicative of other coverage, then the Contractor may submit a written request to HPD, requesting that such insurance requirements be modified.  Any such request will set forth, in detail, the modification in insurance  requirements that is requested and the rationale for such request.  Such request will also describe the efforts made by the Contractor to procure the required coverage, and will be submitted to HPD together with supporting documentation regarding such rationale in the form of written materials supplied by licensed insurance broker(s).  Based on such request, if HPD, in its sole discretion, determines that the request modifications are reasonable, HPD may modify the insurance requirements under this Agreement and such modification will be deemed effective upon HPD's written notice to the Contractor, provided, however, that should HPD modify the insurance requirements under this Section 10.7, it shall notify the Corporation Counsel of the City in writing, directed to the attention of the Chief, Contracts and Real Estate Division.

**ARTICLE 11**
**LIQUIDATED DAMAGES**

11.1    In view of the difficulty of accurately ascertaining the loss which the City will suffer by reason of incomplete compliance with the requirements of the contract specifications, it is hereby agreed that the deficiency schedule set forth in Section 11.2 hereinafter shall specify the liquidated damages that the City will suffer by reason of such incomplete compliance.

Liquidated damages received hereunder are not intended to be nor shall they be treated as either a partial or full waiver or discharge of City's right to indemnification under Article 14, or the Contractor's obligation to indemnify the City, or to any other remedy provided for by Contract or by Law. In the sole judgment of the Deputy Commissioner of HPD whose decision will be final and binding, the Comptroller will deduct and retain out of the moneys which may become due hereunder, the amount of such liquidated damages; and in case the amount which may become due hereunder shall be less than the amount of liquidated damages suffered by the City, the Contractor shall be liable to pay the difference upon demand by the Comptroller.

11.2    If the Contractor should fail to act in accordance with the Agreement specifications and under the terms and conditions of the contract, and at HPD's sole discretion, the Contractor shall not be paid for the time short and in addition shall be liable to pay liquidated damages in compliance with Section 11.1 above in accordance with the following schedule:

(a)    Manning Shortage: For each man-hour not staffed as a result of the failure of a scheduled person to report for duty for any reason, $20/man-hour for each hour beginning at the start of the shift.

(b)    Failure to provide training as per contract requirement, $150/guard.

(c)    Incorrect, or slovenly dressed, as determined by the Security Director or Security Coordinator, $40/per person/shift.

(d)    Failure to furnish necessary equipment and materials for the performance of service as specified in contract requirements, $50/item per person, per shift.

(e)    Failure to provide required security site inspections, per shift, $25/shift.

(f)    Failure to submit a complete copy of employees personnel folder as outlined in Exhibit A within 15 days after assignment (per instance) $50.00.

(g)    Failure to do the required background checks pursuant to Exhibit A (per instance), $100.00.

(h)    Any failure to perform not specifically listed in this <u>section 11.2</u>: $100 per failure/ per day.

38

## ARTICLE 12
## PAYMENT AND PERFORMANCE BOND

12.1    Prior to or simultaneously with the execution of this Agreement if the Agreement should exceed $250,000, Contractor shall deliver to HPD an executed bond in an amount of One Million Five Hundred Thousand Dollars ($1,500,000) as security for the payment of all persons performing labor under this Agreement, and an executed bond in the amount of Five Hundred Thousand ($500,000) Dollars to secure the faithful performance of the Agreement. Such bond shall be prepared on the annexed form of bond and have as surety hereunder such surety company or companies as are approved by the City (the "Surety Company").

## ARTICLE 13
## PAYMENT GUARANTEE

13.1    In the event that the terms of this Contract do not require the Contractor to provide a payment bond, the City shall, in accordance with the terms of this Article, guarantee payment of all lawful demands for (i) wages and compensation for labor performed and/or services rendered, and (ii) materials, equipment, and supplies provided, whether demands have been filed with the City as provided hereinafter by any person, firm or corporation which furnished labor, material, equipment, supplies or any combination thereof, in connection with the Work performed hereunder (hereinafter referred to as the "beneficiary") at the direction of the City or the Contractor.

13.2    The provisions of paragraph (a) above, are subject to the following limitations and conditions:

1.    The guarantee is made for the benefit of all beneficiaries, provided that those beneficiaries strictly adhere to the terms and conditions of this paragraph (b).

2.    Nothing in this Article shall prevent a beneficiary providing labor, services or material for the work from suing the Contractor for any amounts due and owing the beneficiary by the Contractor.

3.    All demands made against the City pursuant to this Article shall be made within four (4) months from the date the payment is due on an invoice or invoices submitted by the beneficiary to the Contractor for labor or work done or for materials or supplies delivered, or, if the claim is for wages, four (4) months from the date the wages were due to be paid to the beneficiary.

4.    All demands made against the City by such beneficiary shall be presented to the Assistant Commissioner along with all written documentation concerning the demand which the Assistant Commissioner deems appropriate or necessary which may include, but shall not be limited to, the subcontract, any invoices presented to the Contractor for payment, the notarized statement of the beneficiary that the demand is due and payable, that a request for payment has been made of the Contractor and that the demand has not been paid by the Contractor within the time allowed for such payment by the subcontract; and copies of any correspondence between the beneficiary and the Contractor concerning such demand. The City shall notify the Contractor that a demand has been made. The Contractor shall inform the City of any defenses to the demand, and shall forward to the City any documents the City requests concerning the demand.

39

5.    The City shall make payment only if, after considering all defenses presented by the Contractor, it determines that the payment is due and owing to the beneficiary making the claim.

6.    The City will not initiate the payment process of this Article or make payment on a demand where the beneficiary making the demand has filed a lien against the Work or otherwise sues the City prior to receiving a written notice from the City that it will not pay the claim.

7.    No beneficiary shall be entitled to interest from the City, or to any costs, including, but not limited to, attorney's fees.

13.3    Upon the receipt by the City of a demand pursuant to this Article, the City may withhold from any payment otherwise due and owing to the Contractor from this Agreement or any other contract between the City and the Contractor, an amount sufficient to satisfy the claim. Such amount will be paid to the Contractor only in the event that unless the City determines that such demand is invalid, or in the event that the Contractor satisfies such demand, and if no lien has been filed or other claim made in connection with such amount. In the event that the amount otherwise due and owing to the Contractor by the City is insufficient to satisfy such demand, the City may, at its option, require payment from the Contractor of an amount sufficient to cover such demand and exercise any other right to require or recover payment which the City may have under law or contract.

13.4    The provisions of this Article shall not prevent the City and the Contractor from resolving disputes in accordance with the Procurement Policy Board Rules, where applicable.

13.5    In the event the City determines that the beneficiary is entitled to payment pursuant to this Article, such determination and any defenses and counterclaims raised by the Contractor shall be taken into account in evaluating the Contractor's performance.

13.6    Nothing in this Article shall relieve the Contractor of the obligation to pay the claims of all persons with valid and lawful claims against the Contractor relating to the Work.

13.7    The Contractor shall not require any performance, payment or other bonds of any subcontractor if this Agreement does not require such bonds of the Contractor.

## ARTICLE 14
## CONTRACTOR'S EMPLOYEES AND LIABILITY FOR LOSS

14.1    In the event that any claim is filed against the City or in the event that the City suffers losses from injuries to, or death of persons or theft of or damage to property, any such claim and or loss is attributable to the negligent acts or willful misconduct of the Contractor, its agents or employees during any tour of duty (Losses and/or Claims), the Contractor shall indemnify and hold the City harmless against all such Losses and/or Claims which are not the result of the negligence of HPD. The Contractor shall be liable to and shall pay HPD upon demand the actual and reasonable amount of any and all such Losses and/or Claims.

40

14.2   At its option, HPD may deduct the actual and reasonable amount of any such Losses and/or Claims on a dollar for dollar basis from the outstanding balance due and owing the Contractor for the purpose of set-off in an amount sufficient to cover the cost incurred by HPD for such Losses and/or Claims. Contractor shall also be liable to and shall pay the City upon the City's demand any and all consequential damages attributable to any such Losses and/or Claims including but not limited to, reasonable attorney fees incurred by the City. The rights and remedies of the City provided for in this section 14.2 shall not be exclusive and are in addition to any other rights and remedies provided, by law or in equity.

## ARTICLE 15
## TERMINATION

15.1   In addition to any other rights to terminate this Agreement that may be contained herein, HPD may terminate this Agreement, in whole or in part, by giving written notice to the Contractor, specifying therein the date of such termination, if:

(a)   The Contractor, for any reason, violates or fails to perform any term, covenant or condition required to be performed by the Contractor under this Agreement;

(b)   HPD gives Notice to the Contractor that Federal, State, or local funding for this Agreement is unavailable or has been reduced; or

(c)   HPD deems termination to be in the best interest of the City.

15.2   Prior to any termination by HPD for the reasons stated in subsection (a) of Section 15.1 of this Article 15, HPD will give written Notice to the Contractor of any breach or default by Contractor of any term, covenant or condition required on the Contractor's part to be performed under this Agreement, and if such breach or default is not cured within 5 days after such Notice of breach or default is given to Contractor, then HPD may proceed to terminate this Agreement in accordance with Section 15.1 of this Article 15.

15.3   In the event of any partial termination of this Agreement, the Contractor will continue to perform the remainder of this Agreement in strict conformity with the terms of this Agreement. The rights and remedies of the City and HPD provided for in this Article will not be exclusive and are in addition to all other rights and remedies to which the City and HPD may be entitled under this Agreement, at law or in equity, including but not limited to compelling specific performance of this Agreement.

15.4   If this Agreement is terminated under subsections 15.1(b) or 15.1(c) of this Article, the Contractor will be entitled to equitable compensation based upon the applicable Contractor's Rate set forth in Article 5 and the terms of Exhibit A of this Agreement for Program Work completed by the Contractor in accordance with the terms of this Agreement prior to the effective date of termination, as determined by HPD, provided and on condition that a Requisition is submitted therefor within thirty days after the effective date of termination.

15.5   If HPD terminates this Agreement, in whole or in part, for the reasons stated in subsection (a) of Section 15.1 of this Article 15, HPD may have the Program Work completed by whatever method it may deem expedient (with or without resort to public bid), and if the cost of HPD of having the Program Work completed, in part or in whole,

41

by some other method exceeds what the cost would have been under this Agreement, HPD may recover from the Contractor as damages an amount to be computed as follows:

(a)   by ascertaining the difference in the cost for the Program Work under this Agreement and the cost to HPD of having such work completed by some other method;

(b)   by multiplying, for each day or portion thereof the applicable cost difference times the number of guard tours for such day or portion thereof of Program Work completed by some other method; and

(c)   by adding the results of the computations made for the Program Work pursuant to subsection (b) of this Section 15.5 of this Article 15 to arrive at the total amount of damages sustained by HPD.

The measure of damages as calculated by HPD will be conclusive and binding on the Contractor. The Contractor shall pay such damages to HPD upon HPD's demand therefor, or HPD may offset such damages against any monies due to the Contractor under this Agreement. Failure of HPD to recover damages pursuant to this Paragraph 15.5 does not bar it from any other remedy.

15.6   If this Agreement is terminated in its entirety, the Contractor will comply with HPD and City close-out procedures, including but not limited to:

(a)   furnishing to HPD and to the City within sixty (60) days of the effective date of such termination the billing invoices for payments if any, due to the Contractor under Section 15.4 of this Article 15; and

(b)   stopping work on the date and to the extent specified in the notice of termination; and

(c)   carrying out any and all HPD or City directive(s) concerning the termination of City contracts; and

(d)   cooperating fully with HPD, if HPD elects to transfer all or any part of the Program Work in progress to itself or to another Contractor, in order to effectuate an orderly transfer, including, without limitation, assigning to the City all or any commitments or subcontracts as HPD may request.

15.7   Upon termination of this Agreement under subsection 15.1(a) of this Article 15, the City will have the right to declare Contractor in default hereunder and a not responsible bidder pursuant to the provisions of the New York City Charter and Procurement Policy Board Rules. Such declaration will be made in accordance with the applicable provisions of law and procedures established by the City or HPD.

## ARTICLE 16
## RESOLUTION OF DISPUTES

16.1.   All disputes between the City and the supplier of the kind delineated in this section that arise under, or by virtue of, this Contract shall be finally resolved in accordance with the

42

provisions of this section and the Rules of the Procurement Policy Board ("PPB Rules"). The procedure for resolving all disputes of the kind delineated herein shall be the exclusive means of resolving any such disputes.

(a)    This section shall not apply to disputes concerning matters dealt with in other sections of the PPB Rules or to disputes involving patents, copyrights, trademarks, or trade secrets (as interpreted by the courts of New York State) relating to proprietary rights in computer software.

(b)    For construction and construction-related services this section shall apply only to disputes about the scope of work delineated by the contract, the interpretation of contract documents, the amount to be paid for extra work or disputed work performed in connection with the contract, the conformity of the supplier's work to the contract, and the acceptability and quality of the supplier's work; such disputes arise when the Engineer makes a determination with which the supplier disagrees.

16.2.    All determinations required by this section shall be clearly stated, with a reasoned explanation for the determination based on the information and evidence presented to the party making the determination. Failure to make such determination within the time required by this section shall be deemed a non-determination without prejudice that will allow application to the next level.

16.3.    During such time as any dispute is being presented, heard, and considered pursuant to this section, the contract terms shall remain in full force and effect and the supplier shall continue to perform work in accordance with the contract and as directed by the Agency Chief Contracting Officer ("ACCO") or Engineer. Failure of the supplier to continue the work as directed shall constitute a waiver by the supplier of any and all claims being presented pursuant to this section and a material breach of contract.

16.4.    Presentation of Dispute to Agency Head.

(a)    Notice of Dispute and Agency Response. The supplier shall present its dispute in writing ("Notice of Dispute") to the Agency Head within the time specified herein, or, if no time is specified, within thirty (30) days of receiving written notice of the determination or action that is the subject of the dispute. This notice requirement shall not be read to replace any other notice requirements contained in the contract. The Notice of Dispute shall include all the facts, evidence, documents, or other basis upon which the supplier relies in support of its position, as well as a detailed computation demonstrating how any amount of money claimed by the supplier in the dispute was arrived at. Within thirty (30) days after receipt of the complete Notice of Dispute, the ACCO or, in the case of construction or construction-related services, the Engineer, shall submit to the Agency Head all materials he or she deems pertinent to the dispute. Following initial submissions to the Agency Head, either party may demand of the other the production of any document or other material the demanding party believes may be relevant to the dispute. The requested party shall produce all relevant materials that are not otherwise protected by a legal privilege recognized by the courts of New York State. Any question of relevancy shall be determined by the Agency Head whose decision shall be final. Willful failure of the supplier to produce any requested material whose relevancy the supplier has not disputed, or whose relevancy has been affirmatively determined, shall constitute a waiver by the supplier of its claim.

(b)    Agency Head Inquiry.  The Agency Head shall examine the material and may, in his or her discretion, convene an informal conference with the supplier and the ACCO and, in the case of construction or construction-related services, the Engineer, to resolve the issue by mutual consent prior to reaching a determination.  The Agency Head may seek such technical or other expertise as he or she shall deem appropriate, including the use of neutral mediators, and require any such additional material from either or both parties as he or she deems fit.  The Agency Head's ability to render, and the effect of, a decision hereunder shall not be impaired by any negotiations in connection with the dispute presented, whether or not the Agency Head participated therein.  The Agency Head may or, at the request of any party to the dispute, shall compel the participation of any other supplier with a contract related to the work of this contract and that supplier shall be bound by the decision of the Agency Head.  Any supplier thus brought into the dispute resolution proceeding shall have the same rights and obligations under this section as the supplier initiating the dispute.

(c)    Agency Head Determination.  Within thirty (30) days after the receipt of all materials and information, or such longer time as may be agreed to by the parties, the Agency Head shall make his or her determination and shall deliver or send a copy of such determination to the supplier and ACCO and, in the case of construction or construction-related services, the Engineer, together with a statement concerning how the decision may be appealed.

(d)    Finality of Agency Head Decision.  The Agency Head's decision shall be final and binding on all parties, unless presented to the Contract Dispute Resolution Board ("CDRB") pursuant to this section. The City may not take a petition to the CDRB.  However, should the supplier take such a petition, the City may seek, and the CDRB may render, a determination less favorable to the supplier and more favorable to the City than the decision of the Agency Head.

16.5.    Presentation of Dispute to the Comptroller.  Before any dispute may be brought by the supplier to the CDRB, the supplier must first present its claim to the Comptroller for his or her review, investigation, and possible adjustment.

(a)    Time, Form, and Content of Notice.  Within thirty (30) days of receipt of a decision by the Agency Head, the supplier shall submit to the Comptroller and to the Agency Head a Notice of Claim regarding its dispute with the agency. The Notice of Claim shall consist of (i) a brief statement of the substance of the dispute, the amount of money, if any, claimed and the reason(s) the supplier contends the dispute was wrongly decided by the Agency Head; (ii) a copy of the decision of the Agency Head, and (iii) a copy of all materials submitted by the supplier to the agency, including the Notice of Dispute.  The supplier may not present to the Comptroller any material not presented to the Agency Head, except at the request of the Comptroller.

(b)    Agency Response.  Within thirty (30) days of receipt of the Notice of Claim, the agency shall make available to the Comptroller a copy of all material submitted by the agency to the Agency Head in connection with the dispute.  The agency may not present to the Comptroller any material not presented to the Agency Head, except at the request of the Comptroller.

