UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-------------------------------------------------------------------X
ANDREWS INTERNATIONAL, INC.                    ECF Case

                        Plaintiff,           Civil Action No. 08-cv-1580 (HB)

-against-

                                                                Memorandum of Law
NEW YORK CITY HOUSING AUTHORITY,               In Support of Motion
                                                                 For Summary Judgment Filed
                      Defendant.           By Andrews International, Inc.
-------------------------------------------------------------------X

Andrews International, Inc. ("Andrews"), pursuant to Local Rule 7.1(a), submits this memorandum of law in support of its motion for summary judgment.

## I.     PRELIMINARY STATEMENT

Andrews commenced this breach of contract action against the New York City Housing Authority ("NYCHA") to recover $112,196.58 improperly withheld by NYCHA relating to security services performed by Andrews. NYCHA and Copstat Security, Inc. ("Copstat"), Andrews's predecessor-in-interest,[1] executed agreement number 4020633 (the "NYCHA Contract") whereby Copstat agreed to provide security services at certain "senior developments." NYCHA alleges Andrews failed to perform the supervisory inspections required by the NYCHA Contract, and assessed liquidated damages against Andrews by withholding payments for services rendered.

The NYCHA Contract, which was drafted by NYCHA, required once-per-shift supervisory inspections of all guards working "day" shifts at NYCHA "office sites." Andrews did not breach any supervisory obligation under the NYCHA Contract because Andrews did not provide (i) security services for "day" shifts under the NYCHA Contract, or (ii) security services

---

[1] Copstat merged into Andrews in March 2006. (SMF ¶ 1.)

at any "office sites" under the NYCHA Contract. Although Andrews contends the provision relating to supervisory inspections is plain and unambiguous, to the extent the Court finds the provision ambiguous, it must be construed against NYCHA and in favor of Andrews. As more fully explained below, Andrews is entitled to judgment as a matter of law because Andrews did not breach any supervisory obligation under the NYCHA Contract and, therefore, NYCHA's assessment of liquidated damages was improper.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with Local Rule 56.1, a separate statement of undisputed material facts has been filed with the motion for summary judgment. The statement of undisputed material facts is cited herein as (SMF ¶ __) and is incorporated by reference into this memorandum.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 883-84 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the absence of a genuine issue concerning any material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has satisfied its burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. If the non-moving party fails to present evidence "sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted. *See Celotex*, 477 U.S. at 322.

**B.     Choice of Law**

A federal district court sitting in diversity must apply the choice of law rules of the State in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "It is the well-settled policy of the courts of this State to enforce contractual provisions for choice of law ...." *Boss v. American Exp. Fin. Advisors, Inc.*, 791 N.Y.S.2d 12, 14 (N.Y. App. Div. 2005); *see also Mena Films, Inc. v. Painted Zebra Prods., Inc.*, 831 N.Y.S.2d 348, *1 (N.Y. Sup. Ct. 2006). New York law applies to this case because article 23 of the HPD Contract, which is incorporated by reference into the NYCHA Contract, provides that the law governing the "validity, construction and performance of this Agreement and the transactions to which it relates will be governed by the laws of the State of New York." (SMF ¶¶ 7, 12; *see also* HPD Contract ¶ 23.1 at p. 56, attached as Exhibit 6.)[2]

**IV.     ARGUMENT**

**A.     Andrews Is Entitled To Judgment As A Matter Of Law Because It Did Not Breach Any Supervisory Obligation Under The Express Terms Of The NYCHA Contract**

On February 28, 2005, NYCHA and Copstat executed the NYCHA Contract, which was drafted by NYCHA. (SMF ¶¶ 7-8.) Copstat agreed to provide security guard services at the locations set forth in Exhibit 2 of the NYCHA Contract. (*See id.* ¶ 13.) The NYCHA Contract incorporated by reference, and included as Exhibit 1, a prior contract between Copstat and the New York City Department of Housing Preservation and Development (the "HPD Contract"). (*See id.* ¶ 12.) The provisions of the HPD Contract applied to the NYCHA Contract unless the

---

[2] Unless otherwise indicated, all exhibits referenced in this memorandum of law refer to the exhibits attached to the statement of undisputed material facts filed by Andrews.

3

HPD Contract conflicted with the NYCHA Contract or the NYCHA Contract stated that provisions of the HPD Contract were deleted or modified. (*See id.*; NYCHA Contract ¶¶ 1.3-1.6.) The NYCHA Contract directed that, throughout the HPD Contract, "NYCHA" or "the Authority" be substituted for "City," "HPD," and "Agency Chief Contracting Officer," if the context does not require otherwise. (SMF ¶ 16; NYCHA Contract ¶ 1.4.1.)

