UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ANDREWS INTERNATIONAL, INC.            :
                                       :
                        Plaintiff,       :   08 Civ. 1580 (HB)
                                       :
           -against-                :   OPINION & ORDER
                                       :
NEW YORK CITY HOUSING AUTHORITY,       :
                                       :
                        Defendant.       :
---------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

        Plaintiff Andrews International, Inc. ("Andrews") and Defendant New York City Housing Authority ("NYCHA") each moves for summary judgment. Andrews claims that NYCHA breached their contract by failing to pay $112,196.58 of Andrews' invoices for security guard services. NYCHA claims that it was entitled to withhold this amount as liquidated damages because Andrews, not NYCHA, was in breach. NYCHA also brings a counterclaim against Andrews for additional "liquidated damages" in the amount of $400,000. For the reasons set forth below, summary judgment is granted in favor of NYCHA with respect to Andrews' claim, summary judgment is granted in favor of Andrews with respect to NYCHA's counterclaim, and both the claim and counterclaim are dismissed.

        As this decision resolves the case, there will be no trial and the Clerk is instructed to close this matter and remove it from my docket.

## I. FACTUAL BACKGROUND

        On February 28, 2005, NYCHA and Andrews executed a contract ("NYCHA Contract"), whereby Andrews agreed to provide security services at certain of NYCHA's senior citizen residential developments.[1] (Pl.'s Rule 56.1 Statement ¶ 7.) The term of the NYCHA Contract was from March 1, 2005 to February 28, 2007. (*Id.* ¶¶ 8-9.) NYCHA's guidelines permit it to use, or "piggyback on," another New York City agency's standard agreement for services similar in scope. Thus, the NYCHA Contract incorporates by reference a contract for security services by the New York City Department of Housing Preservation and Development ("HPD Contract"), which is attached to the NYCHA Contract as Exhibit 1. (*Id.* ¶ 12.) In the NYCHA Contract,

---

[1] The NYCHA Contract was entered into by NYCHA and Copstat Security, Inc., Andrews' predecessor-in-interest, which for ease of reference is referred to herein as "Andrews."

Andrews and NYCHA made various modifications of and additions to the HPD Contract to conform it to their agreement.  (*Id.*)

### A.  Relevant Contractual Provisions

At particular issue in this dispute is Section 11 of Exhibit A to the HPD Contract, as amended by Addendum 2 dated March 27, 2002 ("Inspections Provision"), which is incorporated into the NYCHA Contract between Andrews and NYCHA.  (Pl.'s Mot. for Summ J. Ex. 6.)  The Inspections Provision provides in pertinent part:

> At [Andrews'] expense, [Andrews] shall designate shift supervisors who shall make inspections of guards at [NYCHA] sites . . .
> (a) Guards working day shifts at [NYCHA] office sites shall be inspected once per shift. . . .
> (d) Guards working the 4:00 P.M. – 12:00 MIDNIGHT shift at building construction sites as well as [NYCHA] office sites shall be inspected twice per shift . . . .
> (e) Guards working the 12:00 MIDNIGHT – 8:00 A.M. shift at building construction sites as well as [NYCHA] office sites shall be inspected twice per shift . . . .

The NYCHA Contract also incorporates a liquidated damages provision in Article 11 of the HPD Contract ("Liquidated Damages Provision")), which provides in pertinent part:

> If [Andrews] should fail to act in accordance with the Agreement specifications and under the terms and conditions of the contract, and at [NYCHA's] sole discretion, [Andrews] shall not be paid for the time short and in addition shall be liable to pay liquidated damages . . . in accordance with the following schedule: . . . *(e) Failure to provide required security site inspections, per shift, $25/shift.*

(*Id.*)

Finally, Article 10 of the NYCHA Contract ("Notice Provision") provides that

> [i]n the event [Andrews] has a dispute with NYCHA under this Agreement, [Andrews] will, within 30 calendar days after such a dispute shall have arisen, notify NYCHA in writing of [Andrews'] contention and submit its claim, specifying the nature of the claim and the sum claimed. . . . [Andrews] will proceed with its duties hereunder in compliance with the written instructions of NYCHA, and such compliance will not be deemed to be a waiver of [Andrews'] right to pursue its claim, provided it has given notification in writing as provided above.