44

") Comptroller Investigation. The Comptroller may investigate the claim in dispute and, in the course of such investigation, may exercise all powers provided in sections 7-201 and 7- 03 of the New York City Administrative Code. In addition, the Comptroller may demand of either party, and such party shall provide, whatever additional material the Comptroller deems pertinent to the claim, including original business records of the supplier. Willful failure of the supplier to produce within fifteen (15) days any material requested by the Comptroller shall constitute a waiver by the supplier of its claim. The Comptroller may also schedule an informal conference to be attended by the supplier, agency representatives, and any other personnel desired by the Comptroller.

(d) · Opportunity of Comptroller to Compromise or Adjust Claim. The Comptroller shall have forty-five (45) days from his or her receipt of all materials referred to in 5(c) to investigate the disputed claim. The period for investigation and compromise may be further extended by agreement between the supplier and the Comptroller, to a maximum of ninety (90) days from the Comptroller's receipt of all the materials. The supplier may not present its petition to the CDRB until the period for investigation and compromise delineated in this paragraph has expired. In compromising or adjusting any claim hereunder, the Comptroller may not revise or disregard the terms of the contract between the parties.

16.6    Contract Dispute Resolution Board. There shall be a Contract Dispute Resolution Board composed of:

(a)    the chief administrative law judge of the Office of Administrative Trials and Hearings ("OATH") or his/her designated OATH administrative law judge, who shall act as chairperson, and may adopt operational procedures and issue such orders consistent with this section as may be necessary in the execution of the CDRB's functions, including, but not limited to, granting extensions of time to present or respond to submissions;

(b)    the City Chief Procurement Officer ("CCPO") or his/her designee, or in the case of disputes involving construction, the Director of the Office of Construction or his/her designee; any designee shall have the requisite background to consider and resolve the merits of the dispute and shall not have participated personally and substantially in the particular matter that is the subject of the dispute or report to anyone who so participated , and

(c)    a person with appropriate expertise who is not an employee of the City. This person shall be selected by the presiding administrative law judge from a prequalified panel of individuals, established and administered by OATH, with appropriate background to act as decision-makers in a dispute. Such individuals may not have a contract or dispute with the City , or be an officer or employee of any company or organization that does, or regularly represent persons, companies, or organizations having disputes with the City.

16.7    Petition to CDRB. In the event the claim has not been settled or adjusted by the Comptroller within the period provided in this section, the supplier, within thirty (30) days thereafter, may petition the CDRB to review the Agency Head determination.

(a)    Form and Content of Petition by Supplier. The supplier shall present its dispute to the CDRB in the form of a Petition, which shall include (i) a brief statement of the substance of the dispute, the amount of money, if any, claimed, and the reason(s) the supplier contends that the dispute was wrongly decided by the Agency Head; (ii) a copy of the decision of the

45

Agency Head; (iii) copies of all materials submitted by the supplier to the agency; (iv) a copy of the decision of the Comptroller, if any, and (v) copies of all correspondence with, and material submitted by the supplier to, the Comptroller's Office. The supplier shall concurrently submit four complete sets of the Petition: one to the Corporation Counsel (Attn.: Commercial and Real Estate Litigation Division), and three to the CDRB at OATH's offices, with proof of service on the Corporation Counsel. In addition, the supplier shall submit a copy of the statement of the substance of the dispute, cited in (i) above, to both the Agency Head and the Comptroller.

(b)    Agency Response. Within thirty (30) days of receipt of the Petition by the Corporation Counsel, the agency shall respond to the statement of the supplier and make available to the CDRB all material it submitted to the Agency Head and Comptroller. Three complete copies of the agency response shall be submitted to the CDRB at OATH's offices and one to the supplier. Extensions of time for submittal of the agency response shall be given as necessary upon a showing of good cause or, upon the consent of the parties, for an initial period of up to thirty (30) days.

(c)    Further Proceedings. The Board shall permit the supplier to present its case by submission of memoranda, briefs, and oral argument. The Board shall also permit the agency to present its case in response to the supplier by submission of memoranda, briefs, and oral argument. If requested by the Corporation Counsel, the Comptroller shall provide reasonable assistance in the preparation of the agency's case. Neither the supplier nor the agency may support its case with any documentation or other material that was not considered by the Comptroller, unless requested by the CDRB. The CDRB, in its discretion, may seek such technical or other expert advice as it shall deem appropriate and may seek, on it own or upon application of a party, any such additional material from any party as it deems fit. The CDRB, in its discretion, may combine more than one dispute between the parties for concurrent resolution.

(d)    CDRB Determination.   Within forty-five (45) days of the conclusion of all submissions and oral arguments, the CDRB shall render a decision resolving the dispute. In an unusually complex case, the CDRB may render its decision in a longer period of time, not to exceed ninety (90) days, and shall so advise the parties at the commencement of this period. The CDRB's decision must be consistent with the terms of the contract. Decisions of the CDRB shall only resolve matters before the CDRB and shall not have precedential effect with respect to matters not before the CDRB.

(e)    Notification of CDRB Decision.  The CDRB shall send a copy of its decision to the supplier, the ACCO, the Corporation Counsel, the Comptroller, the CCPO, the Office of Construction, the PPB, and, in the case of construction or construction-related services, the Engineer. A decision in favor of the supplier shall be subject to the prompt payment provisions of the PPB Rules. The Required Payment Date shall be thirty (30) days after the date the parties are formally notified of the CDRB's decision.

(f)    Finality of CDRB Decision. The CDRB's decision shall be final and binding on all parties.  Any party may seek review of the CDRB's decision solely in the form of a challenge, filed within four months of the date of the CDRB's decision, in a court of competent jurisdiction of the State of New York, County of New York pursuant to Article 78 of the Civil Practice Law and Rules.  Such review by the court shall be limited to the question of whether or not the CDRB's decision was made in violation of lawful procedure, was affected by an error of law, or

was arbitrary and capricious or an abuse of discretion. No evidence or information shall be introduced or relied upon in such proceeding that was not presented to the CDRB in accordance with the PPB Rules.

16.8    Any termination, cancellation, or alleged breach of the contract prior to or during the pendency of any proceedings pursuant to this section shall not affect or impair the ability of the Agency Head or CDRB to make a binding and final decision pursuant to this section.

## ARTICLE 17
## ASSIGNMENTS

17.1    The Contractor shall not assign, transfer, convey or otherwise dispose of this Agreement or of Contractor's rights, obligations, duties, in whole or in part, including its right to execute this Agreement, or its right, title or interest in the Agreement or any part thereof, or assign, by power of attorney or otherwise, any of the monies due or to become due under this Agreement, unless the prior written consent of the Commissioner of HPD shall be obtained. Any such assignment, transfer, conveyance or other disposition without such consent shall be void and cause for termination, at the option of the Commissioner. If this Agreement is so terminated, the City shall thereupon be relieved and discharged from any further liability and obligation to the Contractor, its assignees or transferees, and all monies that may become due under this Agreement shall be forfeited to the City except so much thereof as may be necessary to pay the Contractor's employees.

17.2    This Agreement may be assigned by the City or HPD to any public corporation, agency or instrumentality having authority to accept such assignment provided written notification is made to Contractor.

## ARTICLE 18
## NOTICES

18.1    Unless otherwise provided herein, all notices or other communications given under the terms of this Agreement will be in writing and mailed by registered or certified mail, return receipt requested, correct postage prepaid, or delivered in person, to the following addresses:

(a)    If to the City or HPD, to the Director of the Disciplinary Unit, HPD, 100 Gold Street, 1st Floor, New York, New York 10038, and

(b)    If to the Contractor, at the address first set forth above.

Any notice or other communication given will be deemed received on the day on which the same is deposited in a United States general or branch post office or personally delivered. Either party may, by written Notice, designate other addresses or persons at which or to whom subsequent notice or communication shall be given.

## ARTICLE 19
## CITY SUPPLEMENTAL TERMS AND CONDITIONS

Contractor acknowledges that this Agreement is subject to and the Contractor will observe and comply with the additional provisions of the City set forth below

47

19.1    Participation in an International Boycott.

(a)    The Contractor agrees that neither the Contractor nor any substantially-owned affiliated company is participating or shall participate in an international boycott in violation of the provisions of the Export Administration Act of 1979, as amended, or the regulations of the United States Department of Commerce promulgated pursuant thereto.

(b)    Upon the final determination by the Commerce Department or any other agency of the United States as to, or conviction of the Contractor or a substantially-owned affiliated company thereof for, participation in an international boycott in violation of the provisions of the Export Administration Act of 1979, as amended, or the regulations promulgated pursuant thereto, the Comptroller may, at his option, render this Contract forfeit and void.

(c)    The Contractor shall comply in all respects with the provisions of Section 6-114 of the Administrative Code and the rules and regulations issued by the Comptroller pursuant thereto.

19.2    MacBride Principles.
(a) In accordance with Section 6-115.1 of the Administrative Code of the City of New York, the Contractor stipulates that such Contractor and any individual or legal entity in which the Contractor holds a ten (10) percent or greater ownership interest and any individual or legal entity that holds a ten percent or greater ownership interest in the Contractor either (1) have no business operations in Northern Ireland, or (2) shall take lawful steps in good faith to conduct any business operations they have in Northern Ireland in accordance with the MacBride Principles (defined hereinafter), and shall permit independent monitoring of their compliance with such principles.

(b) The Contractor agrees that the covenants and representations set forth in Subparagraph 19.2(a) are material conditions to this Contract. In the event HPD receives information that the Contractor who made the stipulation required by this Section is in violation thereof, HPD shall review such information and give the Contractor an opportunity to respond. If HPD finds that a violation has occurred, HPD shall have the right to declare the Contractor in default and procure the supplies, services or work from another source in any manner HPD deems proper. In the event of such default, the Contractor shall pay to the City, or the City, in its sole discretion, may withhold from any amounts otherwise payable to the Contractor, the difference between the Total Contract Price for the uncompleted portion of this Contract and the cost to HPD of completing performance of this Contract either itself or by engaging another contractor or contractors. HPD shall also have the right to hold the Contractor in partial or total default in accordance with the default provisions of this Contract, and/or may seek debarment or suspension of the Contractor. The rights and remedies of HPD hereunder shall be in addition to, and not in lieu of, any rights and remedies HPD has pursuant to this Contract or by operation of law.

(c) For purposes of this Section 19.2:

"MacBride Principles" shall mean those principles relating to nondiscrimination in employment and freedom of workplace opportunity which require employers doing business in Northern Ireland to:

(1) increase the representation of individuals from underrepresented religious groups in the work force, including managerial, supervisory, administrative, clerical and technical jobs;

(2) take steps to promote adequate security for the protection of employees from underrepresented religious groups both at the workplace and while traveling to and from work;

(3) ban provocative religious or political emblems from the workplace;

(4) publicly advertise all job openings and make special recruitment efforts to attract applicants from underrepresented religious groups;

(5) establish layoff, recall and termination procedures which do not in practice favor a particular religious group;

(6) abolish all job reservations, apprenticeship restrictions and different employment criteria which discriminate on the basis of religion;

(7) develop training programs that will prepare substantial numbers of current employees from underrepresented religious groups for skilled jobs, including the expansion of existing programs and the creation of new programs to train, upgrade and improve the skills of workers from underrepresented religious groups;

(8) establish procedures to assess, identify and actively recruit employees from underrepresented religious groups with potential for further advancement; and

(9) appoint a senior management staff member to oversee affirmative action efforts and develop a timetable to ensure their full implementation.

19.3    Termination By The City.  In addition to termination pursuant to any other Section of this Contract, the Commissioner may, at any time, terminate this Contract by written notice to the Contractor and, in such event:

(a)    The Contractor shall, upon receipt of such notice, unless otherwise directed by the Commissioner:

1.    Stop work on the date specified in the notice;

2.    Take such action as may be necessary for the protection and preservation of the City's materials and property;

3.    Cancel all cancelable orders for materials and equipment;

4.    Assign to the City and deliver to the Site, or to any other location designated by the Commissioner, any non-cancelable orders for materials and equipment which are not capable of use except in the performance of this Contract and have been specifically fabricated for the sole purpose of this Contract and not incorporated in the Work; and

5.    Take no action which will increase the amounts payable by the City pursuant to this Contract.

(b)    1.    a)    "Direct Costs", as used in this Section, shall mean (i) the actual purchase price of material and equipment plus necessary and reasonable delivery costs, plus (ii) the actual cost of labor involved in construction and installation at the Site, plus (iii) the actual cost of necessary bonds and insurance purchased pursuant to requirements of this Contract, less any amounts which have been or should be refunded by the Contractor's sureties or insurance carriers. Direct Cost shall not include overhead.

b)    "Notice to Proceed" as used in this section shall mean, Contractor requesting the Contractor to commence the Work.

c)    "Notice of Termination" as used in this Section shall mean, written notice from the City to the Contractor notifying said Contractor that this Contract has been terminated pursuant to Article 19.3 of this Contract.

2.    On all lump sum contracts:
a)    Where the Contract has not been registered, the City will pay Contractor, in the manner prescribed in Subparagraph 19.3:

i) The actual cost of necessary bonds and insurance purchased pursuant to the requirements of this Contract, less any amounts which have been or should be refunded by the Contractor's sureties or insurance carriers; plus

ii) Non-cancelable material and equipment that is not capable of use except in the performance of this Contract and has been specifically fabricated for the sole purpose of this Contract less all payments for such made prior to the Notice of Termination.

b)    Where the Contract has been registered, the City will pay Contractor, in the manner prescribed in Subparagraph 19.3:

i) Its Direct Cost, less all payments made for such Direct Cost prior to the Notice of Termination, or the fair and reasonable value, whichever is less for (A) the portion of the Work completed up to the time of termination of this Contract, less all payments made for such Work prior to the Notice of Termination, and (B) non-cancelable material and equipment that is not capable of use except in the performance of this Contract and has been specifically

50

fabricated for the sole purpose of this Contract but not incorporated in the Work, less all payments made for such material and equipment prior to the Notice of Termination.

      3.      On all unit price contracts, the City will pay the Contractor:

          a. For all completed units, the unit price stated in the contract.

          b. For all incomplete units, an amount determined in accordance with the provisions of Subparagraph 19.3(b)(2)(b)(i), for each incomplete unit.

      4.      In no event shall any payment pursuant to this Section exceed the Contract price for such items.

      5.      All payments made pursuant to this Section shall be in the nature of liquidated damages and shall be accepted by the Contractor in full satisfaction of all claims against the City arising out of the termination.

(c)      The City may deduct from or set off against any sums due and payable pursuant to this Section, any claims it may have against the Contractor.

(d)      Where the Work has been substantially completed, as evidenced by a duly executed certificate of substantial completion, termination of the Work shall be handled as a change order pursuant to the provisions contained in this Contract, in which case a change order shall be issued to reflect an appropriate reduction in the Total Contract Price, or if the amount is determined after final repayment, it shall be paid by the Contractor.

19.4    Investigations.  The parties to this Contract agree to cooperate fully and faithfully with any investigation, audit, or inquiry conducted by a State or City governmental agency or authority which is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency which is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license that is the subject of the investigation, audit, or inquiry.

(a)      The Commissioner shall convene a hearing, upon not less than five (5) days' written notice to the parties involved, to determine if any penalties should attach for the failure of a person to testify:

      1.      If any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding refuses to testify before a grand jury or other governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath concerning the award of or performance pursuant to any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision or public authority thereof, or the Port Authority of New York

and New Jersey, or any local development corporation within the City, or any public benefit corporation organized pursuant to the laws of the State; or

2.    If any person refuses to testify for a reason other self incrimination in an investigation, audit, or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance pursuant to, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision thereof or any local development corporation within the City.

(b)    If any non-governmental party to the hearing described in Paragraph 19.4(a) requests an adjournment, the Commissioner may, upon granting such adjournment, suspend this Contract and any other contract, lease, permit, or license, pending the final determination pursuant to Paragraph 19.4(d), without the City incurring any penalty or damages for delay or otherwise.

(c)    The penalties which may attach after a final determination by the Commissioner may include, but shall not exceed:

1.    The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of which such person was a member at the time the testimony was sought, from submitting bids for, or transacting business with, or entering into or obtaining any contract, lease, permit, or license with or from the City; and/or

2.    The cancellation or termination of any and all such existing City contracts, leases, permits, or licenses which the refusal to testify concerns and which have not been assigned as permitted pursuant to this Contract, nor the proceeds of which pledged to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the City incurring any penalty or damages on account of such cancellation or termination; provided, however, that monies lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the City.

(d)    The Commissioner shall consider and address in reaching his determination and in assessing an appropriate penalty the factors in Paragraphs 19.4(d)(1) and (2).  He or she may also consider, if relevant and appropriate, the criteria established in Paragraphs 19.4(d)(3) and (4) and any other information.

1.    The party's good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit, including, but not limited to, the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees, or fiduciaries whose testimony is sought.

52

# EXHIBIT 1
# PART 4 OF 5

2.      The relationship of the person who refused to testify to any entity that is a party to the hearing, including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity.

3.      The nexus of the testimony sought to the subject entity and its contracts, leases, permits, or licenses with the City.

4.      The effect a penalty may have on an unaffiliated and unrelated party or entity that has a significant interest in an entity subject to penalties pursuant to Paragraph 19.4(a), provided that the party or entity has given actual notice to the Commissioner upon the acquisition of the interest, or at the hearing called for in Paragraph 19.4(a) gives notice and proves that such interest was previously acquired. In either circumstance, the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

(e)    1.      The term "license" or "permit", as used in this Section, shall be defined as a license, permit, franchise, or concession not granted as a matter of right.