The HPD Contract allowed for liquidated damages to be assessed against Copstat for failing to meet certain contractual obligations. (HPD Contract, Art. 11 at p. 38, attached as Exhibit 6.) Article 11 of the HPD Contract identified the contractual obligations that may be subject to liquidated damages, including the "[f]ailure to provide required security site inspections, per shift, $25/shift." (*See id.* at ¶ 11.2(e).)

The security site inspections referenced in the liquidated damages provision are explained in the "Scope of Services" section of the HPD Contract. (SMF ¶ 20; HPD Contract, Exhibit A ¶ 11 at p. 8.) The Scope of Services section described the obligations of the contractor, including the schedule of site inspections by supervisory personnel. (*See id.*) The supervisory site inspection requirements were initially set forth in paragraph 11 as follows:

> (a) Guards working shifts at HPD office sites shall be inspected once per shift;
> (b) Guards working the 8:00 a.m. – 4:00 p.m. shift at HPD office sites shall be inspected twice per shift including weekends and holidays. Such inspections shall be at least four (4) hours apart, or at varying times that HPD has agreed to and finds acceptable....

(*See id.*)[3]

Addendum #2 to the HPD Contract, however, modified the supervisory site inspections listed in the Scope of Services. (SMF ¶¶ 18-21; Addendum #2 to HPD Contract, attached as

---

[3] Although the Scope of Services section also established other inspection schedules (*see* HPD Contract, Exhibit A ¶¶ 11(c)-(e)), according to NYCHA's corporate designee, Patrick O'Hagan, NYCHA is exclusively relying on subparagraph 11(a) as the basis for imposing liquidated damages against Andrews. (SMF ¶ 84.)

Exhibit 8.) Addendum #2 deleted subparagraph 11(b). (*See id.*) Moreover, subparagraph 11(a) was "amended by adding the word 'day' between 'working shifts.'" (*See id.*) Thus, the inspection schedule in subparagraph 11(a) was modified to require that "Guards working *day* shifts at HPD office sites shall be inspected once per shift." (*See id.* (emphasis added).)

The NYCHA Contract provides that the scope of services shall be performed in accordance with Exhibit A of the HPD Contract, except as modified. (NYCHA Contract ¶ 4.1.) Thus, the supervisory obligation imposed on Andrews under the NYCHA Contract is the same as the supervisory obligation under the HPD Contract. (*See* HPD Contract, Exhibit A ¶ 11(a); Addendum #2 to HPD Contract; NYCHA Contract ¶ 1.4.1.) According to NYCHA, subparagraph 11(a) is the sole basis for NYCHA's decision to impose liquidated damages against Andrews. (SMF ¶ 84.) Applying NYCHA Contract ¶ 1.4.1, the supervisory obligation in subparagraph 11(a) reads as follows: "Guards working day shifts at NYCHA office sites shall be inspected once per shift." (*See* HPD Contract, Exhibit A ¶ 11(a); Addendum #2 to HPD Contract; NYCHA Contract ¶ 1.4.1.)

### 1. Andrews Did Not Provide Security Services For "Day" Shifts Under The NYCHA Contract

The NYCHA Contract did not direct Andrews's security guards to work any "day" shifts. (SMF ¶ 23; NYCHA Contract, Exhibit 2.) The NYCHA Contract required that Andrews's security guards work eight-hour shifts starting at 3 p.m. or later. (*Id.*) Indeed, the term "day" shift could not reasonably be interpreted to mean shifts ranging from 3 p.m. to 11 p.m. or 10 p.m. to 6 a.m. The most logical definition of a "day" shift is the 8 a.m. to 4 p.m. shift identified in the supervisory provisions of the HPD Contract. (SMF ¶ 21; HPD Contract, Exhibit A ¶ 11.) The supervisory obligations under the HPD Contract identify three eight-hour shifts: (i) 8 a.m. to 4 p.m., (ii) 4 p.m. to midnight, and (iii) midnight to 8 a.m. (*See id.*) Of the three shifts, the shift

starting at 8 a.m. is most clearly the "day" shift. None of the shifts required by the NYCHA Contract began at 8 a.m. or could reasonably be described as "day" shifts. Rather, all of the shifts began in the late afternoon and extended late into the night. (*See* NYCHA Contract, Exhibit 2.) Thus, Andrews did not breach the supervisory obligation under the NYCHA Contract because it did not provide any security services for "day" shifts under the NYCHA Contract.