(*Id.*)

### B.  NYCHA Alleges Andrews Failed to Provide Supervisory Inspections

From March 2005 to December 31, 2006, Andrews provided security services at NYCHA's senior citizen residential developments and was regularly paid for these services.

2

(Pl.'s Rule 56.1 Statement ¶ 27.)  It is undisputed that during this time NYCHA never indicated that it would deduct any amount from its payments to Andrews for any failure by Andrews to make supervisory inspections of its guards pursuant to the Inspections Provision.  (*Id.*)  On September 6, 2006, Patrick O'Hagan ("O'Hagan") became the Security Director of NYCHA, and on October 23 he hired Veritas Vox to audit Andrews' services under the NYCHA Contract.  (*Id.* at ¶¶ 31, 34.)  On February 1, 2007, Veritas Vox sent O'Hagan a report that stated that its analysis of the Inspections Provision "revealed ambiguity regarding the inspections standards required of [Andrews]."  (*Id.* ¶ 40.)  By its terms, the Inspections Provision required one supervisory inspection per shift for guards working "day shifts" at office sites and two inspections per shift for guards working from 4 p.m. to midnight or from midnight to 8 a.m. at building construction sites or office sites.  Because the shifts worked by Andrews' guards could not be easily characterized as "day shifts" and did not exactly align with the time frames expressed in the Inspections Provision, the auditor concluded that Andrews was required, at a minimum to provide one supervisory inspection of its guards per shift.  (*Id.* at ¶ 41.)

  On April 26, 2007, O'Hagan told representatives from Andrews that the Veritas Vox report had revealed that Andrews failed to provide the requisite supervisory inspections. (*Id.* at ¶¶ 48-49.)  O'Hagan requested that Andrews provide NYCHA with a credit towards future payments to account for this failure.  (*Id.* at ¶ 49.)  O'Hagan claims that at a second meeting on May 18, 2007, he again made this request and told Andrews' representatives that NYCHA would "apply liquidated damages" due to the "lack of supervision" at NYCHA's "field locations, which are the senior developments."  (*Id.* at ¶ 52 (quoting O'Hagan Dep. at 43:8-16, Def.'s Mot. for Summ. J., Ex. 7).)  At this meeting, O'Hagan did not provide any documentation or details about the amount of liquidated damages that NYCHA claimed.  (*Id.*)  In 2007, NYCHA did not make any payments to Andrews until June 20, 2007, and NYCHA's payment on this date reflected a deduction of $16,251.26 from the invoices that Andrews had submitted to NYCHA that year.[2]  NYHCA provided no written explanation for the deduction.  (*Id.* ¶ 69.)

  In a letter dated June 29, 2007, Andrews requested that NYCHA pay the amount that it had withheld from its June 20 payment or, in the alternative, provide a written explanation for the withholding.  (Def.'s Mot. for Summ. J. Ex. 25.)  In a letter dated July 16, 2007, O'Hagan explained that NYCHA had withheld the sum as liquidated damages due to Andrews' failure to

---

[2] Andrews does not claim that NYCHA's June 20, 2007 payment was untimely or that NYCHA's failure to pay until that date was in breach of their contract.

supervise its guards as required by the NYCHA Contract and that the Liquidated Damages provision set damages at the amount of $25 per uninspected shift. (*Id.* Ex. 26.) In a letter dated July 20, 2007, Andrews asserted that NYCHA lacked the authority to make such a withholding and requested an accounting of the alleged uninspected shifts. (*Id.* Ex. 27.) Christopher Dunne ("Dunne"), an attorney for Andrews, wrote that "[m]y preliminary assessment is that the agreement does not permit liquidated damages of '$25.00 per un-inspected shift penalty' for the worked performed by Andrews." (*Id.* Ex. 27.)