2.      The term "person", as used in this Section, shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal, or employee.

3.      The term "entity", as used in this Section, shall be defined as any firm, partnership, corporation, association, or person that receives monies, benefits, licenses, leases, or permits from or through the City or otherwise transacts business with the City.

4.      The term "member", as used in this Section, shall be defined as any person associated with another person or entity as a partner, director, officer, principal, or employee.

(f)    In addition to and notwithstanding any other provision of this Contract, the Commissioner may, in his sole discretion, terminate this Contract upon not less than three (3) days written notice in the event Contractor fails to promptly report in writing to the Commissioner of Investigation of the City any solicitation of money, goods, requests for future employment or other benefit or thing of value, by or on behalf of any employee of the City or other person, firm, corporation, or entity for any purpose which may be related to the procurement or obtaining of this Contract by the Contractor, or affecting the performance of this Contract.

19.5    Noise Control Code Provisions. In accordance with the provisions of Section 24-216 of the Administrative Code, devices and activities which will be operated, conducted, constructed, or manufactured pursuant to this Contract and which are subject to the provisions of the City Noise Control Code shall be operated, conducted, constructed, or manufactured without causing a violation of such

code. Such devices and activities shall incorporate advances in the art of noise control developed for the kind and level of noise emitted or produced by such devices and activities, in accordance with regulations issued by the City's Department of Environmental Protection.

19.6    Officers, Employees, and Officials. No member, officer, or employee of the City or its designees or agents, no member of the governing body of the City, and no other public official of the City who exercises any functions or Responsibilities with respect to the Project during his or her tenure or for one year thereafter shall have any interest, direct or indirect, in any contract or subcontract, or the proceeds thereof, for work to be performed in connection with the Project.

19.7    Conditions Precedent. This Contract shall neither be binding nor effective unless:

1.    Approved by the Mayor pursuant to the provisions of Executive Order No. 42, dated October 9, 1975, in the event such Executive Order requires such approval; and

2.    Certified by the Mayor (Mayor's Fiscal Committee created pursuant to Executive Order No. 43, dated October 14, 1975) that performance thereof will be in accordance with the City's financial plan; and

3.    Approved by the New York State Financial Control Board pursuant to the New York State Financial Emergency Act for the City of New York, as amended, in the event regulations of such board pursuant to such act require such approval.

The requirements of this Section shall be in addition to, and not in lieu of, any approval or authorization otherwise required for this Contract to be effective and for the expenditure of City funds.

19.8    Conflicts of Interest. Section 2604 and other related provisions of the City Charter, the Administrative Code and the Penal Law are applicable under the terms of this Contract in relation to conflicts of interest and shall be extended to Subcontractors authorized to perform Work, labor and services pursuant to this Contract and further, it shall be the duty and responsibility of the Contractor to so inform its respective Subcontractors. Notice is hereby given that, under certain circumstances, penalties may be invoked against the donor as well as the recipient of any form of valuable gift.

**ARTICLE 20**
**EQUAL EMPLOYMENT OPPORTUNITY**

20.1    Contractor will not discriminate against any employees or applicants for employment because of race, creed, color, national origin, sex, age, sexual orientation or affectional preference with respect to hiring or any of the terms and conditions of employment, including, but not limited to, upgrading, demotion, transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for

training, including apprenticeship. Contractor will take affirmative action to assure that the above requirements are met and will otherwise comply with the provisions of:

(a)     Mayoral Executive Order No. 50 of April 25, 1980;

(b)     HDA Administrator's Order No. 4;

(c)     HPD Equal Employment Opportunity Regulations Nos. 1, 2 and 3;

(d)     New York State Labor Law Section 220(e);

(e)     New York City Administrative Code Section 343-8.0 and the rules, regulations, and requirements issued thereunder.

A summary of a portion of the requirements of the above laws, orders, rules and regulations is attached hereto as Exhibit B. In addition Contractor will observe and comply with the Federal non-discrimination provisions set forth in Exhibit D annexed hereto.

## ARTICLE 21
## CONDITIONS PRECEDENT

21.1    This Agreement will not become effective and binding unless:

(a)     the City Comptroller shall have endorsed his certificate hereon that there remains unexpended and unapplied a balance of the appropriation of funds applicable hereto sufficient to pay the estimated expenses of executing this Agreement;

(b)     approved by the Mayor pursuant to the provisions of Executive Order No. 42 dated October 9, 1975, if Executive Order No. 42 requires such approval;

(c)     certified by the Mayor's Fiscal Committee created pursuant to Executive Order No. 43, dated October 14, 1975 that performance thereof will be in accordance with the City's financial plan if Executive Order No. 43 requires such approval; and

(d)     approved by the New York State Financial Control Board ("FCB") pursuant to the New York State Financial Emergency Act for the City of New York ("Act") if the regulations of FCB pursuant to the Act require such approval.

## ARTICLE 22
## CHANGES

22.1    Changes may be made to this contract only as duly authorized by the Agency Chief Contracting Officer or his or her designee. Vendors deviating from the requirements of an original purchase order or contract without a duly approved change order document, or written contract modification or amendment, do so at their own risk. All such changes, modifications and amendments will become a part of the original contract.

22.2     Contract changes will be made only for work necessary to complete the work included in the original scope of the contract, and for non-material changes to the scope of the contract. Changes are not permitted for any material alteration in the scope of work. Contract changes may include any contract revision deemed necessary by the Contracting Officer.

22.3     The contractor shall be entitled to a price adjustment for extra work performed pursuant to a written change order. If any part of the contract work is necessarily delayed by a change order, the contract will be entitled to an extension of time for performance. Adjustments to price shall be computed in one or more of the following ways: (i) by agreement of a fixed price; (ii) by unit prices specified in the contract; (iii) by time and material record; and/or (iv) in any other manner approved by the City Chief Procurement Officer.

22.4     Where the cost of the change order has been negotiated in the absence of established cost history, the costs are subject to verification by post audit. If the post-audit reveals that the contractor's costs for the change order work were inaccurately stated during negotiations, the agency shall recoup the amount by which the costs were inaccurately stated by proportionately reducing the price of the change order. This remedy is not exclusive and in addition to all other rights and remedies of the City.

22.5     Except in the case of requirements contracts, any contract increases which cumulatively exceed the greater of 10% or $100,000 must be approved in writing by the City Chief Procurement Officer. Any contract amendment which either amends a unit price, cancels required units, or adds a new type of unit item to the contract must be approved in writing by the Agency Chief Contracting Officer.

## ARTICLE 23
## MISCELLANEOUS PROVISIONS

23.1     <u>Governing Law</u>. The validity, construction and performance of this Agreement and the transactions to which it relates will be governed by the laws of the State of New York. The Contractor will bring any actions, claims or legal proceeding in any way pertaining to this Agreement in the courts of the State of New York or in a federal court of the United States physically situated in the City of New York and in no other court or tribunal whatsoever.

23.2     <u>Headings</u>. The titles and headings contained in this Agreement are for reference only and will not be deemed to affect in any way the meaning or interpretation of this Agreement.

23.3     <u>Counterparts</u>. This agreement may be executed simultaneously in several counterparts, each of which will be deemed to be an original, and it will not be necessary in making proof of this Agreement to produce or account for more than one counterpart.

Addendum #2
PIN 806011000110
March 27, 2002
Page 2

All other terms and conditions remain unchanged.

Approved for Issuance:                                    Issued By:

_____                          _____
Jay Bernstein                                              Bernard Schwarz
Deputy Agency Chief Contracting Officer      Assistant Commissioner

ADDENDUM #2 ACKNOWLEDGEMENT          PIN # 806011000110

PRINTED NAME: _____      SIGNATURE: _____

POSITION/TITLE: _____      COMPANY: _____

NOTARY PUBLIC: _____

NOTE: SIGNED AND NOTARIZED COPIES (IN BLUE INK) OF THIS ADDENDUM MUST BE
INCLUDED WITH THE BID SUBMISSION.  FAILURE TO COMPLY MAY RENDER YOUR BID NON-
RESPONSIVE.



**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth on page 1 of this Agreement.

**THE CITY OF NEW YORK
DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT**

By:_____
   Bernard Schwarz, Assistant Commissioner

By:_____
   (Print Name and Title)

APPROVED AS TO FORM AND
CERTIFIED AS TO LEGAL AUTHORITY

Acting Corporation Counsel

57

## ACKNOWLEDGMENT BY ASSISTANT COMMISSIONER

STATE OF NEW YORK )
             ) ss.:
COUNTY OF NEW YORK)

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

## ACKNOWLEDGMENT BY CONTRACTOR

STATE OF NEW YORK  )
             ) ss.:
COUNTY OF NEW YORK )

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

58

## EXHIBIT A
## SCOPE OF SERVICES

1.  Upon request by HPD, Contractor shall provide uniformed unarmed security guard services (approximately 30 security guards will be needed, in addition to support staff such as, Security Coordinator, Clerical Support Aide, Security Specialist and Security Receptionist as described in Section 3(e), (f), (g) and (h) of this Exhibit A), to be utilized at approximately 10 HPD sites to include.

| SITE | HPD OFFICE SITE |
|------|------|
| 100 Gold Street, NYC | • |
| 560 West 133rd Street, NYC | • |
| Parking Lot (East Houston Street and Chrystie Street, NYC) | |
| 965 Longwood Avenue, Bronx | • |
| 701 Euclid Avenue, Brooklyn | • |
| 516 Bergen Street, Brooklyn | • |

2.  **License**

    Contractor shall be licensed as promulgated by the New York State, Department of State, Division of Licensing Services, 84 Holland Avenue, Albany, New York 12208-3490, in conformance with the 1992 Security Guard Act.

3.  **General Description**

    a)  Each security guard shall work an eight-hour work shift and a 40-hour week unless otherwise approved by HPD.  At no time shall the wage rate paid to any guard be less than the rate required by Section 230 of the New York State Labor Law (the "Section 230 Wage Rate").  Any increase or decrease in the wage rate paid to any guard or guards shall not result in any change in the Contractor's Rate.

    b)  "Compensable Costs" shall mean the actual expenses and costs incurred by the Contractor in its performance of this Agreement for which the Contractor will be reimbursed by HPD.  Except as otherwise specifically provided in this Exhibit A, Compensable Costs shall cover:

    1. Contractor's actual cost of wages and salaries including fringe benefits approved by HPD and paid to personnel employed by Contractor.

    2. A full-time security guard who works more than eight hours in any one day or more than 40 hours in any work week shall be paid wages for such overtime at a rate of one-and-one-half times his/her hourly rate, provided that HPD has authorized such overtime work.  Said overtime payments shall be paid by HPD as Compensable Costs.  Contractor shall give priority to "in house" security guards in the assignment of overtime work, whenever possible.

    3. Upon written request and as directed and approved in advance by HPD, Contractor shall rent, install or cause to be installed, portable sanitation facilities at HPD site for the use of guards.  The cost for the rental, installation and maintenance of such facilities shall be a Compensable Cost which shall be actual and reasonable costs in no event to exceed One Hundred Twenty-five ($125.00) Dollars per unit per month.

4. Upon written request and as described and approved in advance by HPD, Contractor shall rent, install or cause to be installed portable construction trailers at HPD sites for use by the guards. The cost of the rental, installation and maintenance of such facilities shall be a Compensable cost.

NOTE: The maximum annual Allowance for the costs incurred by the Contractor for the portable sanitation facilities and the construction trailers shall be $2,000.00.

## Work Hours

(a) Guards shall arrive at their assigned HPD site not more than 15 minutes prior to the commencement of their shift and shall vacate the site within 15 minutes of the end of their respective shifts, or immediately upon being relieved from duty during the course of shift. No guard shall leave his/her shift until relieved from duty if such relief is required pursuant to this Agreement. At HPD office sites only, as indicated above, an eight hour work shift is exclusive of the one-half hour lunch period. Unless otherwise specified, guards working in excess of five continuous hours shall not be on duty during their respective lunch periods. No charge shall be made by Contractor or paid by the City for such lunch periods, except where specifically requested and authorized by HPD. However, at non-office locations, and at HPD office locations during non-business hours (4pm - 12 Midnight and Midnight to 8am), guards working in excess of five continuous hours shall take an on-site one-half hour meal period and time chargeable to HPD. The following are the legal holidays to be recognized under this agreement: New Year's Day; Martin Luther King's Birthday; Washington's Birthday; Memorial Day; Independence Day; Labor Day; Columbus Day; Election Day; Veteran's Day; Thanksgiving Day; and Christmas Day. If HPD, in its sole discretion, should determine that a guard should work on any of the above noted holidays at any HPD location, then the guard shall be paid for the holiday at the rate of time and one-half, and HPD shall bear the cost as a Compensable Cost. Otherwise, the costs of wages paid for such legal holidays shall not be reimbursed by HPD as Compensable Costs but shall be borne entirely by Contractor. Holidays shall be separated from fringe benefits and are not to be included as part of the costs which cover fringe benefits. For each legal holiday, each security guard shall be paid for the hours that such guard ordinarily works in a day. Paychecks are to be delivered by non-assigned HPD security personnel. Paychecks shall not be cashed during a guard's tour of duty.

## Support Personnel

(a) At HPD's option, the Contractor shall provide a Security Director whose placement at an HPD site is subject to the approval of HPD and whose salary shall be borne by HPD as a Compensable Cost. (See attached job description).

(b) At HPD's option, the Contractor shall provide a Security Coordinator whose placement at an HPD site is subject to the approval of HPD and whose salary shall be borne by HPD as a Compensable Cost. (See attached job description).

(c) At HPD's option, the Contractor shall provide a Clerical Support Aide whose placement at an HPD site is subject to the approval of HPD and whose salary shall be borne by HPD as a Compensable Cost. (See attached job description).

t HPD's option, the contractor shall provide a Security Specialist whose placement at an HPD site is subject to the approval of HPD and whose salary shall be borne by HPD as a Compensable Cost. (See attached job description).

(e) At HPD's option, the Contractor shall provide a Security Receptionist whose placement at an HPD site is subject to the approval of HPD and whose salary shall be borne by HPD as a Compensable Cost. (See attached job description).

## 4. Employment/Qualification Requirements

The Contractor shall provide Security Officer Sergeants, the number of which shall be determined solely by HPD.

Contractor shall employ and provide qualified and competent personnel who shall meet minimum guard requirements to at least include the following requirements:

(a) All security guards shall conform with all of the requirement set forth in the Security Guard Act of 1992. All security guards prior to assignment with HPD shall be registered with the New York State, Department of State, Division of Licensing Services, 84 Holland Avenue, Albany, New York 12208-3490. Guards shall have undergone finger printing pursuant to regulation promulgated by the NYS Division of Licenses.

(b) All newly appointed guards shall receive training at 100 Gold Street, NYC for a minimum of eight (8) hours. All scheduled training shall be approved by HPD. The cost of wages paid to security guards for such training shall be borne entirely by the Contractor.

(c) Guards must possess either a high school diploma or a General Equivalency Diploma, and shall have completed an HPD approved employee disclosure form, copies of which shall be retained by the Contractor and HPD. At HPD's sole discretion a high school diploma or GED requirement may substituted by four (4) years of employment by a licensed security contractor.

(d) Guards shall be able to understand, speak, read, and write English and be able to: (1) communicate with visitors intelligently and (2) prepare accurate incidents reports.

(e) No guard shall be appointed to any HPD Site who has not been employed by a licensed Security Contractor for at least two (2) years, or has at least two (2) years of prior military, law enforcement, or post high school educational experience.

(f) Guards shall be in excellent physical condition and must submit to a medical exam and receive a medical certification of fitness and good health within ten (10) business days of assignment to an HPD Site. The medical exam shall include a urine drug screen test performed by a licensed testing laboratory, which should test for the following substances: amphetamines, barbiturates, benzodiazipines, cocaine, marijuana, methadone, methaqualine, opiates, PCPs propoxyphene. Drug screen test results shall be made part of the employees personnel file and forwarded to HPD by Contractor within five (5) days of receipt.

## 5. Other General Requirements and Guard Duties

3

The Contractor shall:

   (a) be responsible for the necessary supervision of the guards

   (b) adhere to all policies, practices, procedures and directives prescribed by HPD

   (c) immediately notify the appropriate police precinct, if in the judgment of the Contractor such action becomes necessary because of the presence of any unauthorized person or persons or the occurrence of any untoward event

   (d) make a report by telephone to HPD's Disciplinary Unit (212) 863-6930 soon after the happening of such event, considering the date and time of such event, but no later than the first hour of the first business day after the happening of such event or occurrence

   (e) provide the Disciplinary Unit with a detailed report in writing of any occurrence or incident requiring action by the guards within twenty-four hours of such incident.

The security guard shall provide services to include:

- observe and screen all visitors, issue passes and check identification;

- keep a written record of all visitors including name, address, time of arrival and departure, and HPD person being visited;

- maintain a site security log, recording any security-related incidents that occur during that shift and recording the date, time and name of inspector performing an HPD and/or guard supervisor inspection;

- direct and, if necessary, escort visitors to the appropriate HPD person sought;

- enforce reasonable HPD office rules approved by HPD;

- enforce reasonable building rules approved by HPD;

- maintain the HPD office in orderly manner;

- protect the HPD offices from intrusion by vandals and unauthorized persons;

- guard against loitering, theft, personal assaults and all other types of suspicious, wrongful or unlawful acts;

- where directed by HPD, make periodic tours or rounds of the report to the Contractor the presence of any unauthorized p could cause or bring about harm or damage to the site or p
- Guards shall execute their duties and responsibilities in a co manner.