NYCHA's rationale for applying liquidated damages and withholding payments from Andrews is based on the allegation that Andrews failed to perform once-per-shift supervisory inspections for all shifts at all locations. (SMF ¶¶ 75, 84.) Mr. O'Hagan made clear that NYCHA solely relied on the shift supervisory provision under subparagraph 11(a) in the HPD Contract when it assessed liquidated damages against Andrews. (SMF ¶ 84; O'Hagan Dep. 83:8-12.) NYCHA's argument, however, ignores the plain language of subparagraph 11(a), which provides that "[g]uards working *day* shifts at [NYCHA] office sites shall be inspected once per shift." (SMF ¶ 20; HPD Contract, Exhibit A ¶ 11(a); Addendum #2 to HPD Contract; NYCHA Contract ¶ 1.4.1 (emphasis added).) The use of the word "day" in this provision cannot be ignored. *See Patrolmen's Benevolent Ass'n. v. City of New York*, 848 N.Y.S.2d 80, 82 (N.Y. App. Div. 2007) (acknowledging canon of contract interpretation that every clause and word should be given meaning).

NYCHA's interpretation of the supervisory provision contradicts the plain language of the provision and amounts to an impermissible attempt to rewrite the terms of the NYCHA Contract to require supervisory inspections of all shifts at all locations. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (applying New York law) ("In interpreting a contract, '[w]ords and phrases are given their plain meaning. Rather than rewrite an unambiguous

6

agreement, a court should enforce the plain meaning of that agreement.") (citations omitted); *Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 654 (N.Y. App. Div. 1983) ("It is fundamental that courts enforce contracts and do not rewrite them."). Based on the plain and unambiguous language of the NYCHA Contract, Andrews did not breach any supervisory obligation. Indeed, Andrews did not assign guards to work "day" shifts under the NYCHA Contract. NYCHA is not entitled to liquidated damages because Andrews did not breach any supervisory obligation under the NYCHA Contract. *See 41-41 51st Street Realty Assocs. v. Tura Assocs.*, 616 N.Y.S.2d 73, 74 (N.Y. App. Div. 1994) (holding liquidated damages not permitted absent breach of contract).

Moreover, the imposition of liquidated damages is disfavored under New York law. *See City of New York v. Brooklyn & Manhattan Ferry Co.*, 143 N.E. 788, 790 (N.Y. 1924). A liquidated damages clause exists only by express agreement of the parties and cannot be read into a contract by implication. *See Winkelman v. Winkelman*, 203 N.Y.S. 63, 64 (N.Y. App. Div. 1924). NYCHA is essentially attempting to read into the contract a liquidated damages provision relating to the supervisory inspection of all shifts. The NYCHA Contract contains no express liquidated damages provision relating to supervisory inspections of all shifts and, therefore, liquidated damages are not permitted.

  **2. Andrews Did Not Provide Security Services At NYCHA "Office Sites" Under The NYCHA Contract**

NYCHA faces a second legal obstacle to imposing liquidated damages against Andrews. The supervisory obligation under the NYCHA Contract applies only to guards working at NYCHA "office sites." (SMF ¶¶ 19-20; HPD Contract, Exhibit A ¶ 11(a) at p. 8.) Andrews, however, did not provide security services at NYCHA "office sites" under the NYCHA Contract. Exhibit 2 to the NYCHA Contract specified the "Lobby Monitoring Sites" and "Security Guard

Services Sites" where Andrews was obligated to provide security services. (SMF ¶ 13; NYCHA Contract, Exhibit 2.) The locations specified are not NYCHA "office sites." Mr. O'Hagan, NYCHA's corporate designee and Security Director, explained that the "Lobby Monitoring Sites" were senior development residential facilities and the "Security Guard Services Sites" were senior development residential facilities undergoing depopulation. (SMF ¶ 13; O'Hagan Dep. 48:6-49:9.)

The Amendment to the NYCHA Contract, dated February 28, 2007, and drafted by NYCHA, further supports the description of the Lobby Monitoring Sites and Security Guard Services Sites as "senior developments," rather than "office sites." (SMF ¶ 61; Amendment at p. 2, attached as Exhibit 21.)[4] Indeed, the Amendment retroactively modified the NYCHA Contract by defining the term "Services" to mean "security services at various senior developments." (*See id.*) Moreover, according to the Amendment, Andrews began performing the "Services" effective January 1, 2007. (SMF ¶ 62.) Indeed, all of the unpaid invoices at issue in this case are for "security services" rendered at "senior developments" on or after January 1, 2007. (*See id.* ¶¶ 27, 61-62.)