In a letter dated July 30, 2007, Dunne informed NYCHA that, pursuant to the Notice Provision, a dispute had arisen due to NYCHA's "improper deductions." (*Id.* Ex. 28.) The letter asserted that despite Dunne's request for substantiation for the deduction of the penalties, NYCHA had not provided any documentation to this effect, and that NYCHA owed Andrews $64,126.68 due to such deductions, as well as $838,117.30 for services rendered by Andrews pursuant to the NYCHA Agreement for which NYCHA had not yet paid. (*Id.*) In a letter dated August 2, 2007, Dunne again wrote to NYCHA that, pursuant to the Notice Provision, a dispute had arisen between Andrews and NYCHA, and asserted that NYCHA owed Andrews $70,537.49. (*Id.* Ex. 29.)

On August 6, 2007, an attorney for NYCHA sent Dunne a list of Andrews' invoices from which NYCHA had deducted "liquidated damages." (*Id.* Ex. 30.) Finally, in a letter to O'Hagan on August 16, 2007, Dunne reiterated that Andrews disputed the deductions taken by NYCHA and asserted that NYCHA owed Andrews $76,262.11[3] for the deductions and $686,313.59 in unpaid invoices. (*Id.* Ex. 31.) Finally, Andrews asserts that on September 25, 2007, NYCHA wrongfully deducted $35,934.47 from an invoice, bringing the total allegedly wrongful deductions to $112,196.58. (*Id.*)

On February 15, 2008, Andrews filed suit against NYCHA to recover the $112,196.58 that NYCHA withheld as "liquidated damages." NYCHA brings a counterclaim against Andrews for additional liquidated damages in the amount of $400,000, on the ground that Andrews failed to make supervisory inspections of its guards for a longer period of time. Each party moves for summary judgment.

---

[3] In what appears to be a clerical error, the first page of the letter repeats the previously alleged total deductions in the amount of $70,537.49. The itemized list of deductions attached to the August 16, 2007 letter indicates that by that date the total amount of the deductions was $76,262.11.

4

## II.  LEGAL STANDARD

A court will not grant a motion for summary judgment pursuant to Fed. R. Civ. P. 56 unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986).  In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.  The Second Circuit has held that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994).  The nonmoving party may not overcome summary judgment by relying "merely on allegations or denials in its own pleading."  Fed. R. Civ. P. 56(e).  Rather, the nonmoving party's "response must—by affidavits or as otherwise provided in [Fed. R. Civ. P. 56]—set out specific facts showing a genuine issue for trial."  *Id.*  "Notwithstanding the existence of contractual ambiguities, summary judgment may be granted if under any of the reasonable interpretations the moving party would prevail. In such a case, the non-movant will have failed to show that there is any issue of material fact for trial; however the ambiguity were resolved, the movant would prevail."  *Chock Full O'Nuts Corp. v. Tetley, Inc*., 152 F.3d 202, 204 (2d Cir. 1998).

## III.  DISCUSSION

### A.  Andrews' Claim

#### 1.  Waiver

NYCHA argues that Andrews waived its claim by failing to provide timely notice of dispute pursuant to the NYCHA Contract's Notice Provision, which required Andrews to give NYCHA written notice of a dispute within thirty days after the dispute arose, as well as written notice of the nature of Andrews' claim and the sum claimed.  This provision was a "condition precedent to suit or recovery," and failure to comply could warrant dismissal of the action.  *See A.H.A. General Constr., Inc. v. NYCHA*, 92 N.Y.2d 20, 34 (N.Y. 1998) (holding compliance with a similar NYCHA contractual notice provision is a "condition precedent to suit or recovery," and failure to comply warrants dismissal of the action.)

The issue is whether Andrews provided timely notice of dispute. The inquiry depends on when the dispute arose and when Andrews provided notice.

### a. The Dispute Arose on June 20, 2007

The NYCHA Contract does not set forth a definition of "dispute" in the context of the Notice Provision. Blacks Law Dictionary defines "dispute" as "[a] conflict or controversy, especially one that has given rise to a particular lawsuit." (Blacks Law Dictionary, 7th ed., at 485).

On June 20, 2007, NYCHA began to deduct amounts that it considered to be liquidated damages from its payments to Andrews. (Topf Decl. ¶ 8, Pl.'s Mot. for Summ. J. Ex. 10.) Any previous communication between the parties lacked the requisite elements to meet the notice provision of the contract. Therefore, June 20, 2007, is the date on which the dispute arose, for purposes of the notice requirement. It was on this date that Andrews had the information necessary to submit a notice of dispute—only then did Andrews learn the amount that NYCHA was claiming for liquidated damages, and why. While this Court holds that June 20, 2007 must be taken as the date the dispute arose, it hardly represents good business practice by and between NYCHA and its contractors. Written notice at the earliest feasible date (here, back in April), rather than a series of rambling oral communications subject to different interpretations, is by far the better way.