## 6. Personnel Folder Requirements

a)  Contractor shall be required to submit to HPD a copy of the security officer's personnel folder containing the following employee disclosure information:

> Name
> Home Address
> Date of Birth
> Social Security number
> Photograph - duplicate of Photo Identification card
> Copy of employment application (if applicable)
> Copy of NYS Division of Licensing Application Form 307
> Copy of birth certificate (or acceptable proof of birth date)
> Copy of Alien Registration Form I9
> Copy of high school diploma or GED
> Military records
> Equipment Inventory Form
> Copy of NYS fingerprint card
> Record of security training
> Medical exam certificate
> Urine analysis results
> Certificate citing security officer's receipt of Security Training
> Contract Exhibit A Scope of Services

b)  Alternate proof of any of the above shall be accepted only at the sole discretion of HPD. This folder, complete with all documentation, must be forwarded to HPD within fifteen (15) business days after appointment of any guard or related personnel to any HPD site.

## 7.  Appropriate Attire/Accompaniment

(a)  Each guard shall be appropriately dressed in a uniform supplied by Contractor.  Guards shall wear shoes. HPD may, in it sole discretion, require the Contractor to provide a different color uniform for those guards stationed at 100 Gold Street.  Standard uniforms shall include an outdoor jacket, gloves and hat (if outdoors), tie, shirt, trousers, indoor jacket (if indoors), and belt. Uniforms shall be neat and clean at all times and appropriate for whatever working and weather conditions will be encountered by guard. Appropriately displayed, each guard shall:

> wear a patch that identifies him/her as a security guard
> wear badges and carry a photo identification cards
> carry personal log books and if on a 4:00 P.M. to Midnight or Midnight to 8:00 A.M. shift
> carry working flashlights.

(b)  Photo identification cards shall be issued by the Contractor to be worn by each guard and shall be either a photo-insert or all-photo type card.  Each card shall indicate the Contractor's name, the full name of the guard, and the guard's signature.  Such identification cards shall be laminated.  A duplicate photo shall be submitted to the HPD Disciplinary Unit and made part of each employees personnel folder.

## 8.  Uniform Requirements

Security officers shall be required to complete an equipment inventory form acknowledging receipt of equipment and quantities received of each.  Said form shall be made part of each

5

sec...fficers personnel file. (See sample equipment form attached hereto as Appendix A). Quantities of uniform items supplied by the Contractor to full time guards shall include not less than the following:

| | |
|---|---|
| TIE | 2 each (blue). Female officers may wear cross ties; male officers shall wear standard ties. |
| SHIRTS | 10 each - 5 long sleeve 5 short sleeve with company emblem sewn on left sleeve (color to be determined by HPD, form-fit type with badge tabs.) |
| TROUSERS | 4 each. |
| BELT | 1 each (black). |
| JACKETS | 1 each with company emblem on left sleeve. Jackets are to be security guard type, blue to match trousers. Jackets are required for indoor guards. |
| HAT* | 1 each hat should be blue, winter type. |
| BADGE | 1 |
| OUTDOOR COAT* | 1 each with company emblem on left sleeve. Jacket should have provision for badge to be attached. Jacket (insulated). |
| GLOVES* | 1 pair (winter wear). |

*For outdoor posts only.

Note: Guards working part time shall be equipped according to their schedules:

**9. General Performance Requirements**

All Security Guards employed by the Contractor and assigned to HPD Shall:

a) not bring any weapon of any sort into any office including firearms, knives, billys, nightsticks, blackjacks, gas discharge guns or containers or any other similar item.

b) not bring into any office or carry any television, recorder, radio, reading material, music maker, game, or pictorial material unless approved in writing by HPD.

c) not be under the influence or carry the odor of alcoholic beverages while on duty, nor shall any guard carry or consume any alcoholic beverage while on duty.

d) not be under the influence of, carry or ingest a controlled substance as defined in the Penal Law of the State of New York while on duty, except as prescribed by medical authorities and then only if the guard's performance of his duties will not be impaired in any way. Any such prescribed drugs shall be carried in a bona fide pharmaceutical container indicating the doctor's name, patient's name and date of issuance.

6

e) carry any packages, cartons, containers, or luggage larger than a purse to or from any HPD site unless permitted or directed to by HPD personnel, which consent shall be in writing signed by an HPD representative.

A Security Guards employed by the Contractor and assigned to HPD Shall:

a) receive basic training as required under the New York State Security Guard Act of 1992. All costs will not be borne by HPD. A representative of HPD may attend any and all training sessions at HPD's sole discretion.

b) receive from the Contractor a copy of this Scope of Services as well as a copy of HPD's Equal Opportunity guidelines.

c) on an annual basis receive a medical drug screen as outlined in section 4(f) above. Additionally, the Contractor shall be required to reissue to each assigned security guard a copy of this Scope of Services and a copy of HPD's Equal Opportunity guidelines.

d) answer any questions by the HPD Disciplinary Unit and/or its designee relating to the performance of his/her official duties

e) answer any questions by the HPD Disciplinary Unit and/or its designee regarding any events witnessed by the security guard at his/her work location during the assigned hours of work whether or not those events directly involved the performance of his/her official duties

f) surrender to the HPD Disciplinary Unit and/or its designee any documents, weapons or other evidence obtained by the security guard while performing his/her official duties or while witnessing any events at his/her work location during the assigned hours of work

g) submit to the HPD Disciplinary Unit sworn statements regarding any incident witnessed by the security guard

h) immediately report to the HPD Disciplinary Unit and/or its designee any corrupt or criminal activity or conflict of interest regarding security guards and/or employees of the Department of Housing Preservation and Development

i) cooperate fully with the Office of the Disciplinary Unit in regard to any investigations conducted by it and any administrative and/or judicial proceedings resulting from said investigations

HPD may at its discretion issue operating guidelines to Contractor, prescribing procedures or changes in procedures for the performance of Program Work. Such guidelines shall be fully complied with by Contractor

**10.    Site/ Maintenance and Coverage**

a)    Contractor must maintain a 24 hour per day office.  Such office shall: (i) be manned for all of the 24 hours by a trained and qualified dispatcher; (ii) contain a toll-free incoming telephone line; and (iii) contain a FAX (facsimile) machine.

b)    HPD reserves the right to move guards from one site office to another, from one floor to another and to increase or decrease the hours of guard service as the need arises.

c)    HPD reserves the right to order any additional security coverage at any site as it deems appropriate, and to reduce or eliminate the security coverage at any site during the term of this Agreement.  Work so ordered by HPD must be performed by the Contractor in accordance with the terms of this Agreement.

**11.  Shift/ Supervisory Functions**

At Contractor's expense, the Contractor shall designate shift supervisors who shall make inspections of guards at HPD sites in order to confirm that said guards are acting in conformance with the terms and conditions of this Agreement. Supervisors shall record the date and time of such inspection on the guards attendance sheet. Inspections shall be made in accordance with the schedule hereinafter set forth:

(a)  Guards working shifts at HPD office sites shall be inspected once per shift;

(b)  Guards working the 8:00 A.M. - 4:00 P.M. shift at HPD office sites shall be inspected twice per shift including weekends and holidays.  Such inspections shall be at least four (4) hours apart, or at varying times that HPD has agreed to and finds acceptable.

(c)  Guards working the 8:00 A.M. - 4:00 P.M. shift at building construction sites shall be inspected twice per shift including weekends and holidays.  Such inspections shall be at least four (4) hours apart, or at varying times that HPD has agreed to and finds acceptable.

(d)  Guards working the 4:00 P.M. - 12:00 MIDNIGHT shift at building construction sites as well as HPD office sites shall be inspected twice per shift including weekends and holidays. Such inspections shall be at least four (4) hours apart, or at varying times that HPD has agreed to and finds acceptable.

(e)  Guards working the 12:00 MIDNIGHT - 8:00 A.M. shift at building construction sites as well as HPD office sites shall be inspected twice per shift including weekends and holidays.  Such inspections shall be at least four (4) hours apart, or at varying times that HPD has agreed to and finds acceptable.

## 12. Equipment

The Contractor shall provide UHF Motorola Radius GP350 two channel type walkie-talkie or an HPD approved equivalent model and manufacturer, including, carrying case or belt clip, one rechargeable battery and re-charger per unit to the Security sites, as listed in Appendix B. HPD maintains a limited number of **agency owned** walkie-talkies and one (1) UHF repeater at 100 Gold Street. HPD shall provide the Contractor with the UHF-FM operating frequencies at the time of contract award. The number of such radios shall not exceed seventeen (17). The cost of rental or purchase, maintenance and security of such walkie-talkies shall be borne exclusively by the Contractor. All equipment shall be returned to HPD upon expiration or termination of the contract.

## APPENDIX A
## EQUIPMENT INVENTORY FORM

SECURITY OFFICER'S NAME: _____

SOCIAL SECURITY NUMBER: _____

Security officer must initial next to each item received to confirm receipt and quantity required:

|  |  | AMOUNT<br>RECEIVED |
|--|--|--|
| TIES: | 2 each Navy Blue _____ | ( ) |
| SHIRTS: | 5 each Long Sleeve _____<br>Uniform Type | ( ) |
|  | 5 each Short Sleeve _____<br>Uniform Type | ( ) |
| TROUSERS: | 4 each Navy Blue _____<br>Uniform Type | ( ) |
| BELT: | 1 each Black _____ | ( ) |
| JACKETS: | 1 each Indoor _____ | ( ) |
| BADGE: | 1          _____ | ( ) |

### FOR OUTDOOR POSTS ONLY:

| HAT: | 1 each _____ | ( ) |
|--|--|--|
| COATS: | 1          _____ | ( ) |
| GLOVES: | 1 pair winter _____<br>wear | ( ) |

A copy of completed form is to be inserted in each employee's personnel folder and the personnel folder then forwarded to H.P.D.

**APPENDIX B**

SITES REQUIRING TWO-WAY RADIOS

|  | No. of Radios |
|---|---|
| Parking Lot | 1 |
| 965 Longwood | 4 |
| 100 Gold Street | 6 |
| Anticipated number of radios for use at construction sites throughout the term of this Contract | 6 |
| TOTAL RADIOS REQUIRED | 17 |

11

Qualification Requirements:

- A four (4) year high school diploma or a General Equivalence Diploma (GED); or

- Four (4) years of experience performing receptionist related duties.

## Number of Temporary Personnel and Hours of Work Requirements:

- One (1) person is required.

- Personnel will be assigned to work 40 hours/5 days per week, exclusive of a one-half hour lunch period.

## E. SECURITY SPECIALIST

## General Statement of Duties and Responsibilities

Although the Security Specialist is an employee of the Contractor, he/she will report directly to HPD for their assigned duties, which are specific to HPD.   The Security Specialist shall be required to conduct security surveys, perform supervisory functions and have a working knowledge of agency access control systems.

## Qualifications Requirements

- 1.    A four (4) year high school diploma or a General Equivalence Diploma (GED) and 2 years of experience with a licensed Security Firm/Service performing guard related duties, one year should be performing supervisory related duties; or

- 2.   Four (4) years of experience as described in number one above with some prior military or law  enforcement experience.

## Special Requirement:

- HPD may at its discretion issue the Security Specialist a City-owned/leased vehicle.  The Security Specialist must possess a Motor Vehicle Driver's License valid in the State of New York.

## Number of Personnel and Hours of Work Requirements:

- One (1) person required.

- Personnel will be assigned to work 40 hours/ 5 days per week, exclusive of a one-half hour lunch period.

3

*EXHIBIT B*



BUREAU OF LABOR SERVICES

1985 DEC 31  PM 1: 36

THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

Executive Order No. 108
December 29, 1986

Amendment of Executive Order No. 50
(April 25, 1980)

BUREAU OF LABOR SERVICES

By the power vested in me as Mayor of the City of New York, it is hereby ordered:

Section 1.  Prior Order Amended.

a.  Section 6(a) of Executive Order No. 50, dated April 25, 1980, is amended to read as follows:

"Submission Requirements.  No contracting agency shall enter into a contract with any contractor unless such contractor's employment report is first submitted to the Bureau for its review.  Unless otherwise required by law, an employment report shall not be required for the following:

(i)  a construction contract in the amount of less than $1 million; a construction subcontract in the amount of less than $750,000; or a supply and service contract in the amount of $50,000 or less or of more than $50,000 in which the contractor employs fewer than 50 employees at the facility or facilities involved in the contract;

(ii)  an emergency contract or other exempt contract except as the Bureau may direct by regulation; and

contract to which it becomes a party such provisions requiring the contractor to ensure equal employment opportunity as the Bureau may direct, consistent with this Order."

d. Section 12 of such Order is amended to read as follows:

"Regulations. The Bureau shall promulgate such regulations, subject to the approval of the Mayor, as may be necessary to discharge its responsibilities under this Order, including regulations increasing the dollar amounts and number of employees referred to in this Order. Any regulations of the Bureau establishing terms and conditions for contractors shall be approved as to form by the Corporation Counsel.

Nothing contained herein shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, from limiting employment or giving preference to persons of the same religion or denomination or from making such selection as is calculated by such organization to promote the religious principles for which it is established or maintained. The regulations shall set forth this exemption for religiously-sponsored organizations and provide for the discharge of the Bureau's responsibilities in a manner consistent with such exemption."

Section 2. Effective Date. This Order shall take effect immediately.

Edward L. Koch
M A Y O R

— 2 —



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

EXECUTIVE ORDER NO. 50

APRIL 25, 1980

BUREAU OF LABOR SERVICES

By the power vested in me as Mayor of the City of New York, it is hereby ordered:

Section 1.  Purpose.  It is the purpose of this Order to ensure compliance with the equal employment opportunity requirements of City, State and Federal law in City contracting.

§ 2.  Bureau Continued.  The Bureau of Labor Services shall continue to serve such purposes and to have such responsibilities as restated by this Order.

§ 3.  Definitions.  Whenever used in this Executive Order, the following terms shall have the following meanings:

(a)  Bureau means the Bureau of Labor Services;

(b)  construction project means any construction, reconstruction, rehabilitation, alteration, conversion, extension, improvement, repair or demolition of real property contracted by the City;

(c)  contract means any written agreement, purchase order or instrument whereby the City is committed to expend or does expend funds in return for work, labor, services, supplies, equipment, materials, or any combination of the foregoing;

# EXHIBIT 1
# PART 5 OF 5

(i) Unless otherwise required by law, the term "contract" shall include any City grant, loan, guarantee or other City assistance for a construction project.

(ii) The term "contract" shall not include:

(A) contracts for financial or other assistance between the City and a government or government agency;

(B) contracts, resolutions, indentures, declarations of trust, or other instruments authorizing or relating to the authorization, issuance, award, and sale of bonds, certificates of indebtedness, notes or other fiscal obligations of the City, or consisting thereof; or

(C) employment by the City of its officers and employees which is subject to the equal employment opportunity requirements of applicable law.

(d) <u>contracting agency</u> means any administration, board, bureau, commission, department or other governmental agency of the City of New York, or any official thereof, authorized on behalf of the City to provide for, enter into, award or administer contracts;

(e) <u>contractor</u> means a person, including a vendor, who is a party or a proposed party to a contract with a contracting agency, first-level subcontractors of supply or service contractors, and all levels of subcontractors of construction contractors;

(f) <u>Director</u> means the Director of the Bureau of Labor Services;

(g) <u>economically disadvantaged person</u> means a person who, or a member of a family which, is considered economically disadvantaged under applicable law.

(h) <u>employment report</u> means a report filed by a contractor containing information as to the employment practices, policies and programs, employment statistics and collective bargaining agreements, if any, of the contractor in such form as the Bureau may direct by regulation;

(i)  _equal employment opportunity_ means the treatment of all employees and applicants for employment without unlawful discrimination as to race, creed, color, national origin, sex, age, handicap, marital status, sexual orientation or affectional preference in all employment decisions, including but not limited to recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination, and all other terms and conditions of employment except as provided by law;

(j)  _trainee_ means an economically disadvantaged person who qualifies for and receives training in one of the construction trades pursuant to a program other than apprenticeship programs, approved by the Bureau and, where required by law, the State Department of Labor or the United States Department of Labor, Bureau of Apprenticeship and Training.

§ 4.  _Responsibilities of Bureau_.  The responsibilities of the Bureau shall be as follows:

(a)  To implement, monitor compliance with, and enforce this Order and programs established pursuant to City, State and Federal law requiring contractors to provide equal employment opportunity;

(b)  To implement, monitor compliance with, and enforce on-the-job training requirements on construction projects;

(c)  To monitor compliance by contractors with State and Federal prevailing wage requirements where required;

(d)  To advise and assist contractors and labor unions with respect to their obligations to provide equal employment opportunity;

(e)  To advise and assist persons in the private sector with respect to employment problems;

(f)  To establish advisory committees, including representatives of employers, labor unions, community organizations and others concerned with the enforcement of this Order; and

(g)  To serve as the City's principal liaison to Federal, State and local contract compliance agencies.

-4-

§ 5.  Contract Provisions.

(a) Equal Employment Opportunity. A contracting agency shall include in every contract to which it becomes a party such provisions requiring the contractor to ensure equal employment opportunity as the Bureau may direct by regulation.