This is not an issue of mere semantics. NYCHA has several office sites, but those locations were not covered by the NYCHA Contract. NYCHA has central offices at 250 Broadway, 90 Church Street, and in Long Island City. (SMF ¶ 15.) Additionally, NYCHA operated satellite offices at One Fordham Plaza, 55 West 125th Street, 5555 Junction Boulevard, 350 Livingston Street, and 120 Stuyvesant Place. (SMF ¶ 14.) Andrews does not dispute that these eight locations would qualify as NYCHA "office sites." In fact, if the NYCHA Contract had required Andrews to provide security services at any of these locations, then Andrews would

---

[4] Although "dated" February 28, 2007, the Amendment was not actually executed until late May or early June 2007. (*See* Ex. 21.)

have been obligated to provide one supervisory inspection per shift for guards working day shifts at these locations. (SMF ¶¶ 14-15.) The NYCHA Contract, however, only required Andrews to provide security services at senior development sites. (SMF ¶ 13.)

Based on the plain language of the supervisory provision under the NYCHA Contract, Andrews was not obligated to provide supervisory inspections at "senior developments." *See Bybyk*, 81 F.3d at 1199; *Schmidt*, 468 N.Y.S.2d at 654. The parties could have added a supervisory obligation that covered senior development sites, or even all sites where Andrews provided services. They chose not to do so, and such an obligation cannot be created by implication. *See Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001) ("'[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties under the guise of interpreting the writing.''").

NYCHA seeks to impose liquidated damages against Andrews based on Andrews's purported failure to provide once-per-shift supervisory inspections at each "senior development site" under the NYCHA Contract. The plain terms of the NYCHA Contract did not impose such an obligation, and such an obligation cannot be implied. Thus, NYCHA is not entitled to liquidated damages and judgment should be entered in favor of Andrews as a matter of law.

**B.     Andrews Is Entitled To Judgment As A Matter Of Law Because Any Ambiguity In The Contract Must Be Construed Against NYCHA**

Although Andrews contends the plain and unambiguous language of the NYCHA Contract does not support the imposition of liquidated damages, to the extent the Court finds the supervisory obligations under the NYCHA Contract ambiguous, any ambiguity must be construed against NYCHA and in favor of Andrews.

NYCHA drafted the NYCHA Contract. (*See* Am. Compl. ¶ 6; Ans. to Am. Compl. ¶ 6.) Moreover, NYCHA chose to make the HPD Contract a part of the NYCHA Contract by

9

incorporating the HPD Contract as a matter of administrative convenience. (*See* Ryan Dep. 12:17-13:5.) Indeed, NYCHA saved itself the trouble and expense of a more involved procurement process by "piggybacking" on the HPD Contract. (SMF ¶ 12.) Andrews was not involved in creating the NYCHA Contract and did not modify the contract as drafted by NYCHA. (*See id.*)

As NYCHA was the party responsible for creating the NYCHA Contract, any ambiguity in the supervisory obligations should be resolved against NYCHA and in favor of Andrews. *See Jacobson v. Sassower*, 489 N.E.2d 1283, 1284 (1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language."). Here, NYCHA chose the language used for the supervisory obligations under the NYCHA Contract. (*See* HPD Contract, Exhibit A ¶ 11(a); Addendum #2 to HPD Contract.) NYCHA was free to include a provision requiring Andrews to inspect its guards once per shift and at every location.[5] NYCHA, however, did not include such a provision in the NYCHA Contract. Instead, the NYCHA Contract, as written, provides that "[g]uards working day shifts at NYCHA office sites shall be inspected once per shift." (SMF ¶ 20.) Any ambiguity in this provision must be resolved against NYCHA and in favor of Andrews. *See Jacobson*, 489 N.E.2d at 1284. Thus, in construing this provision, the Court should not interpret "day shifts" to mean "all shifts." Likewise, the Court should not interpret "office sites" to mean "senior developments." Indeed, any ambiguity relating to the supervisory shift inspection schedule under the NYCHA Contract must be resolved against NYCHA. *See id.*

---

[5] Of course, if such an onerous provision had been included by NYCHA, Andrews never would have entered into the contract. (SMF ¶ 30.)

## V.     CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment in favor of Andrews, dismiss the counterclaim filed by NYCHA, and enter judgment against NYCHA in the amount of $112,196.58.

Respectfully submitted,

_____/s/_____
Christopher E. Dunne (CD9472)
325 Chestnut Street, Suite 403
Philadelphia, Pennsylvania 19106
Telephone: (215) 625-2995
cdunne@cedunne.us

Bryan D. Bolton, Admitted *Pro Hac Vice*
Funk & Bolton, P.A.
36 South Charles Street, 12th Floor
Baltimore, Maryland 21201
Telephone: (410) 659-7754
bbolton@fblaw.com

*Attorneys for Plaintiff,
Andrews International, Inc.*

Dated:      August 8, 2008

31002.006:116426v4