### b. Andrews Submitted Its Notice of Dispute on July 30, 2007

Because the dispute arose on June 20, 2007, the Notice Provision required Andrews to submit a notice of dispute to NYCHA by July 20, 2007. Andrews, however, did not do so until ten days later, on July 30, 2007.

Andrews argues that it submitted its notice of dispute in a letter to NYCHA on June 29, 2007. That letter asked NYCHA to remit the sums that it had deducted on June 20, 2007, or, in the alternative, provide a written explanation for the deduction. (Def.'s Mot. for Summ. J. Ex. 25.) The June 29, 2007 letter makes no suggestion that NYCHA lacked the authority to assess liquidated damages. On July 20, 2007, in a second letter to NYCHA, Andrews' attorney stated that his "preliminary assessment" was that the NYCHA Contract did not permit liquidated damages of $25 per uninspected shift. The letter further requested that NYCHA produce a list of the guard shifts during which Andrews allegedly failed to provide supervisory inspections. (Def's Mot. for Summ. J. Ex. 27.) Neither of these letters, however, specifies the nature of the claim or the sum claimed, as required by the Notice Provision. Both letters indicate that

Andrews was still researching and analyzing the matter.  The plain language of the Notice Provision, on the other hand, requires a clear and unequivocal statement of Andrews' claim and the amount sought.

It was not until July 30, 2007, that Andrews explicitly provided notice of a contractual dispute.  (*See* Def's Mot. for Summ. J. Ex. 28.)  On that date, Andrews' letter to NYCHA constituted proper notice under the Notice Provision because it stated: "This is to inform you that pursuant to Article 10 of the Agreement, a dispute has arisen between Andrews and NYCHA over certain improper deductions that NYCHA has withheld from Andrews." (*Id.*)  The July 30, 2007 letter states the specific amount that Andrews sought to recover from NYCHA.  Moreover, Andrews' letters dated August 2 and 16, 2007, also state explicitly that a dispute had arisen between Andrews and NYCHA pursuant to the Notice Provision. (*Id.* Exs. 29, 31.)  These letters demonstrate that Andrews, as a sophisticated party to the contract, knew what the Notice Provision required.  Andrews' notice of dispute on July 30, 2007, was therefore ten days after the expiration of the thirty-day period under the Notice Provision.

The Notice Provision provided that, after a dispute arose, Andrews was to continue to provide security guard services "in compliance with the written instructions of NYCHA," and "such compliance will not be deemed to be a waiver of [Andrews'] right to pursue its claim, provided it has given notification in writing as provided above."  Here, Andrews continued to provide security guard services to NYCHA after the dispute arose, in compliance with the NYCHA Contract, but failed to provide notification within the time period specified in the Notice Provision.  Andrews, therefore, waived its right to pursue its claim, and Andrews' complaint must be dismissed on this basis.

### 2. Breach of Contract Claim

Even if Andrews had not waived its right to pursue its claim, its Complaint would be dismissed on summary judgment on its merits.  The gravamen of Andrews' claim is that Andrews was not obligated to provide any supervisory inspections under the NYCHA Contract and thus NYCHA had no right to deduct liquidated damages from its payments.  Andrews bases its claim on two arguments: first, that none of its guards' shifts were "day shifts" or shifts from 4 p.m. to midnight or midnight to 8 a.m., and, second, that Andrews' guards did not work at NYCHA "office sites" or "building construction sites" as specified in the contract.

The Inspections Provision requires Andrews to designate shift supervisors to inspect the guards at NYCHA's sites as follows:

7

>   (a) Guards working day shifts at [NYCHA] office sites shall be inspected once per shift. . . .
>   (d) Guards working the 4:00 P.M. – 12:00 MIDNIGHT shift at building construction sites as well as [NYCHA] office sites shall be inspected twice per shift . . . .
>   (e) Guards working the 12:00 MIDNIGHT – 8:00 A.M. shift at building construction sites as well as [NYCHA] office sites shall be inspected twice per shift . . . .