(b) On-the-Job Training. A contracting agency shall include in every contract concerning a construction project to which it becomes a party such provisions requiring the contractor to provide on-the-job training for economically disadvantaged persons as the Bureau may direct by regulation.

(c) Subcontractors. A contracting agency shall include in every contract to which it becomes a party such provisions requiring the contractor not to discriminate unlawfully in the selection of subcontractors as the Bureau may direct by regulation.

§ 6.  Employment Reports.

(a) Submission Requirements. No contracting agency shall enter into a contract with any contractor unless such contractor's employment report is first submitted to the Bureau for its review. Unless otherwise required by law, an employment report shall not be required for the following:

(i) a contract in the amount of $50,000 or less;

(ii) an emergency contract or other exempt contract except as the Bureau may direct by regulation; and

(iii) a contract with a contractor who has received a certificate of compliance with the equal employment opportunity requirements of applicable law from the Bureau, or an appropriate agency of the State of New York or the United States within the preceding twelve months, except as the Bureau may direct by regulation.

-5-

(b)  Bureau Review.  The Bureau shall review all employment reports to determine whether contractors are in compliance with the equal employment opportunity requirements of City, State and Federal law and the provisions of this Order.  The contracting agency shall transmit the employment report to the Bureau within ten business days after the selection of a proposed contractor.  A contracting agency may thereafter award a contract unless the Bureau gives prior written notice to the contracting agency and the contractor as follows:

(i)  If the Bureau notifies the contracting agency and the contractor within five business days after the receipt by the Bureau of the employment report that the contractor has failed to submit a complete employment report, the Director may require the contracting agency to disapprove the contractor unless such deficiency is corrected in a timely manner;

(ii)  If the Bureau notifies the contracting agency and the contractor within fifteen business days of the receipt by the Bureau of the completed employment report that the Bureau has found reason to believe that the contractor is not in substantial compliance with applicable legal requirements and the provisions of this Order, the Bureau shall promptly take such action as may be necessary to remedy the contractor's noncompliance as provided by this Order.

Provided that a contracting agency may award a requirements contract or an open market purchase agreement prior to review by the Bureau of the contractor's employment report, but may not make a purchase order against such contract or agreement until it has first transmitted such contractor's employment report to the Bureau and the Bureau has completed its review in the manner provided by this Section.

(c)  Employment Program.  The Bureau may require a contractor to adopt and adhere to a program designed to ensure equal employment opportunity.

(d)  Periodic Reports.  Contractors shall file periodic employment reports after the award of a contract in such form and frequency as the Bureau may direct by regulation to determine whether such contractors are in compliance with applicable legal requirements and the provisions of this Order.

-6-

§ 7.  <u>Training Programs</u>.  The Bureau shall monitor the recruitment, training and placement of economically disadvantaged persons in on-the-job training programs on construction projects.  Contracting agencies shall require contractors to make a good faith effort to achieve the ratio of one trainee to four journey-level employees of each craft on each construction project.

(a) The Bureau shall determine the number of trainees and hours of training required by each contractor or subcontractor for each construction project.

(b) In the event that a contractor fails to make a good faith effort to train the required number of individuals for the required amount of hours, the Bureau, after consultation with the contracting agency, shall direct such agency to reduce the contractor's compensation by an amount equal to the amount of wages and fringe benefits which the contractor failed to pay to trainees.

(c) On-the-job training of economically disadvantaged persons shall not be required on construction contracts in the amount of $125,000 or less.

§ 8.  <u>Compliance Investigations and Hearings</u>.  The Bureau shall conduct such investigations and hold such hearings as may be necessary to determine whether contractors are in compliance with the equal employment opportunity requirements of City, State and Federal law and the provisions of this Order.

(a) <u>Voluntary Compliance</u>.  The Bureau shall seek to obtain the voluntary compliance of contractors and labor unions with applicable legal requirements and the provisions of this Order.

-7-

(b) <u>Noncompliance</u>.  Upon receiving a complaint or at its own instance, the Bureau shall determine whether there is reason to believe a contractor is not in compliance with applicable legal requirements and the provisions of this Order.

(c) <u>Hearings</u>.  The Bureau shall hold a hearing on prior written notice to a contractor and the contracting agency before any adverse determination is made with respect to such contractor's employment practices or imposing any sanction or remedy for non-compliance with applicable legal requirements and the provisions of this Order.  The hearing shall be held before a City hearing officer, or such other person designated by the Director, who shall submit a report containing findings of fact and recommendations to the Director.  Based on the record as a whole, the Director shall determine whether a contractor has failed to comply with applicable legal requirements or the provisions of this Order and the appropriate sanctions for noncompliance.

(d) <u>Notices</u>.  The Bureau shall give prior notice of any hearing and shall provide a copy of any hearing report and determination of the Director under paragraph (c) of this Section to the contracting agency, the Corporation Counsel and the Comptroller.  The Bureau shall notify appropriate City, State and Federal agencies of violations of law and may, with the approval of the Corporation Counsel, initiate proceedings in such agencies.

§ 9.  <u>Sanctions and Remedies</u>.  After making a determination that a contractor is not complying with applicable legal requirements and the provisions of this Order, the Director may direct that such sanctions as may be permitted by law or contractual provisions be imposed, including the disapproval of a proposed contractor, the suspension or termination of a contract and the reduction of a contractor's compensation, except as follows:

-8-

(a) Within five business days of the issuance of a determination by the Director under Section 8(c), a contracting agency head may file with the Director written objections to the sanctions to be imposed. Where such objections have been filed, the Director and the contracting agency head shall jointly determine the appropriate sanctions to be imposed.

(b) In lieu of any of the foregoing sanctions, the Director may require a contractor to adopt and adhere to a program to ensure equal employment opportunity.

§ 10.  <u>Public Agencies</u>.  Any administration, board, bureau, commission, department or other public agency, not subject to this Order, which imposes by rule, regulation or order equal employment opportunity requirements, may, with the consent of the Mayor, delegate such responsibilities to the Bureau as may be consistent with this Order.

§ 11.  <u>Confidentiality</u>.  To the extent permitted by law and consistent with the proper discharge of the Bureau's responsibilities under this Order, all information provided by a contractor to the Bureau shall be confidential.

§ 12.  <u>Regulations</u>.  The Bureau shall promulgate such regulations, subject to the approval of the Mayor, as may be necessary to discharge its responsibilities under this Order, including regulations increasing the dollar amounts referred to in this Order.  Any regulations of the Bureau establishing terms and conditions for contractors shall be approved as to form by the Corporation Counsel.

-9-

§ 13.   Annual Report.  The Bureau shall submit an annual report to the Mayor concerning its responsiblities under this Order.

§ 14.   Separability. If any provision of this Order or the application thereof is held invalid, the remainder of this Order and the application thereof to other persons or circumstances shall not be affected by such holding and shall remain in full force and effect.

§ 15.   Revocation of Prior Orders.  Executive Orders No. 71 (1968), No. 20 (1970), No. 23 (1970), No. 27 (1970), No. 31 (1971), No. 74 (1973), No. 7 (1974), and No. 80 (1977) are hereby revoked and the first paragraph of Section 2 of Executive Order No. 4 (1978) is hereby deleted.  Nothing in this Order shall be deemed to relieve any person of any obligation not inconsistent with this Order assumed or imposed pursuant to an Order superseded by this Order.

§ 16.   Effective Date.  This Order shall take effect immediately.

EDWARD I. KOCH
M A Y O R

BUREAU OF LABOR SERVICES

1986 DEC 31 PM 1:36



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

Executive Order No. 108
December 29, 1986

Amendment of Executive Order No. 50
(April 25, 1980)

BUREAU OF LABOR SERVICES

By the power vested in me as Mayor of the City of New York, it is hereby ordered:

Section 1.   Prior Order Amended.

    a.   Section 6(a) of Executive Order No. 50, dated April 25, 1980, is amended to read as follows:

    "Submission Requirements.  No contracting agency shall enter into a contract with any contractor unless such contractor's employment report is first submitted to the Bureau for its review.  Unless otherwise required by law, an employment report shall not be required for the following:

    (i)   a construction contract in the amount of less than $1 million; a construction subcontract in the amount of less than $750,000; or a supply and service contract in the amount of $50,000 or less or of more than $50,000 in which the contractor employs fewer than 50 employees at the facility or facilities involved in the contract;

    (ii)   an emergency contract or other exempt contract except as the Bureau may direct by regulation; and

contract to which it becomes a party such provisions requiring the contractor to ensure equal employment opportunity as the Bureau may direct, consistent with this Order."

d.    Section 12 of such Order is amended to read as follows:

"Regulations.  The Bureau shall promulgate such regulations, subject to the approval of the Mayor, as may be necessary to discharge its responsibilities under this Order, including regulations increasing the dollar amounts and number of employees referred to in this Order.  Any regulations of the Bureau establishing terms and conditions for contractors shall be approved as to form by the Corporation Counsel.

Nothing contained herein shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, from limiting employment or giving preference to persons of the same religion or denomination or from making such selection as is calculated by such organization to promote the religious principles for which it is established or maintained.  The regulations shall set forth this exemption for religiously-sponsored organizations and provide for the discharge of the Bureau's responsibilities in a manner consistent with such exemption."

Section 2.    Effective Date.  This Order shall take effect immediately.

Edward L. Koch
M A Y O R

– 2 –



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK N Y 10007

Executive Order No. 94
June 20, 1986

Amendment of Executive Order No. 50
(April 25, 1980)

<u>BUREAU OF LABOR SERVICES</u>

By the power vested in me as Mayor of the City of New York, it is hereby ordered:

Section 1.  <u>Prior Order Amended.</u>

a.    Section 1 of Executive Order No. 50, dated April 25, 1980, is amended to read as follows:

"<u>Purpose.</u>  It is the purpose of this Order to ensure equal employment opportunity in City contracting."

b.    Section 3(i) of such Order is amended to read as follows:

"<u>equal employment opportunity</u> means the treatment of all employees and applicants for employment without unlawful discrimination as to race, creed, color, national origin, sex, age, disability, marital status or sexual orientation in all employment decisions, including but not limited to recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination, and all other terms and conditions of employment;"

c.    Section 5(a) of such Order is amended to read as follows:

"<u>Equal Employment Opportunity.</u>  A contracting agency shall include in every

(iii)  a contract with a contractor who has received a certificate of compliance with the equal employment opportunity requirements of applicable law from the Bureau within the preceding twenty-four months, or an appropriate agency of the State of New York or of the United States within the preceding twelve months, except as the Bureau may direct by regulation."

b.    Section 7(c) of such Order is amended to read as follows:

"On-the-job training of economically disadvantaged persons shall be required on all construction contracts covered by the submission requirements of this Order."

Section 2.  **Effective Date.**  This Order shall take effect immediately, but shall have no retrospective effect with respect to the two (2) year approval period provided for in Section 1(a) of this Order, amending Section 6(a)(iii) of Executive Order No. 50, dated April 25, 1980.

Edward I. Koch
M A Y O R

- 2 -

EXHIBIT C

## OFFICE OF THE COMPTROLLER CITY OF NEW YORK                    1

THIS SCHEDULE OF PREVAILING WAGES MUST BE POSTED AT THE PUBLIC WORK
SITE PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE § 6-109.

### SECURITY, TEMPORARY(CLERICAL), CLEANING
### AND FOOD SERVICE EMPLOYEES.

PURSUANT TO NYC ADMINISTRATIVE CODE § 6-109, THE COMPTROLLER OF
THE CITY OF NEW YORK HAS PROMULGATED THIS SCHEDULE OF PREVAILING WAGES
FOR SECURITY, TEMPORARY (CLERICAL), CLEANING AND FOOD SERVICE
EMPLOYEES ENGAGED ON PUBLIC WORK CONTRACTS IN EXCESS OF THE SMALL
PURCHASE LIMIT SET BY THE PROCUREMENT POLICY BOARD. THE PREVAILING
RATE SCHEDULE AS PROMULGATED BY THE COMPTROLLER, MUST, IN COMPLIANCE
WITH LAW, BE ANNEXED TO AND FORM PART OF THE CONTRACT.

PURSUANT TO ARTICLE 9, § 230 ET SEQ. OF THE NEW YORK STATE LABOR
LAW, SECURITY AND CLEANING SERVICE EMPLOYEES EMPLOYED UNDER A PUBLIC
BUILDING SERVICE CONTRACT IN EXCESS OF $1,500.00, MUST RECEIVE NOT
LESS THAN THE PREVAILING RATE OF WAGE AND SUPPLEMENTAL BENEFITS FOR
THE CLASSIFICATION OF WORK PERFORMED. WHERE THERE IS A CONFLICT
BETWEEN NEW YORK CITY ADMINISTRATIVE CODE § 6-109 AND NEW YORK STATE
LABOR LAW § 230 THE PROVISIONS OF § 230 ET SEQ. SHALL CONTROL.

THE APPROPRIATE SCHEDULE OF PREVAILING WAGES MUST BE POSTED AT
ALL PUBLIC WORK SITES PURSUANT TO NYC ADMINISTRATIVE CODE § 6-109
SUBSECTION D.

THIS SCHEDULE IS APPLICABLE FOR WORK PERFORMED FROM JANUARY 1,
2002 THROUGH DECEMBER 31, 2002, UNLESS OTHERWISE NOTED.  YOU WILL BE
NOTIFIED OF ANY CHANGES TO THIS SCHEDULE BY ADDENDA PUBLISHED IN THE
CITY RECORD.  SCHEDULES FOR FUTURE ONE YEAR PERIODS WILL BE PUBLISHED
ANNUALLY IN THE CITY RECORD ON OR ABOUT JANUARY 1ST OF EACH SUCCEEDING
YEAR.

THE WAGE RATES PUBLISHED IN THIS SCHEDULE MAY NOT INCLUDE ALL
HOURLY WAGE CALCULATIONS FOR OVERTIME, SHIFT DIFFERENTIAL, HOLIDAY,
SATURDAY, SUNDAY OR OTHER PREMIUM TIME WORK.  SIMILARLY, THIS SCHEDULE
DOES NOT SET FORTH EVERY PREVAILING PRACTICE WITH WHICH EMPLOYERS MUST
COMPLY. HOWEVER, ALL SUCH UNPUBLISHED RATES ARE NONETHELESS PART OF
THE EMPLOYER'S PREVAILING WAGE RATE OBLIGATION.

ANSWERS TO QUESTIONS CONCERNING THE APPLICATION OF PREMIUM RATES
AND OR PREVAILING TRADE PRACTICES MAY BE FOUND IN THE COLLECTIVE
BARGAINING AGREEMENTS OF THE PREVAILING UNION. SUCH AGREEMENTS ARE
AVAILABLE FOR INSPECTION BY APPOINTMENT. REQUESTS FOR APPOINTMENTS MAY
BE MADE BY CALLING (212) 669-4437, MONDAY THROUGH FRIDAY BETWEEN THE

### *OFFICE OF THE COMPTROLLER CITY OF NEW YORK*                    2

HOURS OF 9 A.M. TO 5 P.M.  ALL OTHER INQUIRIES CONCERNING COMPLIANCE WITH THIS LAW, SHOULD BE DIRECTED TO; BUREAU OF LABOR LAW, ATTENTION: THOMAS NODELL, OFFICE OF THE COMPTROLLER, 1 CENTRE STREET, ROOM 629, NEW YORK, N.Y. 10007; FAX (212) 669-8747.

CONTRACTORS ARE SOLELY RESPONSIBLE FOR MAINTAINING ORIGINAL PAYROLL RECORDS WHICH DELINEATE, AMONG OTHER THINGS, THE HOURS EACH EMPLOYEE WORKED WITHIN A GIVEN CLASSIFICATION. CONTRACTORS USING RATES AND/OR CLASSIFICATIONS NOT PROMULGATED BY THE COMPTROLLER DO SO AT THEIR OWN RISK.  ADDITIONALLY, PRIOR TO BID, AGENCY CHIEF CONTRACT OFFICERS MUST CONTACT THE BUREAU OF LABOR LAW WHEN THE NEED ARISES FOR A WORK CLASSIFICATION NOT PUBLISHED IN THIS SCHEDULE.

### PREVAILING RATE SCHEDULE INFORMATION

THE INFORMATION LISTED BELOW IS INTENDED TO ASSIST YOU IN MEETING YOUR PREVAILING WAGE RATE OBLIGATION. COVERED WORKERS: ANY AND ALL INDIVIDUALS WHO ARE ENGAGED, EMPLOYED OR OTHERWISE OCCUPIED AS SECURITY, TEMPORARY (CLERICAL), CLEANING AND FOOD SERVICE EMPLOYEES ON THE PUBLIC WORK SITE.

CONTRACTORS ARE ADVISED TO REVIEW THE APPLICABLE COLLECTIVE BARGAINING AGREEMENTS AND THE COMPTROLLER'S PREVAILING RATE SCHEDULE BEFORE BIDDING ON PUBLIC WORK.  ANY PREVAILING WAGE RATE ERROR MADE BY THE CONTRACTING AGENCY IN THE CONTRACT DOCUMENTS WILL NOT PRECLUDE A FINDING AGAINST THE CONTRACTOR OF PREVAILING WAGE VIOLATION.