Andrews argues that none of its guards' shifts corresponded precisely to the times of the shifts set forth in the Inspections Provision, and so it was not obligated to provide any supervisory inspections. However, the NYCHA Contract evidences the parties' intent that Andrews would provide supervisory inspections. Under New York law, the governing law of the contract, the New York Court of Appeals has "long and consistently ruled against any construction which would render a contractual provision meaningless or without force or effect." *Ronnen v. Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 589 (N.Y. 1996). Andrews' construction would render the Inspections Provision meaningless and without force or effect. Consequently, the provision must be interpreted to require one inspection during shifts that most closely correspond to "day shifts" (*e.g.*, from 8 a.m. to 4 p.m.) and two inspections during shifts that most closely correspond to 4 p.m. to midnight and midnight to 8 a.m.

Andrews also argues that the NYCHA senior residential developments, where its guards worked, were not "office sites" or "building construction sites" within the meaning of the Inspections Provision, and so no supervisory inspections were required. However, the NYCHA Contract itself refers to these senior developments as "NYCHA Field Office Locations."[4] (Pl.'s Mot. for Summ J. Ex. 6, § 1.2 & Ex. 2.) As a "location" is no different from a "site," the senior developments were thus office sites within the meaning of the NYCHA Contract. Further, because the only NYCHA sites for which Andrews provided security guard services under the NYCHA Contract were the senior residential developments, the Inspections Provision would lack any meaning were the developments not considered to be "office sites." *See Ronnen*, 88 N.Y.2d at 589.

Therefore, even if NYCHA had not waived its right to pursue its claim under the Notice Provision, its claim lacks merit and must be dismissed.

---

[4] Exhibit 2 to the NYCHA Contract also refers to all but one of the senior developments as "Lobby Monitoring Sites." The other, a park, is called a "Security Guard Services Site."

### B. NYCHA's Counterclaim

NYCHA has brought a counterclaim against Andrews for additional liquidated damages in the amount of $400,000. Under New York law, courts construe liquidated damages provisions narrowly. *See City of Elmira v. Larry Walter, Inc.*, 76 N.Y.2d 912 (N.Y. 1990).

NYCHA must shoulder the burden of proof on its counterclaim. *See 41-41 51st Street Realty Assocs. v. Tura Assocs.*, 616 N.Y.S.2d 73, 74 (N.Y. App. Div. 1994). NYCHA asserts that the $400,000 that it seeks to recover represents liquidated damages for Andrews' failure to provide supervisory inspections from March 1, 2005 through December 31, 2006. However, NYCHA has produced no audit report or other evidence that Andrews failed to provide inspections during this period. Moreover, NYCHA's calculation is mere guesswork. It arrived at the $400,000 figure by taking the average amount of liquidated damages per month during the January-June 2007 period, then multiplying this average by the months from March 2005-December 2006, and finally rounding down to $400,000. Thus, the liquidated damages claimed bear no relationship to any ascertainable number of uninspected shifts during the relevant period.

As NYCHA's liquidated damages calculation is speculative, it has failed to provide a "proper basis or method by which it ascertained the amount of damages it sought to recover." *See R & I Elecs.*, 66 A.D.2d at 838. Therefore, NYCHA's counterclaim for $400,000 must be dismissed on summary judgment. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 54, 58 (2d Cir. 2002) (holding that district court properly granted summary judgment where claimant "failed to put forward sufficient evidence" to support his claim).

### IV. CONCLUSION

Because Andrews failed to preserve its claim by providing NYCHA with a timely notice of dispute, NYCHA's motion for summary judgment on Andrews' claim is GRANTED. Because NYCHA's counterclaim rests on a calculation of liquidated damages that is pure speculation, Andrews' motion for summary judgment on NYCHA's counterclaim is GRANTED. Both the claim and counterclaim are hereby DISMISSED. The Clerk of the Court is instructed to close this matter and remove it from my docket.

SO ORDERED

New York, New York
November 24, 2008

_____
U.S.D.J.

9