THIS SCHEDULE SETS FORTH THE PREVAILING WAGE RATES REQUIRED TO BE ANNEXED TO AND FORM PART OF THE CONTRACT SPECIFICATIONS FOR NEW YORK CITY PUBLIC WORK PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE § 6-109.  HOWEVER, ONLY THE PREVAILING RATES FOR THE SPECIFIC SECURITY, TEMPORARY (CLERICAL), CLEANING AND FOOD SERVICE EMPLOYEE OR CLASSIFICATION ANTICIPATED BY THE CONTRACTING AGENCY TO BE UTILIZED UPON SUCH PUBLIC WORK NEED BE ANNEXED TO THE CONTRACT.

THE ATTACHED SCHEDULE OF WAGES ARE THE PREVAILING RATES AND THE CONTRACTOR ENGAGED IN PUBLIC WORK IS OBLIGATED TO PAY EACH SECURITY, TEMPORARY (CLERICAL), CLEANING AND FOOD SERVICE WORKER NOT LESS THAN THE RATES SPECIFIED IN THIS SCHEDULE FOR THE TRADE OR OCCUPATION UTILIZED UPON SUCH PUBLIC WORK.

### THOMAS C. NODELL
### BUREAU OF LABOR LAW

*EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002*

OFFICE OF THE COMPTROLLER CITY OF NEW YORK                    3

HOLIDAY LEGEND
        The following is an explanation of the code(s) in the HOLIDAY section of each
classification contained in this prevailing rate schedule.  The Holidays as listed
below are to be paid at the wage rates at which the employee is normally classified.

( 1) None
( 2) New Years Day
( 3) Martin Luther King Jr. Day
( 4) Lincoln's Birthday
( 5) Washington's Birthday
( 6) President's Day
( 7) Good Friday
( 8) Memorial Day
( 9) Independence Day
(10) Labor Day
(11) Columbus Day
(12) Election Day
(13) Presidential Election Day
(14) 1/2 day on Presidential Election Day
(15) Veteran's Day
(16) Thanksgiving Day
(17) Day after Thanksgiving
(18) Day Before Christmas
(19) 1/2 day before Christmas Day
(20) Christmas Day
(21) Day before New Year's Day
(22) 1/2 day before New Year's Day
(23) Employee's Birthday

OVERTIME LEGEND
        The following is an explanation of the code(s) listed in the OVERTIME section
of each classification contained in this prevailing rate schedule.  Additional
requirements may also be listed in the OVERTIME section.

( 1) Time and one half the regular rate after a 7 hour day.
( 2) Time and one half the regular rate after an 8 hour day.
( 3) Double time the regular rate after a 7 hour day.
( 4) Double time the regular rate after an 8 hour day.
( 5) Time and one half the regular rate for Saturday.
( 6) Double time the regular time rate for Saturday.
( 7) Time and one half the regular rate for Sunday.
( 8) Double time the regular rate for Sunday.
( 9) Saturday may be used as a make-up day at straight time when a day is
        lost during that week to inclement weather.
(10) Saturday and Sunday may be used as a make-up day at straight time when a day
        is lost during that week due to inclement weather.
(11) Regular straight time rate for work on a paid holiday.
(12) Time and one half the regular rate for work on a paid holiday.
(13) Double time the regular rate for work on a paid holiday.

        NOTE: Benefits are paid for EACH HOUR WORKED unless otherwise noted.

EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002

<u>OFFICE OF THE COMPTROLLER CITY OF NEW YORK</u>    4

<u>CLASSIFICATION:</u>

LOFT CLEANING

<u>LOFT BUILDING CLASS "A":</u>   (Over 280,000 square feet gross area)
<u>Title</u>                          <u>Wage Rate per Hour</u>

Porter/Cleaner                            $16.89

SUPPLEMENTAL BENEFIT RATE PER HOUR:    $ 4.00

<u>LOFT BUILDING CLASS "B":</u> (Between 120,000 and 280,000 square feet
                           gross area)
<u>Title</u>                          <u>Wage Rate per Hour</u>

Porter/Cleaner                            $16.84

SUPPLEMENTAL BENEFIT RATE PER HOUR:    $ 4.00

<u>LOFT BUILDING CLASS "C":</u> (Less than 120,000 square feet gross area)
<u>Title</u>                          <u>Wage Rate per Hour</u>

Porter/Cleaner                            $16.80

SUPPLEMENTAL BENEFIT RATE PER HOUR:    $ 4.00

NEW EMPLOYEES: EFFECTIVE FEBRUARY 4, 1996, A NEW HIRE EMPLOYED IN THE PORTER/CLEANER TITLE, MAY BE PAID A STARTING RATE OF EIGHTY (80%) OF THE HOURLY RATE PUBLISHED ABOVE.

THIS PROVISION SHALL NOT APPLY TO ANY EXPERIENCED EMPLOYEE ("EXPERIENCED EMPLOYEE") WHO WAS EMPLOYED IN THE NEW YORK CITY BUILDING INDUSTRY ("INDUSTRY") AS OF FEBRUARY 3, 1996. "EXPERIENCED EMPLOYEE" SHALL BE DEFINED AS A PERSON WHO HAS WORKED FOR THIRTY (30) DAYS IN THE "INDUSTRY" WITHIN THE 24 MONTHS IMMEDIATELY PRECEDING HIRING (EXCLUDING EMPLOYMENT AS A VACATION RELIEF).

THESE CLASSIFICATIONS INCLUDE, BUT ARE NOT LIMITED TO, CLEANING AND DISINFECTING OF CURTAINS, RUGS, AND DRAPES, JANITORIAL AND CUSTODIAL SERVICES (OTHER THAN SCHOOL CUSTODIAN), WASHING AND WAXING FLOORS.

ADDITIONAL SUPPLEMENTAL BENEFITS FOR ALL CLASSES OF LOFT CLEANERS:

PAID HOLIDAYS: (2, 3*, 5, 7# , 8, 9, 10, 11, 16, 17#, 20, plus
              the employees birthday) see holiday legend

continued on following page -

<u>EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002</u>

OFFICE OF THE COMPTROLLER CITY OF NEW YORK                    5

\* may be exchanged for Yom Kippur or a personal day
\# may be exchanged for Lincoln's birthday and/or Veteran's Day

VACATION:
Less than six months of work  - no vacation.
Six months of work but less than one year of work  - three days.
One year of work but less than five years of work  - two weeks.
Five years of work but less than 15 years of work  - three weeks.
15 years of work but less than 25 years of work  - four weeks.
25 years or more of work  - five weeks.

SICK LEAVE:
Ten sick days per year. Unused sick leave  paid in the succeeding January, one full days pay for each unused sick day.

OVERTIME: (2, 5, 7, 12 in addition to the days pay) see overtime
          legend

THIS CLASSIFICATION IS SUBJECT TO NEW YORK STATE LABOR LAW SECTION 230 ET SEQ.

     (Local 32B/J)


CLASSIFICATION:                    OFFICE CLEANING

OFFICE BUILDING CLASS "A": (Over 280,000 square feet gross area)

         Title                    Wage Rate per Hour

     Porter/Cleaner
                                       $16.92

     SUPPLEMENTAL BENEFIT RATE PER HOUR:   $ 4.00

OFFICE BUILDING CLASS "B": (Between 120,000 and 280,000 square feet
                            gross area)
         Title                    Wage Rate per Hour

     Porter/Cleaner
                                       $16.89

     SUPPLEMENTAL BENEFIT RATE PER HOUR:   $ 4.00


                              continued on following page -

EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002

<u>*OFFICE OF THE COMPTROLLER CITY OF NEW YORK*</u>                6

<u>OFFICE BUILDING CLASS "C":</u> (Less than 120,000 square feet gross area)

| <u>Title</u> | <u>Wage Rate per Hour</u> |
|---|---|
| Porter/Cleaner | $16.85 |

SUPPLEMENTAL BENEFIT RATE PER HOUR:      $ 4.00

NEW EMPLOYEES: EFFECTIVE FEBRUARY 4, 1996, A NEW HIRE EMPLOYED IN THE PORTER/CLEANER TITLE, MAY BE PAID A STARTING RATE OF EIGHTY (80%) OF THE HOURLY RATE PUBLISHED ABOVE.

THIS PROVISION SHALL NOT APPLY TO ANY EXPERIENCED EMPLOYEE ("EXPERIENCED EMPLOYEE") WHO WAS EMPLOYED IN THE NEW YORK CITY BUILDING INDUSTRY ("INDUSTRY") AS OF FEBRUARY 3, 1996. "EXPERIENCED EMPLOYEE" SHALL BE DEFINED AS A PERSON WHO HAS WORKED FOR THIRTY (30) DAYS IN THE "INDUSTRY" WITHIN THE 24 MONTHS IMMEDIATELY PRECEDING HIRING (EXCLUDING EMPLOYMENT AS A VACATION RELIEF).

THESE CLASSIFICATIONS INCLUDE, BUT ARE NOT LIMITED TO, CLEANING AND DISINFECTING OF CURTAINS, RUGS, AND DRAPES, JANITORIAL AND CUSTODIAL SERVICES (OTHER THAN SCHOOL CUSTODIAN), WASHING AND WAXING FLOORS.

ADDITIONAL SUPPLEMENTAL BENEFITS FOR ALL CLASSES OF OFFICE CLEANERS:

PAID HOLIDAYS: (2, 3*, 5, 7# , 8, 9, 10, 11, 16, 17#, 20, plus the employees birthday) see holiday legend
* may be exchanged for Yom Kippur or a personal day
# may be exchanged for Lincoln's birthday and/or Veteran's Day

VACATION:
Less than six months of work  - no vacation.
Six months of work but less than one year of work  - three days.
One year of work but less than five years of work  -  two weeks.
Five years of work but less than 15 years of work  - three weeks.
15 years of work but less than 25 years of work  - four weeks.
25 years or more of work  - five weeks.

SICK LEAVE:
Ten sick days per year. Unused sick leave  paid in the succeeding January, one full days pay for each unused sick day.

Continued on following page -

<u>*EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002*</u>

OFFICE OF THE COMPTROLLER CITY OF NEW YORK                    7

OVERTIME: (2, 5, 7, 12 in addition to the days pay) see overtime
          legend

THIS CLASSIFICATION IS SUBJECT TO NEW YORK STATE LABOR LAW SECTION 230
ET SEQ.

          (LOCAL 32B/J)
CLASSIFICATION:

                    RESIDENTIAL CLEANING

Residential Building Class"A": buildings where the assessed value of
the land and building, based upon the 1935 assessment, divided by the
number of rooms in the building, gives an assessed value of over
$4,000.00 a room.

        Title                        Wage Rate per Hour

     Porter/Cleaner
     Effective April 21, 2002                 $15.99
                                              $16.52

     SUPPLEMENTAL BENEFIT RATE PER HOUR:      $ 3.98

Residential Building Class"B": buildings where the assessed value of
the land and building, based upon the 1935 assessment, divided by the
number of rooms in the building, gives an assessed value of over
$2,000.00 a room and not over $4,000.00 a room.
        Title                        Wage Rate per Hour

     Porter/Cleaner
     Effective April 21, 2002                 $15.93
                                              $16.46

     SUPPLEMENTAL BENEFIT RATE PER HOUR:      $ 3.98

Residential Building Class"C": buildings where the assessed value of
the land and building, based upon the 1935 assessment, divided by the
number of rooms in the building, gives an assessed value of $2,000.00
or less a room.

        Title                        Wage Rate per Hour

     Porter/Cleaner
     Effective April 21, 2002                 $15.88
                                              $16.40

     SUPPLEMENTAL BENEFIT RATE PER HOUR:      $ 3.98

    THIS CLASSIFICATION IS SUBJECT TO NEW YORK STATE LABOR LAW
SECTION 230 ET SEQ. ACCORDINGLY, SUPPLEMENTAL BENEFITS IN ADDITION
TO THE WAGE RATES SET FORTH ABOVE, MUST BE PAID OR PROVIDED AS
FOLLOWS:                          Continued on following page -

EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002

<u>OFFICE OF THE COMPTROLLER CITY OF NEW YORK</u>                    8

THESE CLASSIFICATIONS INCLUDE, BUT ARE NOT LIMITED TO, CLEANING AND DISINFECTING OF CURTAINS, RUGS, AND DRAPES, JANITORIAL AND CUSTODIAL SERVICES (OTHER THAN SCHOOL CUSTODIAN), WASHING AND WAXING FLOORS.

ADDITIONAL SUPPLEMENTAL BENEFITS FOR ALL CLASSES OF RESIDENTIAL CLEANERS:

PAID HOLIDAYS: (2, 3*, 5, 7# , 8, 9, 10, 11, 16, 17#, 20, plus the employees birthday) see holiday legend
* may be exchanged for Yom Kippur or a personal day
# may be exchanged for Lincoln's birthday and/or Veteran's Day

VACATION.
Less than six months of work  - no vacation.
Six months of work but less than one year of work - three days.
One year or work but less than five years of work  - two weeks.
Five years of work but less than 15 years of work  - three weeks.
15 years of work but less than 25 years of work  - four weeks.
25 years or more of work  - five weeks.

SICK LEAVE: After one year of service - 10 days per year.

OVERTIME: (2, 5, 7, 12 in addition to the days pay) see overtime legend

THIS CLASSIFICAITON IS SUBJECT TO NEW YORK STATE LABOR LAW SECTION 230 ET SEQ.

(Local 32B/J)


<u>CLASSIFICATION</u>                    <u>WAGE RATE PER HOUR</u>

EXTERMINATOR                          $14.83

SUPPLEMENTAL BENEFIT RATE PER HOUR:    $ 2.53

THIS CLASSIFICATION IS SUBJECT TO NEW YORK STATE LABOR LAW SECTION 230 ET SEQ.


<u>EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002</u>

_OFFICE OF THE COMPTROLLER CITY OF NEW YORK_                                    9

CLASSIFICATION:

### FOOD SERVICE EMPLOYEES

| TITLE | WAGE RATE PER HOUR | SUPPLEMENTAL BENEFITS PER HOUR |
|---|---|---|
| Cook (Level 1) | $18.56 | $ 4.54 |

(Under supervision performs non-supervisory work of moderate difficulty and responsibility, or supervisory work of ordinary difficulty and responsibility in the preparation, distribution and service of pre-prepared meals, sandwiches, etc.)

| | | |
|---|---|---|
| Assistant Cook (Level 1) | $11.88 | $ 2.91 |
| Cook (Level 2) | $20.35 | $ 4.98 |

(Under general supervision, performs non-supervisory work of a difficult and responsible nature, or supervisory work of moderate difficulty and responsibility in the preparation, distribution, and service of meals using standard procedures and quantity recipes where less than 1200 meals per day are prepared)

| | | |
|---|---|---|
| Assistant Cook (Level 2) | $18.56 | $ 4.54 |
| Cook (Level 3) | $21.57 | $ 5.28 |

(Under general supervision, performs supervisory work of a difficult and responsible nature in the preparation, distribution, and service of meals, using standard procedure and quantity recipes where in excess of 1199 meals per day are prepared)

| | | |
|---|---|---|
| Assistant Cook (Level 3) | $20.28 | $ 4.96 |
| Kitchen Helper | $11.51 | $ 2.82 |
| Cafeteria/Counter Attendant | $11.88 | $ 2.91 |

OVERTIME: (2) see overtime legend

PAID HOLIDAYS: (1) see holiday legend

(Local 372; DC 37)

_EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002_

OFFICE OF THE COMPTROLLER CITY OF NEW YORK                    10

CLASSIFICATION:

                              SECURITY

                                                        Supplemental
                          Wage Rate                     Benefit Rate
       Title              Per Hour                       Per Hour

Security Guard (unarmed)    $  8.52*                     $   .94*
Security Guard (armed)      $ 15.14*                     $  1.82*

       OVERTIME: (2) see overtime legend
       HOLIDAYS: (1) see holiday legend

       *Rates expire June 30, 2002 addendum to follow

CLASSIFICATION:

                         TEMPORARY OFFICE SERVICES

TITLE

Secretary (various)   WAGE RATE PER HOUR: $16.08
                      SUPPLEMENTAL BENEFIT RATE PER HOUR: $ .12

        OVERTIME: (2, 5, 7, 12 if worked performed on holiday)
                  see overtime legend
        PAID HOLIDAYS: (1) see holiday legend

Typist / Word Processing Machine Operator / Data Entry Clerk
                      WAGE RATE PER HOUR: $12.64
                      SUPPLEMENTAL BENEFIT RATE PER HOUR: $ .48

        OVERTIME: (2, 5, 7, 12 if work performed on holiday)
                  see overtime legend
        PAID HOLIDAYS: (1) see holiday legend

Clerk (various)       WAGE RATE PER HOUR: $ 9.05
                      SUPPLEMENTAL BENEFIT RATE PER HOUR: $ .13

        OVERTIME: (2, 5, 7, 12 if work performed on holiday)
                  see overtime legend
        PAID HOLIDAYS: (1) see holiday legend

Stenographer          WAGE RATE PER HOUR: $17.06
                      SUPPLEMENTAL BENEFIT RATE PER HOUR: $ 1.89

        OVERTIME: (2, see overtime legend)

        PAID HOLIDAYS: (1) see holiday legend
                              Continued on following page -

EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002

OFFICE OF THE COMPTROLLER CITY OF NEW YORK                    11

Cashier

WAGE RATE PER HOUR: $10.07
SUPPLEMENTAL BENEFIT RATE PER HOUR: $.99

OVERTIME: (2, see overtime legend)
PAID HOLIDAYS: (1) see holiday legend

Messenger

WAGE RATE PER HOUR: $ 9.47
SUPPLEMENTAL BENEFIT RATE PER HOUR: $ .50
OVERTIME: (2, 5, 7, 12 if work performed on holiday)
see overtime legend
PAID HOLIDAYS: (1) see holiday legend

CLASSIFICATION:

WINDOW CLEANER

| TITLE | WAGE RATE PER HOUR |
|---|---|
| Window Cleaner | $19.93 |
| Power Operated Scaffolds, Manual Scaffolds, and Boatswain Chairs | $21.55 |

SUPPLEMENTAL BENEFIT RATE PER HOUR:    $ 4.77

PAID HOLIDAYS: (2, 3, 5, 7, 8, 9, 10, 11, 16, 17, 20, plus one personal day) see holiday legend

VACATION:

After seven months but less than one year of service - one week.
One year but less than five years of service- two weeks.
Five years of service but less than 15 years of service- three weeks.
15 years of service but less than 25 years of service- four weeks.
21 years - 21 days.
22 years - 22 days.
23 years - 23 days.
24 years - 24 days.
25 years or more of service - five weeks.
Plus one day per year for medical visit

SICK LEAVE:

Ten days after one year worked. Unused sick days to be paid in cash. An employee who is entitled to and receive a payment of 10 days of unused sick days shall also receive a hundred dollar bonus.

OVERTIME: (4, 8, 12 plus the days pay) see overtime legend

(Local No. 2)

This agreement expires February 28, 2002 - addendum to follow

EFFECTIVE PERIOD: JANUARY 1, 2002 THROUGH DECEMBER 31, 2002

# NYCHA
## SECURITY GUARD SIGN-IN REGISTER

NAME OF FIRM _____

CONTRACT NO. _____

POST ADDRESS : _____

DATE FROM _____    DATE TO _____

| | DATE | TIME IN | | PRINT NAME | TIME OUT | | SIGNATURE |
|---|---|---|---|---|---|---|---|
| GUARD | | 12AM | | | 8AM | | |
| SUPV. | | | | | | | |
| GUARD | | 8AM | | | 4PM | | |
| SUPV. | | | | | | | |
| GUARD | | 4PM | | | 12AM | | |
| SUPV. | | | | | | | |
| GUARD | | 12AM | | | 8AM | | |
| SUPV. | | | | | | | |
| GUARD | | 8AM | | | 4PM | | |
| SUPV. | | | | | | | |
| GUARD | | 4PM | | | 12AM | | |
| SUPV. | | | | | | | |

I CERTIFY that I and or my duly authorized representatives have checked and verified guard service for the period _____, 20_____, to _____, inclusive; that to the best of my knowledge and belief it is a true and correct statement of services performed; that such service has been verified by me and or my duly authorized representative(s), and that it has been authenticated or approved by the duly authorized agent of

SIGNED:_____    DATE: _____
        **Firm's Corporate Officer**

# EXHIBIT 2

**Exhibit 2**

List of NYCHA field office locations

CORSTAT SECURITY
SITE LISTING

## LOBBY MONITORING SITES

| Locations | Post Address | Hours | Number of Guards per shift |
|---|---|---|---|
| Meltzer- Hernandez | 94 East 1st St. NY 10002 | 9pm-5am | 1 |
| Morris Park Senior Citizen | 17 east 124th St. NY 10035 | 10pm-6am | 1 |
| UPACA 5 | 1980 Lexington Av. NY 10035 | 10pm-6am | 1 |
| UPACA 6 | 1940 Lexington Av. NY 10035 | 5pm-1am | 1 |
| Chelsea Addition | 436 West 27th Dr. NY 10001 | 6pm-2am | 1 |
| Robbins Plaza | 341 E. 70th St. NY 10028 | 3pm-11pm | 1 |
| Baruch Addition | 72 Columbia St. NY 10002 | 6pm-2am | 1 |
| LaGuardia Addition | 282 Cherry St. NY 10002 | 4pm-12am | 1 |
| Bethune | 1945 Amsterdam Ave. NY 10032 | 9pm-5am | 1 |
| Sandra Thomas Apts. | 102 W. 91th St. NY 10024 | 10pm-6am | 1 |
| Thurgood Marshall | 1970 Amsterdam Ave. NY 10032 | 9pm-5am | 1 |
| Ft. Washington Rehab | 99 Ft Washington Ave. NY 10032 | 4pm-12am | 1 |
| P.S. 139 Conversion | 120 West 140th Street NY 10030 | 4pm-12am | 1 |
| Harborview | 530 West 55th Street NY 10019 | 8pm-4am | 1 |
| L.E.S. I (INFILL) | 175 Eldridge Street NY 10002 | 9pm-5am | 1 |
| Middletown Plaza | 3033 Middletown Rd. Bronx 10469 | 6pm-2am | 1 |
| Bronx River | 1350 Manor Ave Bronx 10472 | 8pm-4am | 1 |
| | 1630 E. 174 St. Bronx 10472 | 8pm-4am | 1 |
| West Tremont | 228 W. Tremont Ave. Bronx 10453 | 10pm-6am | 1 |
| Twin Park East | 2070 Clinton Ave. Bronx 10457 | 8pm-4am | 1 |
| Betances I | 551 E. 143rd St. Bronx 10455 | 4pm-12am | 1 |
| Morissania Air Right | 3135 Park ave. Bronx 10451 | 9pm-5am | 1 |
| Boston Road | 2440 Boston Rd. Bronx 10467 | 8pm-4pm | 1 |
| Glebe Ave | 2125 Glebe Ave Bronx 10462 | 10pm-6am | 1 |
| 1020 College Ave | 1020 College Ave. Bronx 10451 | 10pm-6am | 1 |
| Union Ave. East 163 Street | 950 Union Ave. Bronx 10459 | 8pm-4am | 1 |
| Claremont Pkwy-Fran | 1325 franklyn Ave, Bronx 10459 | 8pm-4am | 1 |
| Davidson | 1150 Union Ave. Bronx 10459 | 8pm-4am | 1 |
| Randall Balcom | 2700 Randall Ave. Bronx 10465 | 9pm-5am | 1 |
| | 2705 Schley Ave. Bronx 10465 | 9pm-5am | 1 |
| | 650 Buttrick Ave. Bronx 10465 | 9pm-5am | 1 |
| Mitchel | 188-190 Lincoln Ave. Bronx 10454 | 7pm-3am | 1 |
| E. 152 St-Courtlandt | 372 E. 152nd St. Bronx 10451 | 8pm-4am | 1 |

## SECURITY GUARD SERVICES SITES

| | | | |
|---|---|---|---|
| Markham Gardens | Various | Monday-Friday 4pm-8am Weekends & Holidays 2pm-8am | 2 |

# EXHIBIT 3

**Exhibit 3**

Billing Rates from HPD dated June 21, 2004

Feb-22-05 11:39A

P.02



**DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT**
SHAUN DONOVAN, Commissioner

**Office of Administration**
103 GOLD STREET, NEW YORK, N.Y. 10038

BERNARD SCHWARZ, Deputy Commissioner

June 21, 2004

Copstat Security, Inc.
1800 East Tremont Avenue
Bronx, New York 10460
ATTN: Mr. Thomas Murray

**Re:** Unarmed Security Guard Services
Proposed Billing Rates

Dear Mr. Murray:

The New York City Office of the Comptroller has established new hourly wage ($9.10) and supplemental benefit ($1.50) rates for unarmed security guards for the period of July 1, 2004 through June 30, 2005 (schedule enclosed). The following represents the proposed billing rates (regular and overtime) for the Level I and II Security Guards effective July 1, 2004.

| | S/O (Level I) | S/O Level I (Overtime) | S/O Level II | S/O Level II (Overtime) |
|---|---|---|---|---|
| Wage | 9.10 | 13.65 | 10.23 | 15.35 |
| Supplemental Benefits | 1.50 | 1.50 | 1.50 | 1.50 |
| Profit & Overhead | 1.70 | 1.70 | 1.70 | 1.70 |
| FICA | .80 | 1.14 | .88 | 1.26 |
| SUI | .07 | .00 | .08 | .00 |
| FUTA | .08 | .00 | .09 | .00 |
| Disability | .03 | .05 | .03 | .05 |
| Worker's Comp. | .31 | .66 | .34 | .49 |
| General Liability | .33 | .50 | .33 | .50 |
| Health Insurance | n/a | n/a | n/a | n/a |
| Vacation/Sick Days | n/a | n/a | n/a | n/a |
| Holidays | n/a | n/a | n/a | n/a |
| Approved Hourly Billing Rate | $13.92 | $19.20 | $15.18 | $20.85 |

Accordingly, please review the proposed billing rates and make the necessary arrangements for Copstat Security, Inc. to bill HPD at the approved hourly rates effective July 1, 2004. If you have any questions or require additional information, please contact me directly at (212) 863-8032.

Very truly yours,

Mario Ferrigno
Security Director



nyc.gov/hpd

FEB 22 2005 11:24

# EXHIBIT A

## AGREEMENT # 4020633
## BY AND BETWEEN
## NEW YORK CITY HOUSING AUTHORITY
## AND
## COPSTAT SECURITY L.L.C.

This agreement (the "**Agreement**"), dated as of the ___ 28 ___ day of February, 2005, is made by and between the New York City Housing Authority ("**NYCHA**" or the "**Authority**"), a public benefit corporation organized and existing under the laws of the State of New York, having its principal office at 250 Broadway, New York, New York 10007, and Copstat Security L.L.C.. (the "**Contractor**"), a privately owned corporation organized and existing under the laws of the State of New York.  The Contractor has its office at 1860 East Tremont Avenue, Bronx, New York 10460.

WHEREAS, NYCHA desires to retain the Contractor to provide security services; and

WHEREAS, the Contractor has entered into an agreement with the New York City Department of Housing Preservation and Development ("**HPD**") to provide security services (the "**City Contract**"); and

WHEREAS, NYCHA is authorized by its contract procedures to use the City Contract as a basis for contracting with the Contractor for the work and services set forth herein; and

WHEREAS, the Contractor represents that it possesses the necessary knowledge, skill, resources, personnel and experience to perform the Services; and

WHEREAS, NYCHA desires to retain the Contractor on the terms and conditions set forth in this Agreement, and the Contractor agrees to accept such engagement in accordance with the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, NYCHA and the Contractor agree as follows:

## ARTICLE 1
## ENTIRE AGREEMENT

1.1    Each party acknowledges that this Agreement and the documents incorporated by reference into this Agreement constitute the entire agreement between the parties, which supersedes and merges all prior proposals, understandings, and all other agreements, oral or written, between the parties relating to this Agreement, and any modification, amendment, or supplement to this Agreement is not valid or enforceable against either party unless it is in writing and signed by an authorized representative of each party.

1.2    This Agreement incorporates the following Exhibits as though each is set forth in full herein:

  1.2.1 The HPD City Contract with Copstat for Unarmed Security Guard Services, Contract No. 2003-000618, attached hereto as **Exhibit 1**;

  1.2.2 The list of NYCHA field office locations attached as **Exhibit 2**; and

  1.2.3 The Billing Rates from HPD dated June 21, 2004, attached hereto as **Exhibit 3**.

1.3    In the event of any conflict in language between this Agreement and Exhibit 2, the terms contained in this Agreement shall prevail.

1.4    For the purposes of this Agreement, the following references in **Exhibit 1** are hereby deemed changed, wherever they appear, to read as provided herein:

  1.4.1 Throughout the City Contract, "NYCHA" or "the Authority" shall be substituted for "City," "HPD," and "Agency Chief Contracting Officer" unless the context otherwise requires.

  1.4.2 Throughout the City Contract, "Facility Security Unit" shall be substituted for "Disciplinary Unit," unless the context otherwise requires.

  1.4.3 Throughout the City Contract all references to the "Procurement Policy Board" or "PPB" are hereby deleted.

1.5    The following provisions in the City Contract attached as **Exhibit 1** are hereby modified as follows:

  1.5.1 Article 10, entitled "Insurance," shall be deleted in its entirety and replaced with Article 6 of this Agreement.

  1.5.2 Article 5, entitled "Payment," shall be modified and replaced with Article 5 of this Agreement.

  1.5.3 Article 7, entitled "Prompt Payment," shall be deleted in its entirety and replaced with Article 5 of this Agreement.

  1.5.4 Article 13, entitled "Payment Guarantee," shall be deleted in its entirety.

  1.5.5 Article 16, entitled "Disputes," and Article 22, entitled "Changes," shall be deleted in their entirety and replaced with Article 10 of this Agreement.

    1.5.6   Articles 19.1 and 19.2 are deleted in their entirety.

    1.5.7   Article 21 "Conditions Precedent" is deleted in its entirety.

    1.5.8   Appendix B, entitled "Sites Requiring Two Way Radios" is deleted in its entirety.

    1.5.9   Article 35, of the Information to Bidders, entitled "Locally Based Enterprise Requirements (LBE)" shall be deleted in its entirety and replaced with Article 16 of this Agreement.

    1.5.10  Articles 37, 38 and 39 of the Information to Bidders are deleted in their entirety.

1.6.    For the purposes of this Agreement, the following references in <u>Exhibit A</u>, entitled "Scope of Work," to the City Contract are hereby deemed changed, wherever they appear, to read as provided herein:

    1.6.1   Article 3. b) 3. and Article 3. b) 4. are deleted in their entirety.

    1.6.2   Article 3, subsection entitled "Work Hours" is modified to reflect the following holidays under the Agreement: "NYCHA-observed holidays are New Year's Day, Martin Luther King, Jr., Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Election Day, Veterans Day, Thanksgiving Day and Christmas Day."

    1.6.3   Article 4(b) is deleted and replaced with the following: "All newly appointed guards will receive training at one of NYCHA's facilities, at NYCHA's discretion."

    1.6.4   Article 5(d) is deleted and replaced with the following: "make a report by calling NYCHA's security unit at 212-306-8800 at any time, 24 hours per day, 7 days per week, as soon after the happening of such an event, but no later than the first hour of the first business day after the happening of such event or occurrence."

    1.6.5   Article 12 is deleted in its entirety.

ARTICLE 2
TERM OF AGREEMENT

2.1    Article 3 of the City Contract is hereby deleted in its entirety and replaced with the following: "The term of this Agreement will be for a period of two years,

3

commencing on March 1, 2005, and ending on February 28, 2007 unless earlier terminated by NYCHA at its sole option."

## ARTICLE 3
## RENEWALS

3.1    NYCHA shall have the sole option of renewing this Agreement for two additional one-year periods (the "**Renewal Terms**"). NYCHA may exercise its option to renew the term by giving written notice to the Contractor of its exercise of such option no later than 10 days prior to the commencement of each Renewal Term. All of the terms and conditions of this Agreement shall apply to such Renewal Term.

## ARTICLE 4
## SCOPE OF SERVICES

4.1    The Scope of Services shall be performed in accordance with Exhibit A to the City Contract except as modified herein.

## ARTICLE 5
## COMPENSATION AND PAYMENT

5.1    Article 5, entitled "Payment" and Article 6, entitled "Payment Procedure" of the City Contract are modified as follows:

    5.1.1    Article 5.1 is deleted and replaced with the following language: "NYCHA will compensate the Contractor by payment of a fee not to exceed $13.92 per hour for a Level I security guard and a fee not to exceed $15.18 per hour for a Level II security guard for each hour for which the Contractor provides a security guard under this Agreement (the "**Hourly Rate**"). If the prevailing wage is increased during the contractual period, the Contractor will pass only the increase in wage rate increases to NYCHA without additional margins.."

    5.1.2    The first and sixth paragraphs of Article 6.1 are deleted and replaced with the following:

    Billing shall be done on a monthly basis. Invoices shall be provided at the beginning of each month for Services rendered in the preceding month. Each invoice must be accompanied by any and all timekeeping records as NYCHA may require, including, without limitation, certified weekly payrolls. NYCHA reserves the right to require the Contractor to verify time and attendance by use of time sheets submitted as NYCHA may

4

require. All time records shall be subject to audit and verification by NYCHA. The Contractor must submit one original counterpart of its invoice(s) to each of the following NYCHA Departments:

NEW YORK CITY HOUSING AUTHORITY
90 Church Street - 9th Floor
New York, New York 10007

Attention:    Mr. Sean Ryan, Assistant Director for Security
              General Services Department

and to:

NEW YORK CITY HOUSING AUTHORITY
Accounts Payable Division
P.O. Box 3656- Church Street Station
New York, New York 10007

5.2    The Facility Safety Coordinator will review and approve all invoices and forward the approved invoices to the appropriate Authority personnel for payment. NYCHA shall endeavor to pay all invoices within 30 days after approval by the appropriate NYCHA personnel, but NYCHA's failure to pay within 30 days will not be a breach of this Agreement, and will not entitle the Contractor to interest or penalties.

5.3    NYCHA's maximum liability under this Agreement for all payments will not exceed $3,137,583.24 (the "**Not-To-Exceed Amount**") for the two- year term of this Agreement.

## ARTICLE 6
## INSURANCE REQUIREMENTS

6.1    It is understood that all personnel assigned to perform work under this Agreement by the Contractor are deemed to be employees or subcontractors of the Contractor, and not of NYCHA, for any and all purposes. The Contractor must maintain Workers' Compensation Insurance for its employees working on NYCHA's premises.

6.2    The Contractor must maintain during the term of this Agreement, and until the date of final payment, insurance required by law or this Agreement, consisting of:

6.2.1    Workers' Compensation Insurance and Employer's Liability Insurance, including occupational disease for all employees as per statutory limits, and Employer's Liability Insurance: unlimited in the State of New York or

5

$1,000,000 for other states and $1,000,000 for those specific categories not covered by the New York State Workers' Compensation Law;

6.2.2    General Liability Insurance, which shall include Contractual Liability Insurance and Personal Injury Insurance, as well as Bodily Injury Insurance and Property Damage Insurance, in amounts of at least $1,000,000 per occurrence, and $2,000,000 in the aggregate, for a combined single limit for bodily injury and for property damage;

6.2.3    Automobile Liability Insurance on owned, non-owned and hired motor vehicles used in connection with the Services for a combined single limit for bodily injury and property damage of not less than $1,000,000 per occurrence; and

6.3    The Contractor shall be responsible for obtaining and maintaining, at its sole cost and expense, and for causing its Subcontractors and subcontractors to obtain and maintain, at their sole cost and expense, insurance covering their respective personal property while upon NYCHA premises or in NYCHA vehicles during the term of the Agreement.  Except for the intentional wrongful acts of NYCHA, NYCHA shall have no responsibility for loss of, damage to, or theft of the Contractor's or its Subcontractors' or subcontractors' personal property.

6.4    All policies of insurance must be written on an occurrence basis, except for Workers' Compensation Insurance, including Employer's Liability Insurance, and must be issued by companies licensed and/or admitted, or authorized to do business, in the State of New York, having a rating of at least "A-" (Excellent) and a financial rating of "X," as rated by the most recent Best's Insurance Rating Guide.  The Contractor's General Liability Insurance policy must be endorsed:

(a)    to name NYCHA as an additional insured;
(b)    to allow severability of interests and rights of cross-claim; and
(c)    to provide that the policy must not be canceled, or its coverage reduced, without at least 30 days' prior written notice to NYCHA.

6.5    Prior to its employees', Subcontractors' or subcontractors' starting to perform the Services, and from time to time thereafter on demand from NYCHA, the Contractor must provide NYCHA with satisfactory certificates of insurance, and/or certified copies of the insurance policies, evidencing that such insurance is in effect.  Such certificates, and/or certified copies of the insurance policies, must be sent to:

New York City Housing Authority
90 Church Street, 6th Floor
New York, NY 10011
Attn:  Risk Finance

6

6.6    Insurance coverage in the amounts provided for herein shall not limit the Contractor's liability and shall not relieve the Contractor from any liability that might exceed such amounts, nor shall NYCHA be precluded by such insurance coverage from taking other actions that may be available to NYCHA under any other provisions of the Agreement or otherwise.

ARTICLE 7
PAYMENT AND PERFORMANCE BOND

7.1    Article 12 of the City Contract is deleted.

ARTICLE 8
INDEMNIFICATION

8.1    In furtherance of and not in limitation to Article 14 of the City Agreement, the Contractor agrees to the following:

8.1.1    The Contractor agrees to defend, indemnify and hold harmless NYCHA, its members, officers, employees, agents and representatives, and any other party or entity acting on behalf of NYCHA, from and against any and all liabilities, claims, losses, damages, costs, fees and expenses, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, those incurred by NYCHA in enforcing this indemnification), and all reasonable sums charged to associated litigation, relating to (a) any alleged or actual personal injury, bodily injury (including death), or property damage (or any consequential damages related to such personal injury, bodily injury or property damage), arising out of or resulting from any work or Services provided by the Contractor or its employees, agents, Subcontractors or subcontractors in conjunction with the Agreement, or arising out of any other act, error or omission of the Contractor or its employees, agents, Subcontractors or subcontractors, or (b) any claim for loss, damage to, or theft of any personal property of, or in the care of, the Contractor, its Subcontractors or subcontractors while such personal property is at or upon NYCHA premises or in NYCHA vehicles, unless resulting from the intentional act of NYCHA.  The Contractor agrees that its obligations under this indemnification provision shall survive the expiration or earlier termination of the Agreement.

8.1.2    The Contractor agrees to defend, indemnify and hold harmless NYCHA, its members, officers, employees, agents and representatives, and any other party or entity acting on behalf of NYCHA, from and against any and all liabilities, claims, losses, damages, costs, fees and expenses, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, those incurred by NYCHA in enforcing this

7

indemnification), and all reasonable sums charged to associated litigation, which may be incurred in any action for unfair competition, for infringement of any United States Letters Patent, or any trademark or service mark, or of any copyright or for theft of any trade secret with respect to the Agreement. The Contractor agrees that its obligations under this indemnification provision shall survive the expiration or earlier termination of the Agreement.

8.1.3  The Contractor agrees to indemnify and hold NYCHA harmless from and against any and all damages, costs, fees and expenses, including, without limitation, reasonable attorneys' fees and expenses incurred by NYCHA in enforcing this indemnification, and all reasonable sums charged to associated litigation, which may be incurred by NYCHA as a result of, or by way of mitigating NYCHA's damages resulting from, any failure by the Contractor to fulfill its obligations under the Agreement. The Contractor agrees that its obligations under this indemnification provision shall survive the expiration or earlier termination of the Agreement.

<u>ARTICLE 9</u>
<u>DEFENSE AND SETTLEMENT OF MATTERS TO</u>
<u>WHICH INDEMNITY PROVISIONS APPLY</u>

9.1     NYCHA will notify the Contractor promptly of any action or claim with respect to which the indemnity provisions of the prior section may apply. The Contractor will have the exclusive right to control and conduct the defense and settlement of all such actions or claims; provided, however, (a) if there is a reasonable probability that any action or claim for which the Contractor is to provide indemnity to NYCHA hereunder may adversely affect NYCHA or any of its members, officers, employees or agents (other than as a result of money damages or other money payments), NYCHA then will have the exclusive right to defend, compromise or settle such action or claim, and (b) the Contractor will not, without NYCHA's prior written consent, settle or compromise or consent to the entry of any judgment in connection with any such action or claim, if such settlement, compromise or judgment does not include as an unconditional term thereof an unconditional release of NYCHA by the claimant or the plaintiff, as the case may be, from all liability in respect of such action or claim.

ARTICLE 10
DISPUTES

10.1    In the event the Contractor has a dispute with NYCHA under this Agreement, the Contractor will, within 30 calendar days after such dispute shall have arisen, notify NYCHA in writing of the Contractor's contention and submit its claim, specifying the nature of the claim and the sum claimed. If the dispute arises prior to the performance of the related duties, the written notice shall be submitted prior to the commencement of such duties. In any event, the Contractor will proceed with its duties hereunder in compliance with the written instructions of NYCHA, and such compliance will not be deemed to be a waiver of the Contractor's right to pursue its claim, provided it has given notification in writing as provided above.

ARTICLE 11
CONFIDENTIALITY

11.1    The parties anticipate that the Contractor may acquire access to information and data about the operations, the staff and the residents of NYCHA (the "**Confidential Information**"). To the extent that the Contractor or any subcontractor of the Contractor obtains any Confidential Information, the Contractor agrees (a) that it will protect and preserve the confidentiality of such Confidential Information with the same care and diligence with which it protects and preserves its own most secret business information; (b) that it will use such Confidential Information only in the performance of its obligations arising under this Agreement; and (c) that it will make no disclosure of such Confidential Information other than to an employee of NYCHA or to an employee or subcontractor of the Contractor in the course of such Contractor employee's or subcontractor's provision of Services under this Agreement. In addition, the Contractor agrees to obtain a written commitment from each employee and each subcontractor which it may use in its performance of this Agreement to be bound by the terms of this section, and the Contractor shall make available the original copy of any such commitment upon written request from NYCHA from time to time. The Contractor agrees that this obligation of confidentiality shall survive the termination or expiration, as the case may be, of this Agreement.

ARTICLE 12
RIGHT TO AUDIT

12.1    In furtherance of and not in limitation to, the provisions contained in Article 19.4 of the City Contract, the Contractor agrees as follows:

12.1.1 NYCHA, and any agency providing funds to NYCHA, will have the right to perform any audit of the Contractor's finances and records related to its performance under this Agreement, including, without limitation, the financial arrangement with anyone the Contractor may delegate to discharge any part of its obligations under this Agreement.

12.1.2  The Contractor must provide, and must cause each subcontractor of the Contractor to provide, access by NYCHA, any agency providing funds to NYCHA, or any of their duly authorized representatives to any books, documents, papers and records of the Contractor and such subcontractors which are directly pertinent to this Agreement for the purpose of making audit, examination, excerpts and transcriptions.

12.1.3  In order to permit the making of audit, examination, excerpts and transcriptions by NYCHA, any agency providing funds to NYCHA, or any of their duly authorized representatives, the Contractor must maintain all records and supporting materials for the work performed under this Agreement for a period of three years following either (a) the end of the term of this Agreement, or (b) such time as NYCHA makes final payments and all other pending matters related to this Agreement are closed, whichever is longer.

## ARTICLE 13
## COMPLIANCE WITH ENVIRONMENTAL LAWS AND ENERGY STANDARDS

13.1    The Contractor agrees to comply with:  (a) all applicable standards, orders, or requirements issued under Section 306 of the Clean Air Act (42 U.S.C. 7401 et seq.), Section 508 of the Clean Water Act (33 U.S.C. 1251 et seq.), Executive Order 11738, and Environmental Protection Agency regulations (40 CFR Part 15); and (b) mandatory standards and policies relating to energy efficiency contained in the New York State energy conservation plan issued in compliance with the Energy Policy and Conservation Act (Pub. L. 94-163).

## ARTICLE 14
## NOTICES

14.1    Any notice or other communication, including a change of address or of the person to be notified, given under this Agreement to any party must be in writing and must be sent by Certified or Registered Mail, Return Receipt Requested, to the attention of the parties at the respective addresses set forth below:

To NYCHA:              NEW YORK CITY HOUSING AUTHORITY
                       90 Church Street, 9th Floor
                       New York, New York  10007

                       Attention:     Mr. Sean Ryan, Assistant Director for Security
                                      General Services Department

10

with a copy to:

Deputy General Counsel for Corporate Matters
New York City Housing Authority
Law Department
250 Broadway, 8th Floor
New York, New York 10007

To the Contractor:          COPSTAT SECURITY INC.
                            1860 East Tremont Avenue
                            Bronx, New York  10460

                Attention:     Mr. Bernard Rosner, Director
                               of Sales and Contracts

## ARTICLE 15
### SECTION 3 OF THE HOUSING AND URBAN DEVELOPMENT ACT OF 1968

15.1    The Services to be performed under the Agreement are subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u ("**Section 3**"), if (a) the total sum payable by NYCHA under the Agreement is $100,000 or more, or (b) the nature of Services to be provided is such that hiring residents would be logical and feasible.  The purpose of Section 3 is to ensure that employment and other economic opportunities generated by HUD assistance or HUD-assisted projects covered by Section 3 shall, to the greatest extent feasible, be directed to low-income and very low-income persons, particularly persons who are recipients of HUD assistance for housing.

15.2    The Contractor agrees to comply with the HUD regulations in 24 Code of Federal Regulations ("**CFR**") part 135 that implement Section 3.  The Contractor hereby certifies that it is under no contractual or other impediment that would prevent it from complying with the regulations in 24 CFR part 135.

15.3    The Contractor agrees to send to each labor organization or representative of workers with which the Contractor has a collective bargaining agreement, if any, a notice advising the labor organization or workers' representative of the Contractor's commitments under these Section 3 provisions, and the Contractor agrees to post copies of the notice in conspicuous places at the work site where both employees and applicants for training and employment positions can see the notice.  The notice shall describe the Section 3 preference (as set forth in 24 CFR part 135) and shall set forth the minimum number and job titles subject to hire, the availability of apprenticeship and training positions, the qualifications for each, the

name and location of the person(s) taking applications for each of the positions, and the anticipated date the work shall begin.

15.4    The Contractor agrees to include these Section 3 provisions [i.e., provisions equivalent to those set forth in paragraphs (1) through (6) hereof] in every subcontract subject to compliance with the regulations in 24 CFR part 135, and the Contractor agrees to take appropriate action, as provided in an equivalent provision of the subcontract or in this Section, upon a finding that the Subcontractor or subcontractor is in violation of the regulations in 24 CFR part 135. The Contractor will not subcontract with any Subcontractor or subcontractor where the Contractor has knowledge that the Subcontractor or subcontractor has been found in violation of the regulations in 24 CFR part 135.

15.5    The Contractor hereby certifies that any vacant employment positions, including training positions, that were filled (a) after the Contractor was selected but before the Agreement is executed, and (b) with persons other than those to whom the regulations of 24 CFR part 135 require employment opportunities to be directed, were not filled to circumvent the Contractor's obligations under 24 CFR part 135.

15.6    Noncompliance with HUD's regulations in 24 CFR part 135 may result in sanctions, termination of the Agreement for default, and/or a finding of non-responsibility with respect to (or debarment or suspension from) future NYCHA contracts or other HUD-assisted contracts.

## ARTICLE 16
## SEVERING CERTAIN AGREEMENT PROVISIONS

16.1    If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby and shall remain in full force and effect.

## ARTICLE 17
## HEADINGS

17.1    The descriptive headings used in this Agreement are for purposes of convenience only and do not constitute a part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

NEW YORK CITY HOUSING AUTHORITY

By: _____
Robert Podmore
Deputy General Manager

COPSTAT SECURITY INC.

By: _____
Mr. Bernard Rosner, Director
of Sales and Contracts

28th of February 2005

Cassandra Nicks

CASSANDRA NICKS
Commissioner of Deeds
City of New York - No. -2-9077
Certificate Filed in Kings County
Commission Expires Oct. 1, 2006

13

# EXHIBIT B



**NEW YORK CITY HOUSING AUTHORITY**
**LAW DEPARTMENT**
250 BROADWAY • NEW YORK, NY 10007

http:/nyc.gov/nycha

**TINO HERNANDEZ**
CHAIRMAN
**EARL ANDREWS, JR.**
VICE-CHAIRMAN
**MARGARITA LOPEZ**
MEMBER
**VILMA HUERTAS**
SECRETARY
**DOUGLAS APPLE**
GENERAL MANAGER

**Ricardo Elias Morales**
General Counsel

WRITER'S DIRECT LINE
212-776-5104

June 4, 2007

**Via Certified Mail No.** 7003 2260 0007 5191 9361

Mr. James Wood
President
Andrews International, Inc.
1860 Tremont Avenue
Bronx, New York 10460

Re:    Amendment to Agreement No. 4020633 by and between New York City Housing
Authority and Copstat Security L.L.C.

Dear Mr. Wood:

Enclosed for your records is a fully-executed original of the above-referenced Amendment . If
you have any questions, please do not hesitate to call me at (212) 776-5104.

Sincerely,

Stacie Nelson

Stacie Nelson
Chief of Contracts Division

c:    Patrick O'Hagan (w/original)

John de Clef Piñeiro, Deputy General Counsel for Corporate Matters Tel. 1

**AMENDMENT TO**
**AGREEMENT NO. 4020633**
**BY AND BETWEEN**
**NEW YORK CITY HOUSING AUTHORITY**
**AND**
**COPSTAT SECURITY L.L.C.**

This amendment (the **"Amendment"**), dated as of February 28, 2007, modifies Agreement No. 4020633 dated as of February 28, 2005 (the **"Agreement"**), between the New York City Housing Authority (**"NYCHA"**), a public benefit corporation organized under the laws of the State of New York, having its principal office at 250 Broadway, New York, New York 10007, and Copstat Security L.L.C., which recently merged with Andrews International, Inc. and is now doing business under the name of Andrews International, Inc. (the **"Contractor"** or **"Andrews"**), a corporation organized and existing under the laws of the State of Delaware, having its principal office at 1860 Tremont Avenue, Bronx, New York 10460.

Capitalized terms used in this Amendment have the meanings set forth in the Agreement, unless otherwise specified in this Amendment.

WHEREAS, pursuant to the Agreement with NYCHA, the Contractor is providing security services at various senior developments (the **"Services"**); and

WHEREAS, the Agreement Term expires on February 28, 2007; and

WHEREAS, NYCHA desires, and the Contractor is willing to continue to perform the Services for an additional period of three months; and

WHEREAS, NYCHA and the Contractor desire to increase the total amount of compensation payable to the Contractor under the Agreement;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, NYCHA and the Contractor hereby agree as follows:

1.      The Contractor, Andrews, agrees that effective as of January 1, 2007, it has assumed the performance of the Services under the Agreement and agrees, represents, and covenants that it will continue to perform the Services as set forth in the Agreement, as amended herein.

2.      Section 2.1 of the Agreement is hereby amended to read as follows:

2.1   Article 3 of the City Contract is hereby deleted in its entirety and replaced with the following: "The term of the Agreement will commence on March 1, 2005 and shall continue through June 22, 2007 (the **"Term"**), unless earlier terminated by NYCHA at its sole option."

1

3.    Section 5.3 of the Agreement is hereby amended to read as follows:

    5.3    NYCHA's maximum liability under this Agreement for all payments will not exceed $4,267,920.24 (the "**Not-To-Exceed Amount**") for the Term of this Agreement.

4.    Except as specifically modified herein, all other terms and conditions of the Agreement remain unchanged and in full force and effect.

    IN WITNESS WHEREOF, the undersigned have executed this Amendment to the Agreement as of the date first above written.

ANDREWS INTERNATIONAL, INC.

By: _____

Name: _JAMES WOOD_____

Title: _PRESIDENT_____

NEW YORK CITY HOUSING AUTHORITY

By: _____

Natalie Rivers
Deputy General Manager

2